Michael N. Cohen (SBN 225348)
mcohen@cohenip.com
Vikram Amritraj (SBN 321584)
vamritraj@cohenip.com
COHEN IP LAW GROUP P.C.
9025 Wilshire Blvd., Suite 301
Los Angeles, California 90049
Tel: (310) 288-4500
Fax: (310) 246-9980

Attorneys for Defendant
Global Aiptek Inc. dba GAC Technology Group

# UNITED STATES DISTRICT COURT

# CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| EPSON AMERICA, INC.,<br><br>   Plaintiff,<br><br>  vs.<br><br>GLOBAL AIPTEK INC. d/b/a GAC TECHNOLOGY GROUP,<br><br>   Defendant, | ) Case No.: 8:23-cv-00222-FWS-DFM<br>)<br>) **DEFENDANT GLOBAL AIPTEK INC.'S**<br>) **NOTICE OF MOTION AND MOTION**<br>) **TO DISMISS THE SECOND**<br>) **AMENDED, COMPLAINT, AND/OR**<br>) **STRIKE PORTIONS THEREOF,**<br>) **AND/OR FOR MORE DEFINITE**<br>) **STATEMENT**<br>)<br>) Date:  February 25, 2025<br>) Time:  10:00 a.m.<br>) Location: Courtroom 10D, Santa Ana<br>)<br>)<br>)<br>)<br>) |

1    **TO THE HONORABLE COURT, PLAINTIFFS, AND THEIR**

2    **ATTORNEYS OF RECORD:**

3        **NOTICE IS HEREBY GIVEN** that on February 25, 2025 at 10:00 a.m. or as

4    soon thereafter as counsel may be heard by the above-entitled Court, located at 411

5    West 4th Street, Courtroom 10D, Santa Ana, California 92701, before the Honorable

6    Fred W. Slaughter, Defendant Global Aiptek Inc. ("Global" or "Defendant") will and

7    hereby moves the Court to dismiss, strike, or for a more definite statement as to Plaintiff

8    Epson America, Inc.'s ("Plaintiff" or "Epson") Second Amended Complaint ("2AC")

9    (Dkt. 61).

10        This motion is based on the Memorandum of Points and Authorities, Declaration

11    of Michael N. Cohen ("Cohen Decl."), Request for Judicial Notice ("RFJN"), and all

12    pleadings and papers on file, and any other matters that may be presented to the Court at

13    the time of the hearing.  Defendant's counsel met and conferred with Plaintiff's counsel

14    under Local Rule 7-3 on October 29, 2024.  No resolution was reached.

15

16    Dated:  January 27, 2025             Respectfully submitted,

17                             **COHEN IP LAW GROUP P.C.**

18

19                             /s/ Michael N. Cohen

20                             Michael N. Cohen

21                             Attorneys for Defendant
                          GLOBAL AIPTEK INC.

22

23

24

25

26

27

28

MOTION TO DISMISS/STRIKE/DEFINITE STATEMENT 2AC

1

## **TABLE OF CONTENTS**

2

3    I.    INTRODUCTION …………………………………………………………..1

4    II.    FACTUAL BACKGROUND……………………………………………..……1

5    III.    LEGAL STANDARD……………………………………………………..3

6    IV.    ARGUMENT…………………………………………………………..5

7        A.    Epson Does Not Plead with Specificity that Global Made the Advertisements and that
            They are Literally False or

8            Misleading……………………………………………..……....……..5

9            1.    Global Did Not Create Any of the Advertisements Cited in the 2AC…….6

10            2.    Epson Does Not Plead Why the Advertising is Literally False or
            Misleading……………………………………………………..…..7

11            i. The Advertisements Use Light Source Brightness, Not Light Output

            Brightness……………………………………………………..8

12

13            ii. Epson Fails to Plead the Standard for Advertising Projector Brightness, and Why
                Global's Use of Light Source Brightness is False or

14                Misleading……………………………………………………....…9

15            3.    *Epson's Claim that Global* Falsely Advertises its Products Under the HP® Mark is
            not Actionable………………………………………………………10

16        B.    Epson Cannot Plead the Advertising Was Unlawful or Unfair, and a Corporate
            Competitor Cannot Sustain a UCL Fraud Claim………………………………12

17            1.    Unlawful: Epson's UCL Claim Fails Alongside its Lanham Act Section 1125

18                Claim……………………………………………………………...12

19            2.    Unfair: Epson Does Not Allege that Global's Conduct Violates Antitrust Law…13

20            3.    Fraudulent: As a Competitor and Not a Consumer, Epson Lacks Standing to Bring
                Fraud Claim…………………………………………………………....…13

21

22    V.    The Court Should Also Strike Epson's Immaterial Allegations
        A.    Epson's Baseless Allegations of "Trademark Infringement" are Immaterial, Impertinent
23        and Likely to Confuse the Issues, Thus Prejudicing Global …………………………...15

24        2AC ¶1: "This is an action for trademark infringement"……………………………16

25        2AC¶3: "Global has caused injury to Epson's trademarks in the State of California and this

26        District"…………………………………………………………16
        B.    The Court Should Strike All Mentions of Projector Misbranding…………………17
27        C.    The UCL Does Not Allow Exemplary or Punitive Damages…………………………18
    VI.    Conclusion………………………………………………………..……18
28

MOTION TO DISMISS/STRIKE/DEFINITE STATEMENT 2AC

## **TABLE OF AUTHORITIES**

*Beyond Blond Prods., LLC v. Heldman*, No. 20-CV-5581-DSF-GJSX, 2022 WL 2036306, at *3 (C.D. Cal. Mar. 3, 2022)……………………………………………………………………………..1

*Travelers Prop. Cas. Co. of Am. v. Centex Homes*, No. 11-3638-SC, 2013 WL 4528956, at *4 (N.D. Cal. Aug. 26, 2013)…………………………………………………………………...1, 12

*Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). ………………………………………………………….………....3, 13

*In re Gilead Scis. Sec. Litig.*, 536 F.3d 1049, 1055 (9th Cir. 2008)…………………………………3

*Levy v. adidas AG*, No. CV 18-6542 PSG (MAAx), 2018 WL 5942000, at *2 (C.D. Cal. Nov. 13, 2018)………………………………………………………………………………………………3

*Sprewell v. Golden State Warriors*, 266 F.3d 979, 988 (9th Cir. 2001)……………………………3

*Semegen v. Weidner*, 780 F.2d 727, 731 (9th Cir.1985)……………………………………………3

*Opperman v. Path, Inc.*, 84 F. Supp. 3d 962, 974–75 (N.D. Cal. 2015)…………………………4

*Palmtree Acquisition Corp. v. Neely*, 2011 WL 3419493, at*2 (N.D. Cal. Aug 4, 2011)…………….4

*Sagan v. Apple Computer, Inc.*, 874 F.Supp. 1072, 1077 (C.D. Cal. 1994)…………………………4

*Fantasy, Inc. v. Fogerty*, 984 F.2d 1524, 1527 (9th Cir. 1993)……………………………………4

*Cortina v. Goya Foods, Inc.*, 94 F.Supp.3d 1174, 1182 (S.D. Cal. 2015)…………………………4

*Mullis v. U.S. Bankr. Court*, 828 F.2d 1385, 1388 (9th Cir. 1987)………………………………4

*Prime Healthcare Servs., Inc. v. Humana Ins.*, 230 F. Supp. 1194, 1203 (C.D. Cal. 2017)………...4

*Antiaging Inst. of California, Inc. v. Solonova, LLC*, No. 15-03416-AB (FFMx), 2015 WL 12792028, at *1 (C.D. Cal. Nov. 19, 2015)………………………………………………………………………4

*Washoutpan.com, LLC v. HD Supply Constr. Supply Ltd.*, No. 19-CV-00494-ABJEMX, 2019 WL 9050859, at *5 (C.D. Cal. Aug. 5, 2019)………………………………………………………5

*Walling v. Beverly Enters.*, 476 F.2d 393, 397 (9th Cir. 1973)……………………………………5

*In re GlenFed Sec. Litig.*, 42 F.3d 1541, 1548 (9th Cir. 1994)……………………………………5

*Skydive Ariz., Inc. v. Quattrocchi*, 673 F.3d 1105, 1110 (9th Cir. 2012)……………………………5

*BHRS Grp., LLC v. Brio Water Tech., Inc.*, 553 F. Supp. 3d 793, 799 (C.D. Cal. 2021)………….6, 13

*Vess v. Ciba-Geigy Corp. USA*, 317 F.3d 1097, 1106 (9th Cir. 2003)…………………………….7

*Southland Sod Farms v. Stover Seed Co.*, 108 F.3d 1134, 1139 (9th Cir.1997)………………………7

*Century 21 Real Est. Corp. v. RE/MAX S. County*, 882 F. Supp. 915, 922 (C.D. Cal. 1994).  ……...7

*Compaq Comput. Corp. v. Packard Bell Elecs.*, Inc., 163 F.R.D. 329, 336 (N.D. Cal. 1995)............9

*Castrol, Inc. v. Pennzoil, Co.*, 799 F.Supp. 424, 436 (D.N.J.1992)......................................9

*Okyon Holdings Inc. v. Hori (U.S.A.) Inc.*, No. 2:21-CV-09213-AB-PDX, 2022 WL 21805919, at *2 (C.D. Cal. Feb. 24, 2022)..................................................................................11

*Cel–Tech Communications Inc. v. Los Angeles Cellular Tel. Co.*, 20 Cal.4th 163, 180, 83 Cal.Rptr.2d 548, 973 P.2d 527 (1999)......................................................................12

*Capella Photonics, Inc. v. Cisco Sys., Inc.*, 2014 WL 8097683, at *11 (N.D. Cal., Dec. 23, 2014, C-14-3348 EMC)....................................................................................14

*Rosenbluth International, Inc. v. Superior Court*, 101 Cal.App.4th 1073, 1077–79, 124 Cal.Rptr.2d 844 (2002) .....................................................................................14

*Kearns v. Ford Motor Co.*, 567 F.3d 1120, 1124-25 (9th Cir. 2009)......................................14

*N.B. v. Cnty. of Los Angeles*, No. 221CV02165FLAPDX, 2022 WL 19915278, at *2 (C.D. Cal. Mar. 30, 2022)........................................................................................15

*CD Ride, Corp. v. Travelers Companies, Inc.*, No. CV1104414SJOMRWX, 2011 WL 13220709, at *1 (C.D. Cal. July 12, 2011)...............................................................15

*Gearsource Holdings, LLC v. Google LLC*, No. 18-CV-03812-HSG, 2020 WL 3833258, at *4 (N.D. Cal. July 8, 2020)............................................................................15

*Gearsource Waits v. Frito–Lay, Inc.*, 978 F.2d 1093, 1108 (C.A.9 1992)................................16

*See Waits v. Frito–Lay, Inc.*, 978 F.2d 1093, 1108 (C.A.9 1992)......................................16

*Halicki Films, LLC v. Sanderson Sales & Mktg.*, 547 F.3d 1213, 1225 (9th Cir. 2008).................17

*Korea Supply Co. v. Lockheed Martin Corp.*, 29 Cal. 4th 1134, 1148 (2003)..........................18

*Groupion, LLC v. Groupon, Inc.*, 859 F.Supp.2d 1067, 1083 (N.D. Cal. 2012).........................18

*Cosmos Jewelry Ltd. v. Po Sun Hon Co.*, 470 F.Supp.2d 1072 (C.D. Cal. 2006)......................18

*Powell v. Wells Fargo Home Mortg.*, No. 14-CV-04248-MEJ, 2017 WL 2720182, at *7–8 (N.D. Cal. June 23, 2017).....................................................................................18

**RULES**

Fed. R. Civ. P. 12(f)...................................................................4,15,16

-iv-

15 U.S.C. § 1125(a)(1)(A)(B). ...................................................................................10,16,18

15 U.S.C. §§ 1114...................................................................................................................16

MOTION TO DISMISS/STRIKE/DEFINITE STATEMENT 2AC

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

## MEMORANDUM OF POINTS AND AUTHORITIES

### I.    Introduction

Failing to advance its initial false advertising claim, Epson's 2AC deficiently provides new conclusory allegations without required pleading specificity to prevent Global's lawful competition.  "[C]ourts within the Central District routinely apply Rule 9(b) to Lanham Act claims," and Epson's allegations fail to meet the requisite pleading standard.  *Beyond Blond Prods., LLC v. Heldman*, No. 20-CV-5581-DSF-GJSX, 2022 WL 2036306, at *3 (C.D. Cal. Mar. 3, 2022) (collecting cases).

Despite having HP's written authorization in hand and HP's publicly available website identifying GAC as an "HP Official Licensee," the 2AC falsely alleges that Global, the U.S. distributor of HP Projectors, is falsely advertising projectors under the HP brand—in contradiction to decades of trademark licensing law.  Next, relying on misleading partial snapshots of unrelated third-party websites, Epson fails to plead the first and most essential element of a false advertising claim: that the *defendant itself* made the false or misleading statements about projector brightness.

Because California Unfair Competition Law ("UCL") claims must be "tethered to specific constitutional, statutory, or regulatory provisions," Epson's failure to plausibly plead its Section 1125 claim nullifies its UCL claim.  *Travelers Prop. Cas. Co. of Am. v. Centex Homes*, No. 11-3638-SC, 2013 WL 4528956, at *4 (N.D. Cal. Aug. 26, 2013).

Finally, Epson refused to remove immaterial and inapplicable allegations of "trademark infringement" (2AC ¶¶1, 3), which are likely to confuse and mislead the fact finder.  Epson's implausible claims should be dismissed in their entirety, a more definite statement provided, or all immaterial and impertinent matter stricken from the 2AC.

### II.    Factual Background

Epson learned during deposition, from document production, and online statements that Defendant Global is the Chicago-based authorized distributor of HP® Projectors ("Projectors").  RFJN Ex. A.  The Projectors are made by Global's associated company in China, Global Aiptek Corp d/b/a GT Technology Chongqing Limited ("GAC") under a

license from HP Hewlett Packard Group LLC ("HP Inc."). RFJN Ex. A. Both distributor Global and manu2ACturer GAC are companies in GAC Technology Group. RFJN Ex. B. Epson misleadingly alleges that Global has misrepresented itself as a licensee of HP Inc., but Global is the U.S. authorized distributor of HP Projectors and does not have—or advertise that it has—a trademark licensing agreement with HP. The HP license is held by GAC and HP projectors are advertised by GAC Technology Group. *See* 2AC ¶34; RFJN Ex. A; RFJN Ex. B ("GAC Technology Group, is the official licensee and manu2ACturer of HP® Projectors, under license from HP Inc."). The website <www.hp-projector.com> is owned by HP Inc. and clearly lists GAC as an official HP licensee. RFJN Exs. B and C; 2AC ¶6, 17, 20, 22, 24. Defendant Global is, however, allowed to distribute the Projectors as "HP" projectors. *See* RFJN Ex. A.

Epson's projectors retail between $449 to tens of thousands of dollars according to Epson's website. RFJN Exs. D and E. Global's Projectors range in price from under $200, for the most popular HP CC200 model, the portable, to the $3,000 larger model of which only a few were ever sold. 2AC ¶¶17-24. Though both parties sell projectors, Global sells predominantly inexpensive portable projectors for home use instead of Epson's more expensive professional projectors.

Over one year into this litigation, the parties have now engaged in substantial discovery and Epson has far more documents and information than in February 2023. Epson understands and acknowledges that GAC—not Global—marketed its Projectors using lumens or LED to show the light *source* brightness, not the light *output* brightness. 2AC ¶¶26-27. Still, Epson alleges that "[Global] uses false claims regarding the ***light output*** of its projectors*,*" meanwhile alleging that Global *does not advertise the light output* of the Projectors. *Id.* ¶7; ¶27 ("[Global] is aware that 'led lumens' and 'laser lumens' refer to the light source brightness of a projector, rather than the projector's output brightness…the ***light source brightness*** of a projector is irrelevant to a consumer's purchasing decision and ***is used by [Global]*** solely to mislead and confuse a potential customer.") (emphasis added). Epson's conclusory fabrications do not pass muster.

1    Even accepting Epson's twisted and misleading pleading, the 2AC fails plead with

2 the requisite specificity plausible false advertisement allegations, including identifying

3 the industry standard that projector brightness should be advertised, and that by that

4 standard the advertisements are literally false or misleading.  Accordingly, Epson's

5 claims should be dismissed.

6

7 ## III.    Legal Standard

8    Federal Rule of Civil Procedure 12(b)(6) provides for dismissing a claim where the

9 complaint does not "contain sufficient 2ACtual matter, accepted as true, to 'state a claim

10 to relief that is plausible on its 2ACe.'"  *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009)

11 (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)).  A claim is 2ACially

12 plausible when it "allows the court to draw the reasonable inference that the defendant is

13 liable for the misconduct alleged."  *Iqbal*, 556 U.S. at 678.  The court need not accept as

14 true "allegations that are merely conclusory, unwarranted deductions of 2ACt, or

15 unreasonable inferences."  *In re Gilead Scis. Sec. Litig.*, 536 F.3d 1049, 1055 (9th Cir.

16 2008).  "[F]or a complaint to survive a motion to dismiss, the non-conclusory 2ACtual

17 content, and reasonable inferences from that content, must be plausibly suggestive of a

18 claim entitling the plaintiff to relief."  *Levy v. adidas AG*, No. CV 18-6542 PSG (MAAx),

19 2018 WL 5942000, at *2 (C.D. Cal. Nov. 13, 2018) (citing *Moss v. U.S. Secret Serv.*, 572

20 F.3d 962, 969 (9th Cir. 2009)).  When the complaint's allegations are refuted by

21 documents, the court need not accept the allegations as true.  *Sprewell v. Golden State*

22 *Warriors*, 266 F.3d 979, 988 (9th Cir. 2001).

23    Lanham Act false advertising claims are subject to Rule 9(b)'s heightened pleading

24 requirements.  *Beyond Blond*, 2022 WL 2036306, at *3.  This heightened standard

25 applies when evaluating a Rule 12(b)(6) motion to dismiss.  *Semegen v. Weidner*, 780

26 F.2d 727, 731 (9th Cir.1985).  Fraud allegations must contain "an account of the time,

27 place, and specific content of the false representations as well as the identities of the

28 parties to the misrepresentations."  *Opperman v. Path, Inc.*, 84 F. Supp. 3d 962, 974–75

1  (N.D. Cal. 2015) (citing *Swartz v. KPMG LLP*, 476 F.3d 756, 765 (9th Cir. 2007)).

2      Rule 12(e) allows a court to grant a party's motion seeking a more definite

3  statement if the allegations are "so vague or ambiguous that the party cannot reasonably

4  prepare a response." *Palmtree Acquisition Corp. v. Neely*, 2011 WL 3419493, at*2 (N.D.

5  Cal. Aug 4, 2011).  A Rule 12(e) motion appropriately seeks clarity where allegations are

6  so general that ambiguity arises in determining the nature of the claim.  *Id*; *Sagan v.*

7  *Apple Computer, Inc.*, 874 F.Supp. 1072, 1077 (C.D. Cal. 1994).

8      Rule 12(f) permits a court to strike "any redundant, immaterial, impertinent, or

9  scandalous matter."  Fed. R. Civ. P. 12(f); *see, e.g., Fantasy, Inc. v. Fogerty*, 984 F.2d

10  1524, 1527 (9th Cir. 1993) (explaining that district courts enjoy wide discretion under

11  Rule 12(f) and defining "immaterial" and "impertinent" as having no "essential[,]"

12  "important[,]" or "necessary" relationship to suit), *rev'd on other grounds*, 510 U.S. 517

13  (1994).  Where allegations are unrelated to the claims, the court may strike such

14  allegations as prejudicial.  *Cortina v. Goya Foods, Inc.*, 94 F.Supp.3d 1174, 1182 (S.D.

15  Cal. 2015) (a court may strike allegations under 12(f) if the "matters sought to be omitted

16  have no possible relationship to the controversy, may confuse the issues, or otherwise

17  prejudice a party.").

18      The Court may consider 2ACts subject to judicial notice at the dismissal stage

19  without converting the movant's motion into one for summary judgment.  *Mullis v. U.S.*

20  *Bankr. Court*, 828 F.2d 1385, 1388 (9th Cir. 1987).  Similarly, the Court may consider

21  "documents incorporated into the complaint by reference."  *Prime Healthcare Servs., Inc.*

22  *v. Humana Ins.,* 230 F. Supp. 3d 1194, 1203 (C.D. Cal. 2017).  The incorporation by

23  reference doctrine "prevent[s] plaintiffs from surviving a Rule 12(b)(6) motion by

24  deliberately omitting references to documents upon which their claims are based."

25  *Antiaging Inst. of California, Inc. v. Solonova, LLC*, No. 15-03416-AB (FFMx), 2015

26  WL 12792028, at *1 (C.D. Cal. Nov. 19, 2015) (internal citations and quotations

27  omitted).

28

## IV.    Argument

### A.    Epson Does Not Plead with Specificity that Global Made the Advertisements and that They are Literally False or Misleading

The 2AC fails to plead its Lanham Act 15 U.S.C. 1125(a)(1)(B) ("Section 1125) false advertising with specificity under Rule 9(b)'s heightened pleading standard. *Beyond Blond*, 2022 WL 2036306, at *3.  Rule 9(b)'s heightened pleading standard applies not only when fraud is an essential element of a claim, but also where the claim is grounded in fraud.  *DVD Format/Logo Licensing Corp.*, 711 F. Supp. 2d 1074, 1085 (C.D. Cal. 2010) ("many district courts have applied this heightened pleading standard to [Lanham Act false advertising] claims that are grounded in fraud, such as misrepresentation claims.").

A Lanham Act false advertising claim must identify "the who, what, when, where, and how of the misconduct charged, as well as what is false or misleading about the purportedly false statement, and why it is false."  *Washoutpan.com, LLC v. HD Supply Constr. Supply Ltd.*, No. 19-CV-00494-ABJEMX, 2019 WL 9050859, at *5 (C.D. Cal. Aug. 5, 2019) (citations omitted).  A pleading is sufficient under Rule 9(b) if it "[identifies] the circumstances constituting fraud so that the defendant can prepare an adequate answer from the allegations."  *Walling v. Beverly Enters.*, 476 F.2d 393, 397 (9th Cir. 1973).  This requires that a plaintiff allege a false statement, and the "circumstances indicating falseness" must be set forth.  *In re GlenFed Sec. Litig.*, 42 F.3d 1541, 1548 (9th Cir. 1994).

To sustain a Section 1125 claim, a plaintiff must plead with particularity: (1) a false statement of 2ACt ***by the defendant*** in a commercial advertisement about its own or another's product; (2) the statement actually deceived or has the tendency to deceive a ***substantial segment of its audience***; (3) the ***deception is material*** because it is likely to influence the purchasing decision; (4) the defendant caused its false statement to enter interstate commerce; and (5) the plaintiff has been or is likely to be injured because of the false statement.  *Skydive Ariz., Inc. v. Quattrocchi*, 673 F.3d 1105, 1110 (9th Cir. 2012).

Epson has failed to plead: (1) that the advertisements were created by Global, (2)

the industry standard controlling projector brightness advertising and how its material, and, consequently, (3) that advertising light *source* brightness rather than light *output* brightness is literally false or misleading to consumers without specifying by what standard/reasoning this is actually misleading, (4) how Amazon's listing of HP as the manu2ACturer is literally false and actually misleading because of the licensing agreement, and (5) that a substantial numbers of consumers are likely to be, and actually are, misled by advertising of HP as the manu2ACturer or light *source* brightness rather than light *output* brightness.

In consumer negative reviews of Global's most popular model HP CC200, not one negative comment is made about brightness. https://www.walmart.com/reviews/product/476524932 (last visited May 22, 2024). The allegations do not advise Global of the charges against it such that it can respond in any meaningful way. Though Global asked[1] Epson why advertising light *source* brightness is false advertising—thus at least advising Epson that its claims were unclear—Epson's 2AC provided no clarity. Thus, Epson's false advertising cause of action should be dismissed.

      1.   **Global Did Not Create Any of the Advertisements Cited in the 2AC**

Epson's Section 1125 false advertising claim fails to allege 2ACts that Global *itself* made the advertisements. To plead the first prong of a false advertising claim, it is essential that a plaintiff must plead there is "a false statement of 2ACt ***by the defendant*** in a commercial advertisement about its own or another's product." *BHRS Grp., LLC v. Brio Water Tech., Inc.*, 553 F. Supp. 3d 793, 799 (C.D. Cal. 2021) (citation omitted) (emphasis added). The 2AC's examples of Global's purported alleged false statements

---

[1] Epson's original complaint asserted that Global's advertising of light source brightness was misleading and false because it violated the protocol of the "ANSI Standard" for advertising projector brightness and lumens. *See* Dkt. 1, Complaint ¶20. When asked during discovery to describe or identify the standard, Epson refused (or could not). Epson removed this allegation from the 2AC, but now fails to plead by what measure or "industry standard" Global was falsely advertising its Projectors.

are insufficient:

- ¶¶19, 21, 23: Epson cites to www.bhphotovideo.com.  As evidenced by the URL, Global did not create this "advertisement;" "bhphotovideo" did.  Indeed, Global is not affiliated with and does not do business with this company.

- ¶¶20, 22, 24: Epson does not include a URL, but states that the image shown is from "defendant's" website.  But as visible in the screenshots included in the 2AC, this website is run by "GAC Technology Group"—an "HP Official Licensee," visible in the upper left corner—not by Global.  Contrary to Plaintiff's pleading, GAC Technology Group is not Global.

Because Epson fails to allege that Global *itself* made the statements and because Epson did not plead enough 2ACts plausibly to connect the websites to Global rather than the third parties, its false advertising claim fails at the first element.

Further, Epson does not plead what lumen advertising standard should be used in advertising projectors, or how bhphotovideo.com, GAC Technology Group, Amazon.com, or (allegedly) Global are misrepresenting the brightness of their projectors.

### 2. Epson Does Not Plead Why the Advertising is Literally False or Misleading

To plead its false advertising claims, Epson "must set forth what is false or misleading about the statement, and why it is false."  *Vess v. Ciba-Geigy Corp. USA*, 317 F.3d 1097, 1106 (9th Cir. 2003) (citation omitted); *Southland Sod Farms v. Stover Seed Co.*, 108 F.3d 1134, 1139 (9th Cir.1997).  If, however, defendant's statement is only impliedly false, or is literally true but also likely to mislead or deceive consumers, plaintiff must produce evidence that the statement actually deceived or had a tendency to deceive consumers, and that the deception was material— was likely to influence purchasing decisions. *Century 21 Real Est. Corp. v. RE/MAX S. County*, 882 F. Supp. 915, 922 (C.D. Cal. 1994).  Epson does not plead how Global's use of light *source* brightness is literally false—or even improper—or even misleading.  In confusing and acrobatic allegations, Epson admits that Global is not actually misrepresenting the

brightness of its projectors *according to its own standard of measurement*: light *source* brightness.  Other than a passing conclusory allegation that "light source brightness of a projector is irrelevant to a consumer's purchasing decision and is used by Defendant solely to mislead and confuse a potential customer," the 2AC fails to plead with specificity evidence that the statement actually deceived consumers.  2AC ¶ 27.

### i.  The Advertisements Use Light Source Brightness, Not Light Output Brightness

In trying to plead Section 1125 false advertising, the 2AC confuses two distinct measures of brightness: light *source* brightness and light *output* brightness.  Though the 2AC provides little to no detail (likely intentionally) on what these two measures of brightness are, it specifically alleges that Defendant Global uses "'led lumens' and 'laser lumens' [to] refer to the light *source* brightness of [its] projector, rather than the projector's output brightness."  2AC ¶26 (emphasis added).  Epson then asserts that because Global uses light *source* brightness—LED and laser lumens—to advertise its projectors, customers are misled and confused.  *Id.* ¶27.  Epson's allegations would be akin to improperly flinging false advertising claims against household bulb manu2ACturers because they list the wattage of a bulb instead of its lumens.

But Epson's own pleading betrays these allegations and falls far short of the Rule 9(b) requirements.  At the beginning of the 2AC, Epson specifically asserts that the "action seeks redress for [Global's] deliberate and unlawful misleading representations regarding **the light output** of its projectors.  Defendant uses false claims regarding **the light output** of its projectors in its product descriptions and advertising."  *Id.* ¶7 (emphasis added).  But Epson does not plead that Global advertises light *output*.  How could Global falsely advertise or mislead consumers by advertising a measurement it does not use?

But even *if* the advertisements' mere *use* of light *source* brightness was itself misleading, the 2AC does not identify by what standard projectors must be advertised such that Global's alleged advertising is misleading or false.  Thus, should the Court not

-8-

MOTION TO DISMISS/STRIKE/DEFINITE STATEMENT 2AC

1  dismiss the claims, it should order Epson to provide a more definite statement.

2
3      ii.    **Epson Fails to Plead the Standard for Advertising Projector**
              **Brightness, and Why Global's Use of Light Source Brightness**
4             **is False or Misleading**

5      Epson's failure to allege with particularity *why* or *how* Global's alleged use of light

6  source brightness is literally false—or even misleading—is fatal to its claims.

7  Allegations of fraud must be "specific enough to give defendants notice of the particular

8  misconduct which is alleged to constitute the fraud charged so that they can defend

9  against the charge and not just deny that they have done anything wrong." *Semegen*, 780

10 F.2d at 731.  Here, Epson does not identify an industry standard or why Global's alleged

11 use of light *source* brightness is literally false.  While the determination whether an

12 advertising claim is misleading to consumers is evaluated from the public's perspective,

13 "[i]n order to determine whether a claim is literally false courts have looked to objective

14 industry standards ..." *Compaq Comput. Corp. v. Packard Bell Elecs.*, Inc., 163 F.R.D.

15 329, 336 (N.D. Cal. 1995) (citing *Castrol, Inc. v. Pennzoil, Co.*, 799 F.Supp. 424, 436

16 (D.N.J.1992)).  Industry standard or not, Epson does fails to specifically plead why or

17 how Global's alleged advertising is improper, false, or misleading.

18     For example, Epson alleges in conclusory fashion that "[u]nlike a projector's

19 output brightness, the light source brightness of a projector is irrelevant to a consumer's

20 purchasing decision and is used by Defendant solely to mislead and confuse a potential

21 customer." 2AC ¶ 27.  This allegation that light source brightness is "irrelevant" to

22 consumers is not a commonly known 2ACt, nor is it supported by any evidence.  Indeed,

23 Epson is merely alleging a nonactionable opinion that its method of advertising projectors

24 is correct, and Global's alleged method is incorrect.  Epson fails to specifically identify

25 any industry mandate that only an ANSI measurement must be used in advertising

26 projectors rather than the readily acceptable LED or Laser lumen unit of measurement.

27     Epson's conclusory allegation of where brightness should be measured—source or

28 output—does not meet Rule 9(b)'s heightened pleading standard.  The court is "not

-9-

1   bound to accept as true a legal conclusion couched as a 2ACtual allegation." *Iqbal*, 556
2   U.S. 662, 678 (2009) (internal quotation marks omitted); *Harris v. Rand*, 682 F.3d 846,
3   850 (9th Cir. 2012) ("the tenet that a court must accept as true all of the allegations
4   contained in a complaint is inapplicable to legal conclusions." (citing *Iqbal*, 556 U.S.
5   at 678). "Nor does a complaint suffice if it tenders naked assertion[s] devoid of further
6   2ACtual enhancement." *Id.* at 678 (alteration in original; internal quotation marks
7   omitted). Epson provides no support or even reasoning for concluding that consumers
8   find Global's specifications "irrelevant" or are "confused" by such specifications.
9   Epson's unfounded position would expose household bulb manu2ACturers to liability for
10  including only bulb wattage and not lumens.

### 3. Epson's Claim that Global Falsely Advertises its Products Under the HP® Mark is not Actionable

13      The Lanham Act prohibits false advertising as to "the nature, characteristics,
14  qualities, or geographic origin" of the goods, not if the goods originate from a licensor or
15  licensee. 15 U.S.C. § 1125(a)(1)(B). Epson uses the acronym "GAC" to refer to Global
16  to create confusion with Global's affiliated Chinese company GAC, which relationship
17  was detailed during Global's deposition. RFJN Ex. A. Throughout the 2AC, Epson
18  repeatedly alleges that Global has used "the false brand name" and is misleading
19  consumers as to the "brand" of projector. *See, e.g.,* 2AC ¶¶ 32-34, 37, 45. Despite
20  having the HP Authorization Letter to Global and discussing the impropriety of Epson's
21  branding allegations with Epson's counsel before and after the filing of the 2AC, Epson
22  *still* maintains its baseless allegation that the Projectors are "misbranded." Cohen Decl.
23  ¶¶2-4.
24      Epson next argues that the advertisement is "literally false" because it lists "HP"
25  next to "Manu2ACturer" on Amazon's webpage listing, which Global does not control—
26  Amazon does. RFJN Ex. F (complete webpage). Notwithstanding Epson's verifiably
27  untrue allegation in paragraph 33 that Global manu2ACtures its own projectors (HP
28  Projectors are manu2ACtured in China by GAC, not in Illinois by Global), Epson is

-10-

grasping at straws.  Epson would have this Court rule that every listing on Amazon must list the *manu2ACturing plant name* next to a product, rather than the product's brand name, or else it is false.  It would be akin to suing Apple for false advertising over Apple's use of its Apple trademark on iPhones because Apple does not manu2ACture the iPhone, which is actually manu2ACtured by Foxconn by agreement. https://www.forbes.com/sites/patrickmoorhead/2019/04/13/who-are-apples-iphone-contract-manu2ACturers/ (last visited May 23, 2024).  It defies logic and the spirit of the Lanham Act.

In *Okyon*, plaintiff rested its doomed Lanham Act false advertising claims on allegations that, without any license from Nintendo, (1) defendant's falsely advertised its product was a "Nintendo Licensed Product" on its Amazon listing, (2) by displaying the Nintendo trademark on the product's packaging to mislead consumers that defendant had a license from Nintendo to officially manu2ACture the product, and (3) that defendant was authorized to use Nintendo's technologies or patents.  *Okyon Holdings Inc. v. Hori (U.S.A.) Inc.*, No. 2:21-CV-09213-AB-PDX, 2022 WL 21805919, at *2 (C.D. Cal. Feb. 24, 2022).  The court quickly dismissed plaintiff's Lanham Act claim because it did not meet the heightened pleading standard by "fail[ing] to allege why and how Defendant's use of the Nintendo license mark is misleading and has mislead a substantial portion of consumers and retailers.  Instead, Plaintiff's allegations describe and depict Defendant's use of the Nintendo license mark, then state in a conclusory fashion those statements are misleading in three possible ways [listed above].  Plaintiff fails to set forth any 2ACts demonstrating how Plaintiff arrived at that conclusion, which are required to show the allegation is plausible." *Id*. at *6.

Here, dismissal is more appropriate because Global—distributing HP products under a license from HP through GAC—is deficiently alleged in rote fashion to engage in false advertising by using the HP mark.  Epson fails to allege "why and how" providing the HP mark on listing of goods instead of "manu2ACtured under license from HP" would be misleading, let alone misleading to "a substantial portion of consumers and

MOTION TO DISMISS/STRIKE/DEFINITE STATEMENT 2AC

1    retailers."

2        Further, even if Global were infringing HP's mark or wrongfully associating itself

3    with HP, Epson lacks standing to challenge Global's use of the HP® mark under the

4    Lanham Act because Epson does not plead that it owns or has any interest in the HP®

5    mark.  No allegation links Global's use of the HP® mark and Epson's claimed harm.  *See*

6    5 McCarthy on Trademarks and Unfair Competition § 32:12 (5th ed.) ("In the context of

7    the closely related claim of false advertising alleged to violate Lanham Act § 43(a)(1)(B),

8    15 U.S.C.A. § 1125(a)(1)(B), proximate causation means that the plaintiff can trace its

9    economic or reputational damage directly to the defendant's misrepresentation").

10   Global's use of HP®'s mark to advertise its projectors is not only permitted by an

11   express grant by HP®, but Epson does not—and cannot—plead how GAC's use of "HP"

12   harms Epson.  Accordingly, the Court should dismiss this cause of action without leave to

13   amend.

14       **B.    Epson Cannot Plead the Advertising Was Unlawful or Unfair, and a**

15            **Corporate Competitor Cannot Sustain a UCL Fraud Claim**

16       In failing to plead its Section 1125 claim, Epson's second cause of action must be

17   dismissed because a corporate competitor cannot sustain a California unfair competition

18   claim without first showing said conduct was unlawful under another statute.  Section

19   17200 prohibits "any unlawful, unfair or fraudulent business act or practice."  *Cel–Tech*

20   *Communications Inc. v. Los Angeles Cellular Tel. Co.*, 20 Cal.4th 163, 180, 83

21   Cal.Rptr.2d 548, 973 P.2d 527 (1999).  UCL claims must be "tethered to specific

22   constitutional, statutory, or regulatory provisions"—they are not self-sustaining.  *Centex*

23   *Homes*, 2013 WL 4528956, at *4.

24       As indicated by the alternative "or" statute's language, each Section 17200

25   prong—unlawful, unfair, and fraudulent—is analyzed separately and has distinct legal

26   meaning.

27       1.    **Unlawful: Epson's UCL Claim Fails Alongside its Lanham Act**

28            **Section 1125 Claim**

-12-

The UCL's "unlawful" prong "'borrows violations of other laws and treats them as unlawful practices that the unfair competition law makes independently actionable.'" *Wilson v. Hewlett–Packard Co.*, 668 F.3d 1136, 1140 (9th Cir. 2012) (quoting *Cel–Tech*, 20 Cal. 4th at 187).  Here, only Epson's Lanham Act Section 1125 claim could support a claim under the "unlawful" prong of the UCL.  *Finuliar v. BAC Home Loans Servicing, L.P.*, No. 3:11–cv–02629–JCS, 2011 WL 4405659, at *9 (N.D. Cal. Sep. 21, 2011) (citing *People v. McKale*, 25 Cal.3d 626, 635 (1979)).  Epson failed to plausibly plead its Section 1125 claim, thus, it cannot sustain its UCL claim under the unlawful prong.

### 2.  Unfair: Epson Does Not Allege that Global's Conduct Violates Antitrust Law

The California Supreme Court has held that "[w]hen a plaintiff who claims to have suffered injury from a direct competitor's 'unfair' act or practice invokes section 17200, the word 'unfair' in that section means conduct that threatens an incipient violation of an antitrust law, or violates the policy or spirit of one of those laws because its effects are comparable to or the same as a violation of the law, or otherwise significantly threatens or harms competition."  *BHRS Grp.*, 553 F. Supp. 3d at 802 (citation omitted).

Here, Epson does not allege that Global's purported misconduct violates antitrust law or has effects comparable to violating an antitrust law.  Rather, Epson merely alleges, in conclusory fashion, that Global's "wrongful conduct has resulted in increased sales and market share of GAC's projectors while hindering the sales and market share of Epson's projectors and damaging Epson's goodwill."  2AC ¶42.  Such allegations are mere "labels and conclusions," which, without supporting evidentiary 2ACts—and, here, a specific pleading of an antitrust claim—are not enough to survive a motion under Rule 12(b)(6).  *See Twombly*, 550 U.S. at 555.  Thus, Epson cannot sustain its UCL claim on the "unfair" prong of the UCL.

### 3.  Fraudulent: As a Competitor and Not a Consumer, Epson Lacks Standing to Bring Fraud Claim

Though Epson implausibly and in conclusory fashion alleges Global committed

-13-

MOTION TO DISMISS/STRIKE/DEFINITE STATEMENT 2AC

"fraudulent business acts and practices" (2AC ¶¶ 54-55, 58-59), "corporate competitors," such as Epson, are "not entitled to the protection of the [fraudulent] prong of § 17200 because [they] are not a member of the public or a consumer entitled to such protection." *Capella Photonics, Inc. v. Cisco Sys., Inc.*, 2014 WL 8097683, at \*11 (N.D. Cal., Dec. 23, 2014, C-14-3348 EMC) (citing *Watson Laboratories, Inc. v. Rhone–Poulenc Rorer, Inc.*, 178 F.Supp.2d 1099, 1121 (C.D.Cal.2001).

The fraud prong of the UCL is intended to protect members of the "general public;" a sophisticated corporation such as Epson, cannot be defrauded under the UCL. *Rosenbluth International, Inc. v. Superior Court*, 101 Cal.App.4th 1073, 1077–79, 124 Cal.Rptr.2d 844 (2002) (holding that "sophisticated corporations" are not members of the "general public" for the purposes of the UCL); *Watson Labs*, 178 F. Supp. 2d at 1121 ("The Court has identified no case under the 'fraudulent' prong of [section] 17200 allowing one competitor to proceed against another on the basis that the defendant deceived him").

But even if Epson could sustain a UCL claim under the fraud claim, as detailed above, Epson failed to plead any claim of false advertising with the requisite specificity under Rule 9(b).  Like federal claims based in fraud, UCL fraud claims are subject to Rule 9(b)'s pleading requirements.  *Kearns v. Ford Motor Co.*, 567 F.3d 1120, 1124-25 (9th Cir. 2009) (finding Rule 9(b)'s heightened pleading standards apply to claims for violations of the UCL and upholding the district court's dismissal of a UCL claim grounded in fraud with particularity as required by Rule 9(b)).

Here, Epson cannot sustain a UCL claim under any theory that Global's alleged advertising was unlawful, unfair, or fraudulent.  Epson's second cause of action should be dismissed.

## V.    The Court Should Also Strike Epson's Immaterial Allegations

Should the Court not dismiss Epson's claims in their entirety, Global requests that this Court exercise its power under Federal Rule 12(f) and strike certain impertinent,

immaterial parts of the 2AC as both confusing and prejudicial to Global.

Under Rule 12(f), this Court may strike immaterial or impertinent matter if it will eliminate "serious risks of prejudice to the moving party, delay, or confusion of the issues." *See* Fed. R. Civ. P. 12(f); *N.B. v. Cnty. of Los Angeles*, No. 221CV02165FLAPDX, 2022 WL 19915278, at *2 (C.D. Cal. Mar. 30, 2022) (citation omitted). "Immaterial matter is that which has no essential or important relationship to the claim for relief or the defenses being pleaded. Impertinent matter consists of statements that do not pertain, and are not necessary, to the issues in question." *Fantasy, Inc.*, 984 F.2d at 1527. If a plaintiff cannot show a "nexus" between the claims at issue and the allegations or evidence, it is both immaterial and impertinent. *See N.B.*, 2022 WL 19915278, at *2. The Ninth Circuit has held that prejudice may arise from allegations that cause "confusion of the issues." *Fantasy, Inc.*, 984 F.2d at 1528; *CD Ride, Corp. v. Travelers Companies, Inc.*, No. CV1104414SJOMRWX, 2011 WL 13220709, at *1 (C.D. Cal. July 12, 2011).

Epson's 2AC improperly includes: (1) allegations of trademark infringement, though no infringement of the Epson marks is pleaded or can be pleaded; (2) misbranding, though Global has clear authorization to sell HP Projectors; and (3) a prayer for relief of punitive or exemplary damages, which are not authorized under the UCL.

## A.   Epson's Baseless Allegations of "Trademark Infringement" are Immaterial, Impertinent and Likely to Confuse the Issues, Thus Prejudicing Global

Epson's 2AC improperly alleges "[t]his is an action for trademark infringement," which is false. Epson pleads no claim for trademark infringement. Epson has presented no evidence that Global infringed on Epson's trademarks. Epson does not allege that Global is using the "Epson" mark on projectors, and such use is likely to cause consumer confusion. *See Gearsource Holdings, LLC v. Google LLC*, No. 18-CV-03812-HSG, 2020 WL 3833258, at *4 (N.D. Cal. July 8, 2020). Global pointed out this improper pleading of trademark infringement before and after filing the 2AC, but Epson refused to remove the allegations. Cohen Decl. ¶¶2-4.

MOTION TO DISMISS/STRIKE/DEFINITE STATEMENT 2AC

Global requests that this court strike the 2AC's following improper and confusing references to trademark infringement:

- **2AC ¶1: "This is an action for trademark infringement"**

The first line of Epson's 2AC incorrectly alleges that Global committed trademark infringement. But Epson's 2AC does not plead—nor can it plead—a cause of action for trademark infringement. Trademark infringement refers to the unauthorized use of a trademark in a way that is likely to cause consumer confusion. *See* 15 U.S.C. §§ 1114, 1125(a)(1)(A). Section 1125 creates two distinct bases of liability: false association/common law trademark infringement, Section 1125(a)(1)(A), and false advertising, Section 1125(a)(1)(B). *See Waits v. Frito–Lay, Inc.*, 978 F.2d 1093, 1108 (C.A.9 1992). Here, the 2AC alleges only false advertising. Thus, the trademark infringement allegation is irrelevant and impertinent.

Epson insists that because its claim is brought under the Lanham Act, it is a trademark infringement claim. Not so. Trademark infringement is a distinct cause of action with distinct elements—including infringing use of a mark—not pleaded here.

- **2AC¶3: "Global has caused injury to Epson's trademarks in the State of California and this District"**

There are no allegations or evidence presented to support Epson's allegation of infringement, or that Global damaged Epson's trademark. These two statements should be stricken. Rule 12(f) permits a court to strike "any redundant, immaterial, impertinent, or scandalous matter." Fed. R. Civ. P. 12(f). Apart from being "immaterial," Epson's allegations of trademark infringement are patently false—Epson does not and cannot plead that Global used Epson's trademark. The false allegations tend to prejudice Global and are likely to mislead the trier of 2ACt or unnecessarily complicate the issues. Indeed, the trademark allegations taint the case by insinuating that Global is somehow falsely associating itself with the HP® trademark or is infringing Epson's or HP's trademarks.

Even *if* Epson is trying to allege that Global is infringing on HP®'s trademark, it lacks standing to do so. Only the owner of a trademark—or one with a direct interest in a

-16-

MOTION TO DISMISS/STRIKE/DEFINITE STATEMENT 2AC

mark—can bring an infringement cause of action.  *Halicki Films, LLC v. Sanderson Sales & Mktg.*, 547 F.3d 1213, 1225 (9th Cir. 2008).  The Court should strike these portions of the 2AC.

### B.    The Court Should Strike All Mentions of Projector Misbranding

HP Inc. expressly authorized GAC to manu2ACture and Global to distribute HP branded projectors.  Thus, Epson's numerous mentions of misbranding and misuse of the HP mark, outlined below, should be stricken:

- ¶32: "Moreover, on its online advertisements, Defendant prominently displays that its projectors are manu2ACtured by 'HP' suggesting to consumers that the projectors are manu2ACtured by the Hewlett-Packard Company."
- ¶33: "These advertisements are false as Defendant, not the Hewlett-Packard Company, manu2ACtures the projectors sold by Defendant."
- ¶34: "Furthermore, at its deposition, Defendant testified that it does not have a licensing agreement with the Hewlett-Packard Company. Yet, at the same time, Defendant in its press releases touts that it has a licensing agreement with the Hewlett-Packard Company. Defendant's positions are at odds with each other and only one can be true while the other is false."
- ¶35: "Defendant makes these claims, recognizing the importance of brand recognition to a consumer."
- ¶37: "false brand name"
- ¶45: "including the brand" (as an actual misstatement/misleading statement)
- Prayer for Relief ¶B: "correct product brand" (asking for corrective advertising)

These allegations are impertinent and immaterial, and if included, will strongly prejudice Global.  First, Global incorporates its above arguments, noting that listing the projectors as "HP" projectors—and the manu2ACturer as HP—is not false or misleading. Second, while GAC manu2ACtures the Projectors, and GAC Technology Group

-17-

advertises the Projectors (*see, e.g.*, ¶22, RFJN Ex. A), Defendant Global does not manu2ACture the projectors nor advertise itself as the licensee.  Like Epson's allegation of trademark infringement, these allegations only confuse the issues and taint the case, creating the appearance that Global is falsely associating itself with HP.  Accordingly, these references should be stricken from the 2AC.

### C.    The UCL Does Not Allow Exemplary or Punitive Damages

Exemplary and punitive damages are unavailable for Epson's UCL cause of action and should be stricken.  Nonrestitutionary and punitive damages are not available under the UCL.  *See, e.g., Korea Supply Co. v. Lockheed Martin Corp.*, 29 Cal. 4th 1134, 1148 (2003) (noting that damages cannot be recovered under the UCL, limiting prevailing plaintiffs to injunctive relief and restitution); *Groupion, LLC v. Groupon, Inc.*, 859 F.Supp.2d 1067, 1083 (N.D. Cal. 2012) ("Punitive damages are not recoverable under ... California's UCL."); *Cosmos Jewelry Ltd. v. Po Sun Hon Co.*, 470 F.Supp.2d 1072 (C.D. Cal. 2006) ("neither nonrestitutionary or punitive damages are an available form of remedy under California Business and Professions Code § 17200").

In paragraph 59 of the 2AC, Epson asserts that it is "entitl[ed] to an award of exemplary and punitive damages in an amount appropriate to punish or set an example of [Global]."  Neither form of damages Epson seeks is recoverable under this statute, thus, such claims must be dismissed or stricken.  *Powell v. Wells Fargo Home Mortg.*, No. 14-CV-04248-MEJ, 2017 WL 2720182, at *7–8 (N.D. Cal. June 23, 2017), aff'd, 855 F. App'x 382 (9th Cir. 2021) ("Because the UCL only permits restitution or injunctive relief, the Court DISMISSES any claim for exemplary or punitive damages.").

## VI.    Conclusion

Epson's 2AC fails to plausibly plead a Section 1125 false advertising claim with Rule 9(b)' specificity requirement because (1) Global did not create the advertisements, (2) stating the source versus the output brightness is not literally false or misleading, (3) HP Inc. authorized the use of the HP brand on the Projectors, (4) how Amazon's listing

-18-

HP as the manu2ACturer is literally false and actually misleading because of the licensing agreement, and (5) that a substantial numbers of consumers are likely to be, and actually are, misled by advertising of HP as the manu2ACturer or light *source* brightness rather than light *output* brightness.  .  Because Epson's UCL claim falls with its Section 1125 claim, both claims are thus unsustainable as pleaded.  The Court should dismiss Epson's complaint in its entirety, or in the alternative, (1) strike the immaterial, impertinent and prejudicial allegations, or (2) order a more definite statement.

Dated:  January 27, 2025                Respectfully submitted,

                                        **COHEN IP LAW GROUP P.C.**

                                        /s/ Michael N. Cohen
                                        Michael N. Cohen
                                        Attorneys for Defendant
                                        GLOBAL AIPTEK INC

MOTION TO DISMISS/STRIKE/DEFINITE STATEMENT 2AC

## **CERTIFICATE OF COMPLIANCE**

The undersigned, counsel of record for Defendant Global Aiptek Inc. certifies that this brief contains *** words, which complies with the word limit of L.R. 11-6.1 and this Court's Standing Order.

Dated:  January 27, 2025          By:  /s/ Michael N. Cohen
                                   Michael N. Cohen
                                   Attorney for Defendant
                                   GLOBAL AIPTEK INC.

MOTION TO DISMISS/STRIKE/DEFINITE STATEMENT 2AC