**K&L Gates LLP**
10100 Santa Monica Boulevard
Eighth Floor
Los Angeles, California 90067
Telephone: 310.552.5000
Facsimile: 310.552.5001
Christina N. Goodrich (SBN 261722)
christina.goodrich@klgates.com
Zachary T. Timm (SBN 316564)
zach.timm@klgates.com

**K&L Gates LLP**
State Street Financial Center
One Lincoln Street
Boston, Massachusetts 02111
Telephone: 617.261.3134
Facsimile: 616.261.3175
Morgan T. Nickerson (admitted *pro hac vice*)
morgan.nickerson@klgates.com
*Attorneys for Plaintiff*
*Epson America, Inc.*

## UNITED STATES DISTRICT COURT

## CENTRAL DISTRICT OF CALIFORNIA – SOUTHERN DIVISION

| | |
|---|---|
| EPSON AMERICA, INC.<br><br>Plaintiff,<br><br>v.<br><br>GLOBAL AIPTEK INC.; and GAC TECHNOLOGY GROUP,<br><br>Defendant. | Case No.: 8:23-cv-00222-FWS-DFM<br><br>**DISCOVERY MATTER**<br>Magistrate Judge: Hon. Douglas F. McCormick<br><br>**NOTICE OF MOTION AND MOTION TO COMPEL DEFENDANT GLOBAL AIPTEK INC. TO COLLECT AND PRODUCE DOCUMENTS AND PRODUCE WITNESSES FOR DEPOSITION**<br><br>Hearing Date:   March 4, 2025<br>Time:          10:00 a.m.<br>Courtroom:    6B |

**TO THE COURT, ALL PARTIES, AND THEIR ATTORNEYS OF RECORD:**

**PLEASE TAKE NOTICE THAT**, on March 4, 2025 at 10:00 a.m., or as soon thereafter as the matter may be heard, in Courtroom 6B of the Ronald Reagan Federal Building and United States Courthouse, located at 411 W. Fourth St., Santa Ana, California 92701, before the Honorable Douglas F. McCormick, Plaintiff Epson America, Inc. ("Epson" or "Plaintiff") will, and hereby does, move the Court to compel Defendant Global Aiptek Inc. ("Global" or "Defendant") to comply with the Parties' prior agreements (including those reached during a June 12, 2024 Informal Discovery Conference and thereafter).  Specifically, Epson seeks an order compelling Global to search for and produce documents responsive to the First and Second Set of Requests for Production propounded by Epson pursuant to the Parties' previously agreed upon search and production protocols, as well to compel Global to produce three of its witnesses for deposition.  Epson further seeks an order compelling Global to retain and utilize an ESI vendor to assist in the document collection, search, and production.

Epson makes this Motion pursuant to Rules 26, 30, 34, and 37 of the Federal Rules of Civil Procedure, and Local Rule 37 on the grounds that Global has not produced documents responsive to Requests for Productions Set One or Two propounded by Epson on May 2, 2023 (deemed served on May 9, 2023 following the Parties' Rule 26(f) conference of counsel), and May 2, 2024, respectively, despite the Parties' prior extensive meet and confer efforts, including the Parties June 12 Informal Discovery Conference and subsequent continuing meet and confer efforts resulting in agreement on collection, search, and production protocols.  Epson further seeks an order compelling Global to retain and utilize an ESI vendor to collect, search for, and produce documents.

Epson further makes this Motion on the grounds that Global has similarly failed to produce three of its witnesses—Frank Sheu (individually and as a 30(b)(6) designee), Ali Khouzema, and Allen Steinberg—for deposition despite the Parties' prior agreement regarding the same.

The Parties have engaged in extensive meet and confer efforts regarding deficiencies

1

in Global's responses to discovery in this action. Through those efforts, the Parties were able to reach numerous agreements, including that Global would search for and produce documents based upon agreed upon search terms and collection/production protocols, and that Global would produce Messrs. Sheu, Khouzema, and Steinberg for deposition. Despite these prior agreements, Global has produced neither its documents nor its witnesses.

Epson attempted to resolve these disputes through an additional Informal Discovery Conference, and in fact did engage in such a conference on October 16, 2024. This IDC was unfortunately unsuccessful, including because Global's counsel has indicated there has been a breakdown of the attorney-client relationship. During that October 16 IDC, this Court therefore stated that a formal motion to compel would be necessary to obtain the relief Epson seeks.

As such, Epson hereby brings this Motion. Simply put, Epson seeks an order compelling Global to comply with its prior agreements.

Epson further seeks appropriate sanctions in the amount of $35,440.50, which represents less than the total attorneys' fees incurred by Epson in meeting and conferring and attempting to obtain Global's compliance with the Parties' prior agreements, including in bringing this Motion.

This Motion is based upon this Notice of Motion, the Joint Stipulation Regarding the Motion, and the Declaration of Zachary T. Timm and exhibits thereto, all of which are filed concurrently herewith; any forthcoming Supplemental Memorandum of Law in support of the Motion and any papers files therewith; the pleadings and other papers on file in the above-captioned action; any information of which the Court may take judicial notice; and any oral argument on the Motion.

## STATEMENT OF LOCAL RULE 37-1 COMPLIANCE

Epson makes this Motion following meet-and-confer conference of counsel held pursuant to Local Rule 37-1. Specifically, on October 2, 2024, Epson sent Global a Local Rule 37-compliant meet and confer letter outlining Epson's position. (Declaration of Zachary T. Timm ("Timm Decl."), ¶ 6, Ex. A.) The Parties thereafter met and conferred,

PLAINTIFF'S NOTICE OF MOTION AND MOTION TO COMPEL DEFENDANT GLOBAL AIPTEK INC. TO COLLECT AND PRODUCE DOCUMENTS, AND PRODUCE WITNESSES FOR DEPOSITION

through counsel, on October 9, 2024, during which they agreed to conduct an IDC. (*Id*., at ¶ 7.) The Parties thereafter conducted an IDC before this Court on October 16, 2024. (*Id*.) Unfortunately, the Parties were unable to resolve these discovery disputes either through meet and confer efforts, or with the Court's assistance during the October 16 IDC, thus necessitating this Motion. (*Id*., at ¶ 8.) On October 17, 2024, following an in-person hearing, Epson's counsel confirmed to Global's counsel that Epson intended to proceed with a motion to compel and would be transmitting the joint stipulation to obtain Global's position. (*Id*., at ¶ 9.)

On October 25, 2024, Epson served Global, through its prior counsel, with a copy of a draft joint discovery stipulation and all accompanying documents pursuant to Local Rule 37-2. (Timm Decl., ¶21.) Global's prior counsel's motion to withdraw as counsel was granted on November 12, 2024, prior to providing Global's position in the joint stipulation. (Timm Decl., ¶22; DE. 73.) Global's new counsel filed a notice of appearance on December 17, 2024. (DE. 74.) On December 18, 2024, Epson served Global's new counsel with the same draft joint discovery stipulation and accompanying documents as had been served on Global's prior counsel, requesting Global's position in the by January 10, 2025, and offering to meet and confer further. (Timm Decl., ¶ 24, Ex. L.) Global's counsel did not respond, despite several follow-up emails. (*Id*.)

On January 9, 2025, Global's new counsel requested an extension of time to provide its position in the joint discovery stipulation. (Timm Decl., ¶ 25.) Epson granted a 1 week extension to January 17, 2025, indicating it then intended to file its motion on January 20, 2025. (*Id*.) The Parties thereafter continued to meet and confer, through counsel, including at least 2 telephone calls and several emails. (Timm Decl., ¶¶ 26-29, Ex. M.)

At Global's request, Epson agreed to forestall filing this Motion in an attempt to reach an agreement between the Parties. (Timm Decl., ¶ 27-28, Ex. M.) Specifically, Epson agreed to extend Global's deadline to provide its position in the joint discovery stipulation by an additional week to January 24, 2025, during which week the Parties would attempt to enter into a written agreement satisfactory to Epson to avoid the need for this Motion. (*Id*.) The

Parties further agreed that, if no written agreement could be reached, Global would provide its position to the joint discovery stipulation by January 24, 2025, and Epson would file the same on January 27, 2025. (Timm Decl., Ex. M at p. 21.) The Parties were unable to reach an agreement, including because Global refused to conduct searches on all of the previously agreed upon custodians' emails and other cloud storage systems. (*Id*., at pp. 13-20.) In response, Epson's counsel again explained that no documents had been produced following Global's agreement to run searches, and that if Global would not honor its prior agreement to run searches on each of the previously agreed-upon custodian, Epson would need to file its Motion to Compel. (*Id*., at p 13.) Global's counsel then asked for a further telephonic meet and confer, to which Epson's counsel agreed while also explaining that, unless Global would agree to comply with its prior agreements, Global needed to provide Epson with its position in the joint stipulation by January 29, 2025. (*Id*., at 10-12.) On January 29, 2025, Global's counsel then asserted the false position that it had already searched for and produced documents pursuant to the prior agreement, and did not call Epson's counsel. (*Id*., at 7-10.) Epson's counsel once again notified Global's counsel of the mistake and corrected the same via email on January 29, 2025. (*Id*.) Also on January 29, 2025, Epson's counsel stated that, given the ongoing dispute, Global needed to provide its position to the joint discovery stipulation by Friday, January 31, 2025, and that Epson would be filing its motion to compel on Monday, February 3, 2025, whether or not Global's position had been received. (*Id*., at pp. 7-9.)

Global's counsel responded citing to a prior document production, which had been made *before* the Parties entered into their agreement with respect to collection and production of documents from the 5 custodians at issue in this Motion. (*Id*., at pp. 4-6.) Epson's counsel explained how such production did not demonstrate compliance with the Parties' prior agreement, and once again confirming that Epson looked forward to receiving Global's position in the joint discovery stipulation by January 31, 2024. (*Id*., at pp. 2-5.)

Despite the *numerous* meet and confer efforts and exhaustive attempts to obtain documents from Global pursuant to the Parties' prior agreements, Global has still refused to

4

search for and produce all documents consistent with its prior agreements. (*Id*., at 1-2.) Nor has Global provided its position on the joint discovery stipulation despite having the same since October 2024 through its prior counsel, and December 18, 2024, through its current counsel. Instead, on February 3, 2025, Global's confirmed via email once again that it *would not* comply with its prior agreements with respect to document collection and production, as well as depositions. (*Id*., at 1-2.)

Setting aside the contradictory and often incorrect positions Global has asserted through the meet and confer process, it is evident that Global does not intend to comply with its prior agreement, and thus this Motion is necessary. Similarly, despite being provided *numerous* opportunities to provide its position to the joint discovery stipulation, Global has failed to do so. Epson cannot be required to continue to suffer Global's delay tactics, and thus brings this motion without Global's position pursuant to Local Rule 37-2.4

Dated: February 3, 2025                              **K&L GATES LLP**

By:  */s/ Zachary T. Timm*

Christina N. Goodrich
Zachary T. Timm
Morgan T. Nickerson (admitted *pro hac vice*)

Attorneys for Plaintiff
Epson America, Inc.

**PLAINTIFF'S NOTICE OF MOTION AND MOTION TO COMPEL DEFENDANT GLOBAL AIPTEK INC. TO
COLLECT AND PRODUCE DOCUMENTS, AND PRODUCE WITNESSES FOR DEPOSITION**

1

# **TABLE OF CONTENTS**

Page

I.    EPSON'S INTRODUCTORY STATEMENT ................................................ 1

II.    DEFENDANT'S INTRODUCTORY STATEMENT ...................................... 5

III.    THE DISCOVERY REQUESTS ..................................................................... 5

    A.    Requests for Production Set One (RFPs 1-19) ...................................... 5

    B.    Requests for Production Set Two (RFPs 20-28) ................................. 17

    C.    Epson's Argument ............................................................................... 22

        1.    Global Should Be Compelled to Search for, Collect, and
            Produce Documents Consistent With The Parties' Prior
            Agreement ................................................................................ 22

        2.    Monetary Sanctions Are Warranted in Light Of Epson's
            Good Faith Efforts and Global's Lack of Justification for
            Opposition ............................................................................... 24

    D.    Global's Argument .............................................................................. 27

IV.    THE DEPOSITIONS ..................................................................................... 27

    A.    Epson's Argument ............................................................................... 27

    B.    Global's Argument .............................................................................. 28

V.    CONCLUSION .............................................................................................. 29

    A.    Epson's Conclusion ............................................................................. 29

    B.    Defendant's Conclusion ...................................................................... 29

# **TABLE OF AUTHORITIES**

**Rules**

Fed. R. Civ. P. 37(a)(5)(A) ................................................................... 24, 26

# I.    **EPSON'S INTRODUCTORY STATEMENT**

This motion seeks to compel Global's compliance with the Parties' prior agreements—including those reached during a June 12, 2024 IDC and thereafter. Specifically, Epson seeks an order compelling Global to search for, collect, and produce documents responsive to the First and Second Set of Requests for Production propounded by Epson (the "RFPs"), pursuant to the protocols the Parties previously negotiated and agreed upon, and by a date certain. Epson further seeks to compel Global to retain and utilize an ESI vendor to assist in document collection, searching, and production—which is something Epson has already done with respect to its own productions, and which Epson believes will assist in reducing the extremely high time estimates for document productions that Global has provided in the past. Epson further seeks an order compelling Global to produce three previously identified witnesses for deposition, again, pursuant to the Parties' prior agreement.

Epson has been attempting to obtain responsive documents from Global since May 2023, to limited effect. This includes that Epson served its First Set of RFPs on May 2, 2023—because the Parties did not conduct their Rule 26(f) Conference of Counsel until May 9, 2023, the Parties agreed those RFPs were deemed to have been served on May 9, 2023. (Timm Decl., ¶ 10, Ex. B; DE 18 at § J.) Upon review of Global's initial productions, it became apparent that Global's document search and collection methodology was inadequate. Through meet and confer efforts with Global, Epson learned that Global had not yet even searched through the email addresses of Global's custodians. The Parties agreed, however, that Global would run searches on the email accounts of its custodians, and Global requested a list of search terms from Epson. (Timm Decl., ¶ 11, Ex. D.)

On October 31, 2023, Epson provided Global with a list of search terms to be used in collecting documents, including those contained with the email accounts of Global's custodians. (*Id.*) Global's counsel responded that same day, confirming that "[t]hose terms are fine." (*Id.*) Global was then deposed through its CEO and 30(b)(6)

designee, Frank Sheu, in January 2024, during which Mr. Sheu testified that he had not provided his email account to his attorneys to be searched, nor had he used all of the previously agreed-upon search terms. (*Id*., at ¶ 12, Ex. E). Mr. Sheu further testified that none of the other Global custodians—including its sales team members who regularly communicated with Global's customers—had their email accounts searched in any capacity. (*Id*.)

On February 13, 2024, Epson sent Global a meet and confer letter outlining this, and other, deficiencies (including the need to depose the members of Global's sales team). (*Id*.) The Parties continued to meet and confer but were unable to reach a resolution and, on June 12, 2024, conducted an IDC before this Court. (DE 43.) In advance of that IDC, the Parties each submitted letters pursuant to this Court's informal discovery process outlining the disputes. (Timm Decl., ¶ 13, Ex. F.) During the IDC, the Parties were able to swiftly come to agreement on the depositions of three (3) Global witnesses—Mr. Frank Sheu (individually and as Global's 30(b)(6)), Mr. Ali Khouzema, and Mr. Allen Steinberg. (Timm Decl., ¶ 14.) Specifically, that Global would produce Mr. Sheu and Mr. Khouzema for in-person deposition in Los Angeles, and would produce Mr. Steinberg for a remote deposition. (*Id*., at ¶ 14, Ex. G.) Epson agreed to conduct Mr. Steinberg's deposition remotely following representations from Global's counsel that he was ill. (*Id*.) Epson preferred (and still prefers), however, to take Mr. Steinberg's deposition in-person, and, health permitting, has agreed to conduct his deposition in New York where Mr. Steinberg is located. (*Id*., at ¶ 14.)

The Parties were unable to reach an agreement on the document collection and production during the IDC. Each Party expressed its respective position and, after consideration of each, this Court directed the Parties to further meet and confer on the issue. (Timm Decl., ¶ 15.) Specifically, the Parties were directed to exchange specific proposals for the search, collection, and production of Global's documents to determine what, if any, further agreements could be reached. On June 17, 2024, Epson emailed Global such a proposal, including specific search terms and search, collection, and

2

productions protocols.  (Timm Decl., Ex H.)  This list of search terms also included terms intended to capture documents responsive to Epson's Second Set of RFPs, which it served on May 2, 2024.  (*Id*.)  The Parties thereafter continued to meet and confer, and as of July 5, 2024, had come to agreement on nearly all terms of such protocol.  (*Id*.)  The only outstanding issues were: (1) whether Global would hire an ESI vendor; and (2) the timeline for production.  Global stated it would not hire an ESI vendor, and estimated a completion date of four (4) months.  Epson, on the other hand, stated it could agree to Global's collection being completed without an ESI vendor—even though Epson *did* retain such a vendor to complete its own document productions—but *only if* that timeline was improved upon.  (*Id*.)

Shortly thereafter, the Parties identified settlement as a potential and diverted their focus and resources to negotiating a settlement agreement.  (Timm Decl., ¶ 16.)  The Parties exchanged several drafts of a proposed settlement agreement between July and September 2024.  (*Id*., at ¶ 16.)  Global's delays in providing revisions to each subsequent version, however, concerned Epson in light of upcoming case deadlines and so, on September 17, 2024, Epson emailed Global re-noticing the depositions of Mr. Sheu, Mr. Khouzema, and Mr. Steinberg, and indicating that discovery would need to resume in parallel with settlement discussions.  (*Id*., Ex. I.)  Global did not respond to this email, nor the follow-up email sent on September 24.  (*Id*., at ¶ 17.)

On October 2, 2024, Epson sent a further meet and confer letter to Global, indicating Epson intended to move to compel compliance with the Parties prior agreements.  (*Id*., at Ex. A.)  The following day, October 3, Global's counsel notified Epson's counsel that it intended to file a motion to withdraw as counsel.  (*Id*., at ¶ 18.)  The Parties met and conferred on October 9 regarding both the discovery disputes, as well as Global's intended motion, and agreed to proceed before this Court with a further IDC.  (*Id*., at ¶ 7.)  Such IDC was held on October 16, 2024, during which Global's counsel reiterated his intention to withdraw as counsel, and indicated he would be unable to obtain the documents or guarantee depositions of Global's witnesses due to

the breakdown of the attorney-client relationship. (*Id.*; DE 63.) As such, this Court directed Epson to file a formal motion to compel pursuant to Local Rule 37.

Global was served with a copy of this joint discovery stipulation through its prior counsel on October 25, 2024. (Timm Decl., ¶ 21, Ex. K.) Global did not provide its position in the joint discovery stipulation prior to the Court granting its prior counsel's withdrawal on November 12, 2024. (*Id.*, at ¶ 22.)

On December 18, 2024, Epson re-served Global with the draft joint discovery stipulation and accompanying documents through Global's new counsel. (*Id.*, at 24, Ex. L.) Epson asked for a response in the joint stipulation on or before January 10, 2024, so that it could file by January 13, 2024. (*Id.*) Global's counsel did not respond but, on January 9, 2025, sent a separate email requesting an extension of time to provide Global's position to the joint discovery stipulation. (*Id.*, at ¶ 25, Ex. M.)

The Parties thereafter met and conferred extensively for an additional 3 weeks— including at least 2 telephone calls and numerous email correspondence. (*Id.*, at ¶¶ 25-30, Ex. M.) During these meet and confer efforts, Global consistently sought to extend its time to provide its position to the joint discovery stipulation under the guise of trying to reach an agreement between the Parties, however regularly took contradictory and inaccurate positions, which Epson repeatedly pointed out. (*Id.*) When it became evident Global was *not* going to agree to comply with its prior agreements, Epson requested Global's position to the joint discovery stipulation by no later than January 29, 2025, so that Epson could file on January 30, 2025. (*Id.*, Ex. M at pp. 10-11.) When Global did not meet that deadline, Epson again demanded Global's position to the joint stipulation, stating that Global needed to provide its position by January 31, 2025, and that Epson would then be filing its Motion on February 3, 2025. (*Id.*, at 7-9.) Epson also specifically stated that, if Global did not provide its position to the joint stipulation by that time, Epson would need to file its motion without Global's position. (*Id.*, at p. 8.) This was once again reiterated on January 30, 2025, wherein Epson's counsel stated they were looking forward to receiving Global's position in the joint stipulation by

January 31, 2025. (*Id.*, at p. 3.) Global failed to provide its position to the stipulation and, on February 3, 2025, confirmed that it would not be searching for and producing all documents as previously agreed upon, thus necessitating this Motion. (*Id.*, at pp. 1-2.)

By way of this Motion, Epson seeks something very simple: Global's compliance with the prior agreement it entered into.

## II.   DEFENDANT'S INTRODUCTORY STATEMENT

As set forth above, Global declined to provide its position.

## III.   THE DISCOVERY REQUESTS

### A.   Requests for Production Set One (RFPs 1-19)

**REQUEST FOR PRODUCTION NO. 1**

Documents sufficient to identify the different models of Products GAC sold from January 1, 2018 to present.

**RESPONSE TO REQUEST FOR PRODUCTION NO. 1**

GAC incorporates its objections set forth above. GAC further objects to this Request as overbroad and unduly burdensome to the extent it seeks information that is neither relevant to any party's claims or defenses, nor proportional to the needs of the case because it seeks information and/or documents without reasonable limitation as to scope, including information related to "Products," which includes products not named in the Complaint and not relevant to this action. GAC further objects to this Request to the extent that it seeks information that is equally available to all parties and publicly available.

Subject to and without waiving the foregoing objections, GAC responds as follows: GAC will produce nonprivileged and relevant documents in its possession, custody, or control, located during a reasonably diligent search which may be responsive to this Request on a rolling basis with a cutoff of October 27, 2023.

**REQUEST FOR PRODUCTION NO. 2**

Documents sufficient to identify the light output or brightness GAC advertised

1  for each Product GAC sold from January 1, 2018 to present.

2  **RESPONSE TO REQUEST FOR PRODUCTION NO. 2**

3      GAC incorporates its objections set forth above. GAC further objects to this
4  Request as overbroad and unduly burdensome to the extent it seeks information that is
5  neither relevant to any party's claims or defenses, nor proportional to the needs of the
6  case because it seeks documents without reasonable limitation as to scope, including
7  information related to "Products," which includes products not named in the Complaint
8  and not relevant to this action. GAC also objects to this RFP because it seeks privileged
9  proprietary information, such as product testing, or other similar trade secrets and
10  confidential business information without a protective order

11      Subject to and without waiving the foregoing objections, GAC responds as
12  follows: GAC will produce nonprivileged and relevant documents in its possession,
13  custody, or control, located during a reasonably diligent search which may be
14  responsive to this Request upon entry of a protective order on a rolling basis with a
15  cutoff of October 27, 2023.

16  **REQUEST FOR PRODUCTION NO. 3**

17      Documents sufficient to show GAC's revenue from GAC's sale of Products from
18  January 1, 2018 to present including revenue on a quarterly and monthly basis.

19  **RESPONSE TO REQUEST FOR PRODUCTION NO. 3**

20      GAC incorporates its objections set forth above. GAC further objects to this
21  Request as overbroad and unduly burdensome to the extent it seeks information that is
22  neither relevant to any party's claims or defenses, nor proportional to the needs of the
23  case because it seeks documents related to "Products," which includes products not
24  named in the Complaint and not relevant to this action.

25      GAC further objects to this Request on the basis that it seeks privileged
26  proprietary information, such as pricing information, profit margins, or other similar
27  trade secrets and confidential business information without a protective order.

28      Subject to and without waiving the foregoing objections, GAC responds as

follows: upon entry of a Protective Order, GAC will produce nonprivileged and relevant documents in its possession, custody, or control, located during a reasonably diligent search which may be responsive to this Request on a rolling basis with a cutoff of October 27, 2023.

**REQUEST FOR PRODUCTION NO. 4**

Documents sufficient to show GAC's costs from GAC's sale of Products from January 1, 2018 to present including costs on a quarterly and monthly basis.

**RESPONSE TO REQUEST FOR PRODUCTION NO. 4**

GAC incorporates its objections set forth above.

GAC objects to the term "costs" as overbroad, vague and ambiguous as it does not apprise GAC of the type of information sought. GAC further objects to this Request as overbroad and unduly burdensome to the extent it seeks information that is neither relevant to any party's claims or defenses, nor proportional to the needs of the case because it seeks documents related to "Products," which includes products not named in the Complaint and not relevant to this action.

GAC further objects to this Request on the basis that it seeks privileged proprietary information, such as pricing information, profit margins, or other similar trade secrets and confidential business information without a protective order.

Subject to and without waiving the foregoing objections, GAC responds as follows: upon entry of a Protective Order, GAC will produce nonprivileged and relevant documents in its possession, custody, or control, located during a reasonably diligent search which may be responsive to this Request on a rolling basis with a cutoff of October 27, 2023.

**REQUEST FOR PRODUCTION NO. 5**

Bank account documents, including, but not limited to, monthly statements, evidencing the revenue and costs numbers provided by GAC in this litigation in responding to Request Nos. 3 and 4.

**RESPONSE TO REQUEST FOR PRODUCTION NO. 5**

GAC incorporates its objections set forth above. GAC further objects to this Request as overbroad and unduly burdensome to the extent it seeks information that is neither relevant to any party's claims or defenses, nor proportional to the needs of the case because it seeks documents related to "Products," which includes products not named in the Complaint and not relevant to this action.

GAC further objects to this Request on the basis that it seeks privileged proprietary information, such as private bank records and accounts, pricing information, profit margins, or other similar trade secrets and confidential business information.

**REQUEST FOR PRODUCTION NO. 6**

Documents and communications between GAC and the Websites or any other Internet marketplace or resale channel utilized by GAC regarding revenue and costs associated with GAC's sale of the Products.

**RESPONSE TO REQUEST FOR PRODUCTION NO. 6**

GAC incorporates its objections set forth above. GAC further objects to this Request as overbroad and unduly burdensome to the extent it seeks information that is neither relevant to any party's claims or defenses, nor proportional to the needs of the case because it seeks documents related to "Products," which includes products not named in the Complaint and not relevant to this action and it would require GAC to scour the Internet for irrelevant documents hosted on third-party websites.

GAC further objects to this Request on the basis that it seeks privileged proprietary information, such as pricing information, profit margins, or other similar trade secrets and confidential business information.

Subject to and without waiving the foregoing objections, GAC responds as follows: upon entry of a Protective Order, GAC will produce nonprivileged and relevant documents in its possession, custody, or control, located during a reasonably diligent search which may be responsive to this Request on a rolling basis with a cutoff of October 27, 2023.

**REQUEST FOR PRODUCTION NO. 7**

Any distribution agreements that GAC has with retailers of GAC's Products.

**RESPONSE TO REQUEST FOR PRODUCTION NO. 7**

GAC incorporates its objections set forth above. GAC further objects to this Request as overbroad and unduly burdensome to the extent it seeks information that is neither relevant to any party's claims or defenses, nor proportional to the needs of the case because it seeks documents related to "Products," which includes products not named in the Complaint and not relevant to this action.

GAC further objects to this Request on the basis that it seeks agreements containing confidentiality clauses, and privileged proprietary information, such as pricing information, profit margins, or other similar trade secrets and confidential business information.

Subject to and without waiving the foregoing objections, GAC responds as follows: upon entry of a Protective Order, GAC will produce nonprivileged and relevant documents in its possession, custody, or control, located during a reasonably diligent search which may be responsive to this Request on a rolling basis until October 27, 2023.

**REQUEST FOR PRODUCTION NO. 8**

Any documents evidencing substantiation or test results for the claimed brightness or light output of GAC Projectors.

**RESPONSE TO REQUEST FOR PRODUCTION NO. 8**

GAC incorporates its objections set forth above.

GAC further objects to this Request as overbroad and unduly burdensome to the extent it seeks information that is neither relevant to any party's claims or defenses, nor proportional to the needs of the case because it seeks documents related to "Products," which includes products not named in the Complaint and not relevant to this action.

GAC further objects to this Request on the basis that it seeks privileged proprietary information, such as pricing information, profit margins, or other similar

MOTION TO COMPEL

1  trade secrets and confidential business information.

2  Subject to and without waiving the foregoing objections, GAC responds as
3  follows:

4  Upon entry of a Protective Order, GAC will produce nonprivileged and relevant
5  documents in its possession, custody, or control, located during a reasonably diligent
6  search which may be responsive to this Request on a rolling basis with a cutoff of
7  October 27, 2023.

8  **REQUEST FOR PRODUCTION NO. 9**

9  Samples of all product packaging for the Products advertised, offered for sale,
10  and sold from January 1, 2018 to the present.

11  **RESPONSE TO REQUEST FOR PRODUCTION NO. 9**

12  GAC incorporates its objections set forth above. GAC further objects to this
13  Request as irrelevant to the extent it seeks documents regarding models not named in
14  the complaint and not relevant to this action. GAC further objects to this Request as
15  overbroad and not proportional to the needs of the case because it requires GAC to
16  provide documentation of products that are irrelevant to either party's claims or
17  defenses.

18  Subject to and without waiving the foregoing objections, GAC responds as
19  follows:

20  GAC will produce nonprivileged and relevant documents in its possession,
21  custody, or control, located during a reasonably diligent search which may be
22  responsive to this Request on a rolling basis with a cutoff of October 27, 2023.

23  **REQUEST FOR PRODUCTION NO. 10**

24  Documents and communications between GAC and GAC's supplier(s) or
25  manufacturer(s) of GAC's Products concerning light output or brightness from January
26  1, 2018 to present.

27  **RESPONSE TO REQUEST FOR PRODUCTION NO. 10**

28  GAC incorporates its objections set forth above. GAC further objects to this

Request as overbroad and unduly burdensome to the extent it seeks information that is neither relevant to any party's claims or defenses, nor proportional to the needs of the case because it seeks documents related to "Products," which includes products not named in the Complaint and not relevant to this action.

GAC further objects to this Request on the basis that it seeks privileged proprietary information, such as product specifications, technical measurements, and product composition, or other similar trade secrets and confidential business information without a protective order.

Subject to and without waiving the foregoing objections, GAC responds as follows:

Upon entry of a Protective Order, GAC will produce nonprivileged and relevant documents in its possession, custody, or control, located during a reasonably diligent search which may be responsive to this Request on a rolling basis with a cutoff of October 27, 2023.

**REQUEST FOR PRODUCTION NO. 11**

Documents and communications sufficient to identify any owners and/or officers of GAC.

**RESPONSE TO REQUEST FOR PRODUCTION NO. 11**

An organizational chart providing the ownership of GAC and the organizational structure of its affiliates is available at the following URL (bottom of the page): https://www.hp-projector.com/about/?lang=US. GAC will produce nonprivileged and relevant documents in its possession, custody, or control, located during a reasonably diligent search which may be responsive to this Request on a rolling basis with a cutoff of October 27, 2023.

**REQUEST FOR PRODUCTION NO. 12**

Documents sufficient to identify GAC's corporate structure including, but not limited to, organizational charts.

**RESPONSE TO REQUEST FOR PRODUCTION NO. 12**

An organizational chart providing the structure of GAC is available at the following URL (bottom of the page): https://www.hp-projector.com/about/?lang=US.

**REQUEST FOR PRODUCTION NO. 13**

Any documents or communications received by GAC from a customer complaining about GAC's services or GAC Products from January 1, 2018 to present.

**RESPONSE TO REQUEST FOR PRODUCTION NO. 13**

GAC incorporates its objections set forth above. GAC further objects to this Request as overbroad and unduly burdensome to the extent it seeks information that is neither relevant to any party's claims or defenses, nor proportional to the needs of the case because it seeks documents related to "Products," which includes products not named in the Complaint and not relevant to this action and a universe of complaints not relevant to any party's claims or defenses.

GAC further objects to this Request on the basis that it seeks privileged information, such as the identities of GAC's customers, or other similar trade secrets and confidential business information.

Subject to and without waiving the foregoing objections, GAC responds as follows:

Upon entry of a Protective Order, GAC will produce nonprivileged and relevant documents in its possession, custody, or control, located during a reasonably diligent search which may be responsive to this Request on a rolling basis with a cutoff of October 27, 2023.

**REQUEST FOR PRODUCTION NO. 14**

Any internal documents or communications involving or relating to Epson from January 1, 2018 to present.

**RESPONSE TO REQUEST FOR PRODUCTION NO. 14**

GAC incorporates its objections set forth above. GAC further objects to the extent it seeks privileged information under the attorney-client privilege and/or work

product doctrine. GAC further objects to this Request as overbroad and unduly burdensome to the extent it seeks information that is neither relevant to any party's claims or defenses, nor proportional to the needs of the case because it seeks "*any*" documents that mention or relate to "Epson," including documents not relevant to this action.

GAC further objects to this Request on the basis that it seeks privileged proprietary information, such as comparisons of products and specifications, or other similar trade secrets and confidential business information.

Subject to and without waiving the foregoing objections, GAC responds as follows:

Upon entry of a Protective Order, GAC will produce nonprivileged and relevant documents in its possession, custody, or control, located during a reasonably diligent search which may be responsive to this Request on a rolling basis with a cutoff of October 27, 2023.

**REQUEST FOR PRODUCTION NO. 15**

Any and all documents and communications submitted to the Websites regarding any requests to change or alter the light output or brightness of the Website page selling the Products.

**RESPONSE TO REQUEST FOR PRODUCTION NO. 15**

GAC incorporates its objections set forth above. GAC objects to this request as overbroad, unduly burdensome, and not proportional to the needs of the case to the extent it seeks "[a]ny and all" documents, without limit as to scope and time and could include changing out of an older model for a newer model. GAC further objects to the Request as vague as to the phrase "request to change or alter the light output or brightness of the Website page selling the Products" and would require GAC to speculate as to the Website page's light output or brightness.

GAC further objects to this Request as overbroad and unduly burdensome to the extent it seeks information that is neither relevant to any party's claims or defenses, nor

1  proportional to the needs of the case because it seeks information and/or documents

2  without reasonable limitation as to scope, including information related to "Products,"

3  which includes products not named in the Complaint and not relevant to this action.

4      Subject to and without waiving the foregoing objections, GAC responds as

5  follows:

6      Upon entry of a Protective Order, GAC will produce nonprivileged and relevant

7  documents in its possession, custody, or control, located during a reasonably diligent

8  search which may be responsive to this Request on a rolling basis with a cutoff of

9  October 27, 2023.

10 **REQUEST FOR PRODUCTION NO. 16**

11     All advertisements of GAC Products that set forth the light output or brightness

12 of the Product.

13 **RESPONSE TO REQUEST FOR PRODUCTION NO. 16**

14     GAC incorporates its objections set forth above. GAC further objects to this

15 Request as vastly overbroad to the extent it seeks "*all* advertisements," for all

16 "Products," without temporal limitation, and is thus unduly burdensome and not

17 proportional to the needs of the case. GAC further objects to the term "advertisements"

18 as vague, and requests clarification on the intended meaning and scope of the term and

19 could include third-party advertisements not within GAC's possession, custody, or

20 control.

21     GAC further objects to this Request as overbroad and unduly burdensome to the

22 extent it seeks information that is neither relevant to any party's claims or defenses, nor

23 proportional to the needs of the case because it seeks information and/or documents

24 without reasonable limitation as to scope, including information related to "Products,"

25 which includes products not named in the Complaint and not relevant to this action.

26     Subject to and without waiving the foregoing objections, GAC responds as

27 follows:

28     Upon clarification of the intended meaning of this Request, and entry of a

Protective Order, GAC will produce nonprivileged and relevant documents in its possession, custody, or control, located during a reasonably diligent search which may be responsive to this Request on a rolling basis with a cutoff of October 27, 2023.

**REQUEST FOR PRODUCTION NO. 17**

Documents evidencing or supporting any costs GAC claims should be deducted from GAC revenue numbers concerning Products in this litigation.

**RESPONSE TO REQUEST FOR PRODUCTION NO. 17**

GAC incorporates its objections set forth above. GAC further objects to this Request as overbroad and unduly burdensome to the extent it seeks information that is neither relevant to any party's claims or defenses, nor proportional to the needs of the case because it seeks information and/or documents without reasonable limitation as to scope, including information related to "Products," which includes products not named in the Complaint and not relevant to this action.

GAC further objects to this Request on the basis that, based on the term "costs," it seeks privileged proprietary information, such as product pricing and expenditures for production, or other similar trade secrets and confidential business information without a protective order.

Subject to and without waiving the foregoing objections, GAC responds as follows:

Upon clarification of the intended meaning of this Request, and entry of a Protective Order, GAC will produce nonprivileged and relevant documents in its possession, custody, or control, located during a reasonably diligent search which may be responsive to this Request on a rolling basis with a cutoff of October 27, 2023.

**REQUEST FOR PRODUCTION NO. 18**

Documents and communications concerning any questions GAC has answered from a customer regarding the light output or brightness of its projectors on the Websites, or other third party platforms.

MOTION TO COMPEL

**RESPONSE TO REQUEST FOR PRODUCTION NO. 18**

GAC incorporates its objections set forth above. GAC further objects to this Request as overbroad and unduly burdensome to the extent it seeks information that is neither relevant to any party's claims or defenses, nor proportional to the needs of the case because it seeks information and/or documents without reasonable limitation as to scope, including information related to "Products," which includes products not named in the Complaint and not relevant to this action. Further, this Request is overbroad and unduly burdensome to the extent it requests documents related to customer inquiries from "Websites" and "other third party platforms," which includes Amazon.com and a variety of retailers, wholesalers, distributors, or sub-distributors, and which are not within the custody, possession, or control of GAC.

GAC further objects to this Request on the basis that it seeks privileged information, such as the identities of GAC's customers, or other similar trade secrets and confidential business information.

Subject to and without waiving the foregoing objections, GAC responds as follows:

Upon entry of a Protective Order, GAC will produce nonprivileged and relevant documents in its possession, custody, or control, located during a reasonably diligent search which may be responsive to this Request on a rolling basis with a cutoff of October 27, 2023.

**REQUEST FOR PRODUCTION NO. 19**

Documents and communications concerning any negative customer reviews received by GAC from customers from January 1, 2018 to present. A negative customer review shall be considered any customer review of 4 stars on a five star review system.

**RESPONSE TO REQUEST FOR PRODUCTION NO. 19**

GAC incorporates its objections set forth above. GAC further objects to this Request as overbroad and unduly burdensome to the extent it seeks information that is neither relevant to any party's claims or defenses, nor proportional to the needs of the

case because it seeks information and/or documents without reasonable limitation as to scope, including information related to "Products," which includes products not named in the Complaint and not relevant to this action.

GAC further objects to this Request on the basis that it seeks privileged information, such as the identities of GAC's customers, or other similar trade secrets and confidential business information without a protective order.

### B.    Requests for Production Set Two (RFPs 20-28)

### REQUEST FOR PRODUCTION NO. 20

All documents and communications between GAC and Amazon regarding the advertisement and sale of GAC Products on Amazon.com, including, but not limited to, account information, promotions, and advertisements, and the HP Marks.

### RESPONSE TO REQUEST FOR PRODUCTION NO. 20

Global incorporates its Objections to Definitions set forth above.

Global objects to this request as overbroad and unduly burdensome in that it seeks "[a]ll documents and communications" between Global and Amazon indiscriminately without limitation as to time and scope and would include any communication regarding sales of products or customer inquiries not relevant to any claims or defenses nor proportional to the needs of the case. Global further objects to this request as vague, ambiguous, and unintelligible as to the term "GAC Products" which is unidentified and undefined. Furthermore, Global does not manufacture its own products, it is the authorized U.S. based distributor of HP® Projectors.

Subject to and without waiving the foregoing objections, and with the understanding that "GAC Products" refers to products manufactured by Global, Global responds as follows: Global will produce nonprivileged and relevant documents in its possession, custody, or control, located during a reasonably diligent search which may be responsive to this Request on a rolling basis with an estimated cutoff of four (4) months.

**REQUEST FOR PRODUCTION NO. 21**

All documents and communications with Amazon regarding the promotion and advertisement of the HP BP5000, HP CC200, and HP MP250 projectors on the Amazon.com HP Store.

**RESPONSE TO REQUEST FOR PRODUCTION NO. 21**

Global incorporates its Objections to Definitions set forth above.

Global objects to this request as overbroad and unduly burdensome in that it seeks "[a]ll documents and communications" between Global and Amazon indiscriminately without limitation as to time and scope.

Subject to and without waiving the foregoing objections, Global responds as follows: Global will produce nonprivileged and relevant documents in its possession, custody, or control, located during a reasonably diligent search which may be responsive to this Request on a rolling basis with an estimated cutoff of four (4) months.

**REQUEST FOR PRODUCTION NO. 22**

All documents and communications between GAC and HP regarding the HP BP5000, HP CC200, and HP MP250 projector.

**RESPONSE TO REQUEST FOR PRODUCTION NO. 22**

Global incorporates its Objections to Definitions set forth above.

Global objects to this request as overbroad and unduly burdensome in that it seeks "[a]ll documents and communications" between Global and HP indiscriminately without limitation as to time and scope.

Global further objects to this Request as requesting documents within the possession, control, or custody of third-parties, particularly to the extent it purports to require information regarding documents between Global and HP. Global is simply the U.S.-based distributor of HP® Projector, based on the license granted to Global Aiptek Corp d/b/a GT Technology Chongqing Limited by HP.

Subject to, and without waiving said objections, Global responds as follows: Global will produce nonprivileged and relevant documents in its possession, custody,

or control, located during a reasonably diligent search which may be responsive to this Request on a rolling basis with an estimated cutoff of four (4) months.

**REQUEST FOR PRODUCTION NO. 23**

All documents and communications between GAC and HP regarding GAC's use of HP's intellectual property, including, but not limited to, the HP Marks.

**RESPONSE TO REQUEST FOR PRODUCTION NO. 23**

Global incorporates its Objections to Definitions set forth above.

Global objects to this request as overbroad and unduly burdensome in that it seeks "[a]ll documents and communications" between Global and HP indiscriminately without limitation as to time and scope.

Global further objects to this Request as requesting documents within the possession, control, or custody of third parties, particularly to the extent it purports to require information regarding documents between Global and HP. Global is the U.S.-based distributor of HP® Projectors, based on the license granted to Global Aiptek Corp d/b/a GT Technology Chongqing Limited by HP. Subject to, and without waiving said objections, Global responds as follows: Global will produce nonprivileged and relevant documents in its possession, custody, or control, located during a reasonably diligent search which may be responsive to this Request on a rolling basis with an estimated cutoff of four (4) months.

**REQUEST FOR PRODUCTION NO. 24**

All documents and communications regarding HP's trademarks relating to the HP BP5000, HP CC200, and HP MP250 projector.

**RESPONSE TO REQUEST FOR PRODUCTION NO. 24**

Global incorporates its Objections to Definitions set forth above.

Global objects to this request as overbroad, unduly burdensome, and unintelligible in that it seeks "[a]ll documents and communications" indiscriminately without limitation as to time and scope, and without particularity as to whose documents and communications.

Subject to, and without waiving said objections, Global responds as follows: Upon clarification, Global may produce nonprivileged and relevant documents in the possession, custody, or control of the relevant corporate entities, located during a reasonably diligent search which may be responsive to this Request on a rolling basis with an estimated cutoff of four (4) months.

**REQUEST FOR PRODUCTION NO. 25**

All documents identifying the ASIN's which the HP BP5000, HP CC200, and HP MP250 projectors are sold under.

**RESPONSE TO REQUEST FOR PRODUCTION NO. 25**

Global incorporates its Objections to Definitions set forth above.

Global further objects to this Request as vague and ambiguous as to the term "ASIN" which is unidentified and undefined. To respond to this Request, Global will answer to the extent "ASIN" refers to Amazon Standard Identification Number. Global further objects to this Request as requesting documents equally available to the Propounding Party and/or within the possession, control, or custody of third parties, particularly to the extent it purports to require documents identifying ASIN's which are created and assigned by Amazon.com and publicly available. Global objects to this request as overbroad and unduly burdensome in that it seeks "[a]ll documents" identifying ASIN's regardless of whether Global sells the projectors.

Subject to and without waiving the foregoing objections, Global responds as follows: Global will produce nonprivileged and relevant documents in its possession, custody, or control, located during a reasonably diligent search which may be responsive to this Request on a rolling basis with an estimated cutoff of four (4) months.

**REQUEST FOR PRODUCTION NO. 26**

All documents and communications between GAC and HP regarding Epson.

**RESPONSE TO REQUEST FOR PRODUCTION NO. 26**

Global incorporates its Objections to Definitions set forth above.

Global objects to this request as overbroad and unduly burdensome in that it seeks

"[a]ll documents and communications" between Global and HP indiscriminately without limitation as to time and scope.

Global further objects to this Request as requesting documents within the possession, control, or custody of third parties, particularly to the extent it purports to require information regarding documents between Global and HP. Global is the U.S.-based distributor of HP® Projector, based on the license granted to Global Aiptek Corp d/b/a GT Technology Chongqing Limited by HP.

Subject to, and without waiving said objections, Global responds as follows: no documents exist.

**REQUEST FOR PRODUCTION NO. 27**

All documents regarding GAC's sales of the Products on Amazon.com, including, but not limited to, GAC's revenue and costs.

**RESPONSE TO REQUEST FOR PRODUCTION NO. 27**

Global incorporates its Objections to Definitions set forth above.

Global further objects to this Request as overbroad and unduly burdensome to the extent it seeks information that is neither relevant to any party's claims or defenses, nor proportional to the needs of the case because it seeks information and/or documents about products not at issue and that are indefinite as to time and without reasonable limitation as to scope because it seeks "[a]ll" sales documents.

Subject to and without waiving the foregoing objections, Global responds as follows: Global will produce nonprivileged and relevant documents in its possession, custody, or control, located during a reasonably diligent search which may be responsive to this Request on a rolling basis with an estimated cutoff of four (4) months.

**REQUEST FOR PRODUCTION NO. 28**

All documents regarding any and all quality control requirements implanted by HP relating to the use of the HP Mark(s).

**RESPONSE TO REQUEST FOR PRODUCTION NO. 28**

Global incorporates its Objections to Definitions set forth above.

MOTION TO COMPEL

Global further objects to this Request as unintelligible, vague, and ambiguous as to the term "implanted" which has a variety of meanings and the exact definition of the term will determine whether Global has any documents responsive to this Request.

Global further objects to this Request as overly broad, unduly burdensome, and requests documents within the possession, control, or custody of third parties, particularly to the extent it purports to request "[a]ll documents" regarding "any and all quality control requirements" from HP regarding the use of HP Mark(s). Global is the U.S.-based distributor of HP® Projector, based on the license granted to Global Aiptek Corp d/b/a GT Technology Chongqing Limited by HP.

Subject to, and without waiving said objections, Global responds as follows: Global will produce nonprivileged and relevant documents in its possession, custody, or control, located during a reasonably diligent search which may be responsive to this Request on a rolling basis with an estimated cutoff of four (4) months.

## C. **Epson's Argument**

### 1. **Global Should Be Compelled to Search for, Collect, and Produce Documents Consistent With The Parties' Prior Agreement**

Global agreed to search for, collect, and produce documents pursuant to a specific, negotiated, and agreed-upon protocol, and cannot now avoid doing so. Specifically, Global agreed to search the email accounts of "Frank Sheu, Khozema Ali, Allen Steinberg, Sonia (Allen's assistant), and Nardita (accountant)." (Timm Decl., Ex. H.) Global agreed that this search would be "conducted via Zoom with the individuals sharing their screens with us so that when the individuals run the terms, we can see how many emails show up." (*Id*.) Global agreed to provide Epson with "the number of responsive emails for each term for each individual," and that, if Global had a concern that a particular search term resulted in overbroad "hits", the Parties would thereafter meet and confer on ways to further narrow that specific search term. (*Id*.) And Global agreed to produce all responsive documents in native format "with an acceptable load

file in .dat, .lfp, or other agreed-upon file type. Each load file shall be accompanied by .tif images with associated text searchable ("OCR") .txt files," consistent with the Parties' Joint Rule 26(f) Report. (*Id.*; *see also* DE 18 at § K.)  Despite this agreement, Global has produced no additional documents (nor even provided an indication it has *begun* this process).

This is not the first time Global has agreed to use specific and agreed-upon search terms to collect documents for production, but then failed to do so.  The Parties previously agreed upon a specific set of search terms that Global would use to search for documents in October 2023.  (Timm Decl., Ex. D.)  Despite this, it was only during Mr. Sheu's deposition as Global's 30(b)(6) designee in January 2024 that Epson learned Global *had not* used those search terms to search for responsive documents (and had also searched *only* Mr. Sheu's email account, but not any of Global's other custodians).

Finally, Epson seeks to compel Global to retain and utilize an ESI vendor to collect the documents and email accounts from Global's custodians, and to thereafter use the agreed upon search terms on those documents collected.  Epson's request in this regard is made for two important reasons.  First, Global's prior counsel previously indicated that collecting, searching through, and producing documents may take as many as four (4) months, in no small part because Global's CEO is apparently constantly traveling, and because some of Global's custodians may be overseas—and Global's new counsel has also reiterated that Global's CEO travels frequently.  Having an ESI vendor collect the entire accounts and databases would eliminate the need to repeatedly seek documents and information from the custodians themselves, and would therefore greatly increase the speed and efficiency of the collection and production process.  Second, Global's repeated failures to comply with the agreements (and run searches using agreed upon search terms) is concerning.

Epson was hopeful that it would be able to resolve this dispute through this Court's informal discovery procedure.  The Parties have been able to reach agreements during IDCs on several other occasions in this case, including reaching the very

agreements at issue in this Motion. (Timm Decl., ¶¶ 14-15, Exs. G-H.) And indeed Epson undertook *exhaustive* efforts to try and obtain the documents and depositions at issue without resorting to judicial intervention. (*See* Timm Decl., ¶¶ 11-30 Exs. D-M.) Such efforts spanned two separate counsel for Global—with the prior counsel indicating a breakdown of the attorney-client relationship and inability to obtain documents and produce witnesses. While Global's new counsel first demonstrated a willingness and intention to comply with Global's prior agreements, such willingness has broken down and it is now evident that Global will not be complying with its prior agreements.

Epson seeks is Global's compliance with the agreements previously reached through the informal discovery process, and the delays and failure to comply with those agreements to-date have left Epson with no choice but to move for an order compelling such compliance.

Global's routine tactic of entering into an agreement to avoid a motion, only to then fail to comply with such agreement cannot be allowed to persist. Nor should Global be allowed to conduct its own document searches, as such process is inherently flawed and unreliable compared to the use of a third-party ESI vendor.

### 2. Monetary Sanctions Are Warranted in Light Of Epson's Good Faith Efforts and Global's Lack of Justification for Opposition

Global has engaged in discovery abuses that warrant sanctions in at least the amount that Epson has spent investigating its misconduct, meeting and conferring on this dispute, drafting this motion and supporting documents, drafting the supplement brief, and appearing at the hearing. Thus, Epson seeks sanctions in the amount of no less than $35,440.50. (Timm Decl., ¶ 2.)

Epson is entitled to the repayment of reasonable expenses incurred litigating this issue. Rule 37(a)(5)(A) states that, if the Motion is granted or if the disclosure or requested discovery is provided after the Motion was filed, the Court must, after giving an opportunity to be heard, require the party or deponent whose conduct necessitated the motion, the party or attorney advising that conduct, or both to pay the movant's

reasonable expenses incurred in making the motion, including attorney's fees.  *See* Fed.
R. Civ. Proc. 37(a)(5)A).  The rule contains exceptions for: (1) if the movant filed the
motion before attempting in good faith to obtain the disclosure or discovery without
court action; (2) if the opposing party's nondisclosure, response, or objection was
substantially justified; or (3) if other circumstances make an award of expenses unjust.
None of these exceptions apply.

First, Epson has made substantial good faith efforts to obtain the documents at
issue and is only resorting to filing this Motion as a last resort.  Specifically, Epson
previously met and conferred with Global on this very issue prior to a June 12, 2024
IDC.  (Timm Decl., ¶¶ 14-15.)  The Parties thereafter continued to meet and confer and
were able to reach an agreement on Global's collection and production of documents
without further court intervention.  (*Id*.)  Or so Epson thought.  Unfortunately, Global
has still not produced any of the documents at issue (and it is unclear if Global has even
begun the document collection process).  Despite this failure, Epson *still* attempted to
avoid bringing this motion, instead attempting a further IDC before this Court.  (Timm
Decl., ¶¶ 7-8 & 16-19, Exs. A & J.)  That second IDC was unsuccessful, and so Epson
served the joint discovery stipulation on Global's prior counsel.  (Timm Decl., ¶ 21, Ex.
K.)  Epson then served the same draft joint discovery stipulation on Global's new
counsel on December 18, 2025.  (Timm Decl., ¶ 24, Ex. L.)  Nearly seven weeks later,
and following multiple telephone calls and numerous email exchanges, and it seems
Epson is no closer to obtaining the documents Global previously agreed to produce than
it was when it first served the discovery requests beginning in May 2023.

Global's most recent efforts appear to have been designed at simply delaying
production, as the meet and confer efforts have included contradictory positions,
backtracking on various positions, and, ultimately, an "offer" the produce documents
from only 3 of the 5 custodians.  (Timm Decl., Ex. M at 1-2.)  What's more, Global's
counsel has now taken the position that this "offer"—which is do substantially *less* than
Global previously agreed to—is "exceedingly reasonable and adequately addresses

Epson's concerns without the need for the filing of a motion to compel." (*Id.*, at p. 1.) The offer is, of course, neither reasonable nor does it adequately address Epson's Motion, as it expressly rejects compliance with portions of Global's prior agreements.

Epson's conduct makes it clear that it would have preferred to avoid filing this Motion if it could obtain the documents sought without doing so.  As such, Global should be required to reimburse Epson for the expenses it has incurred in bringing this Motion pursuant to Rule 37(a)(5)(A).

Second, Global's withholding of the documents is in no way justified.  In fact, Global *previously agreed* to conduct an agreed-upon search for documents, and to produce those documents in an agreed-upon manner.  (Timm Decl., Ex. H.)  Global's failure to do so now is entirely unjustified.  This is only exacerbated by the fact it is not the first time in this case that Global agreed to run searches using a specified list of search terms, but then failed to do so.  (Timm Decl., ¶¶ 11-13, Exs. D-F.)  In that prior instance, Global did produce *some* documents, and so Epson only learned of the deficiencies in Global's search and production methodologies through a deposition.  Here, however, Global has produced *no* additional documents.

Third, there is no reasonable argument to be made that the award of expenses would be unjust.  Epson has been forced to file this motion in light of Global's refusal to fulfil its discovery obligations, and to comply with the very agreements it entered into through the informal discovery process.  The informal discovery process is a great tool to allow the Parties to address disputes and reach resolution without the need to resort to formal motion practice.  As such, engaging in the informal process can save Parties significant expenses.  By engaging in that process, but then refusing to actually comply with the agreements it entered into, Global has completed eliminated the efficiencies and benefits of the informal discovery process.  Not only that, but Epson has lost valuable time attempting to enforce the Parties' prior agreements.  Had Global simply refused to engage in the informal process, or had no agreement been reached, Epson could have rapidly moved to formal motion practice.  Similarly, had Global's

26

new counsel made clear its position that it would not comply with the entirety of its prior agreements up front—rather than stringing Epson along for nearly 2 months—Epson could have filed its motion over a month ago.  And had Global not repeatedly asked for extensions to provide its position to the joint stipulation—which it still never did—Epson *would* have filed its Motion on January 13, 2025.  Instead, though, Epson is now forced to file this Motion seeking to obtain documents responsive to discovery requests served nearly 2 years ago, and pursuant to search and production protocols Global agree to over 7 months ago.

### D.    Global's Argument

As set forth above, Global declined to provide its position.

## IV.    THE DEPOSITIONS

### A.    Epson's Argument

The issue of Global's depositions is even simpler than that of its document productions.  Following meet and confer efforts, the Parties agreed during the June 12 IDC that Epson would take three depositions of Global's witnesses, and even agreed upon the manner and location for those depositions.  Specifically, the Parties agreed Mr. Sheu would be deposed in Los Angeles on July 18, Mr. Khouzema would be deposed in Los Angeles on July 17, and Mr. Steinberg would be deposed remotely in New York on July 10 due to his health.  (Timm Decl., ¶ 14, Ex. G.)  Shortly after the June 12 IDC, the Parties agreed to focus on settlement.  As part of that, the Parties took those depositions off-calendar.  (*Id*., at ¶ 16.)

The Parties thereafter exchanged multiple drafts of a settlement agreement but, due to delays in Global's response time (which Epson now understands were at least in part due to the breakdown in the attorney-client relationship), Epson became concerned about other case deadlines and once again began pursuing discovery.  (*Id*.)  On September 17, 2024, Epson re-noticed each of these three depositions.  Mr. Sheu's deposition was re-noticed for October 16 in Los Angeles, Mr. Khouzema's deposition was re-noticed for October 15 in Los Angeles, and Mr. Steinberg's deposition was re-

MOTION TO COMPEL

noticed for October 23, to be conducted either remotely or in New York as Mr. Steinberg's health permitted. (*Id*., Ex. I.) Epson sought to confirm these depositions via email on September 24, 2024, but did not receive any response. (*Id*.) Then, during the Parties' October 9, 2024 telephonic meet and confer, Global's counsel confirmed that none of the witnesses would be appearing for their depositions as noticed.

Through recent meet and confer efforts, it appears Global is willing to produce these witnesses for deposition, but only remotely. Epson seeks to conduct these depositions in-person, and has repeatedly indicated that it will travel within the United States to take the depositions where the deponents reside and/or work. Global, however, has declined.

As with the documents discussed above, Epson has been left with no choice but to bring this Motion to compel the depositions of each of Mr. Sheu, Mr. Khouzema, and Mr. Steinberg.

**B.     Global's Argument**

As set forth above, Global declined to provide its position.

1  **V.    CONCLUSION**

2      **A.    Epson's Conclusion**

3      For the reasons set forth above, Epson respectfully requests an order compelling

4  Global's compliance with the agreements it previously entered into through this Court's

5  informal discovery procedures.  Specifically, Epson seeks an order compelling Global

6  to collect and product documents according to the search and production protocols

7  previously agreed to, and further seeks for such collection and production to be run by

8  an ESI vendor.  Epson further seeks an order compelling the depositions of Mr. Sheu

9  (individually and as Global's 30(b)(6) designee), Mr. Khouzema, and Mr. Steinberg.

10  Epson further seeks an award of $35,440.50 in sanctions for Global's abuses of the

11  discovery process and Epson's fees incurred in bringing this Motion.

12      **B.    Defendant's Conclusion**

13      As set forth above, Global declined to provide an introductory statement.

14

15  Dated: February 3, 2025                **K&L GATES LLP**

16                          By: _/s/ Zachary T. Timm_

17                          Christina N. Goodrich
                            Zachary T. Timm
18                          Morgan T. Nickerson (admitted _pro hac
                            vice_)
19
                            Attorneys for Plaintiff
20                          Epson America, Inc.

21

22

23

24

25

26

27

28