**K&L Gates LLP**
10100 Santa Monica Boulevard
Eighth Floor
Los Angeles, California 90067
Telephone: 310.552.5000
Facsimile: 310.552.5001
Christina N. Goodrich (SBN 261722)
christina.goodrich@klgates.com
Zachary T. Timm (SBN 316564)
zach.timm@klgates.com

State Street Financial Center
One Lincoln Street
Boston, Massachusetts 02111
Telephone: 617.261.3134
Facsimile: 616.261.3175
Morgan T. Nickerson (admitted *pro hac vice*)
morgan.nickerson@klgates.com
*Attorneys for Plaintiff*
*Epson America, Inc.*

# UNITED STATES DISTRICT COURT

## FOR THE CENTRAL DISTRICT OF CALIFORNIA

### SOUTHERN DIVISION

| | |
|---|---|
| EPSON AMERICA, INC.<br><br>Plaintiff,<br><br>v.<br><br>GLOBAL AIPTEK INC.; and GAC TECHNOLOGY GROUP,<br><br>Defendants. | Case No.:  8:23-cv-00222-FWS-DFM<br><br>**DISCOVERY MATTER**<br>Magistrate Judge: Hon. Douglas F. McCormick<br><br>**PLAINTIFF EPSON AMERICA, INC.'S REPLY BRIEF IN SUPPORT OF MOTION TO COMPEL DEFENDANT GLOBAL AIPTEK INC. TO COLLECT AND PRODUCE DOCUMENTS AND PRODUCE WITNESSES FOR DEPOSITIONS**<br>Hearing Date:      March 4, 2025<br>Time:                     10:00 a.m.<br>Courtroom:            6B |

---

**PLAINTIFF'S REPLY BRIEF IN SUPPORT OF MOTION TO COMPEL DEFENDANT GLOBAL AIPTEK INC.**

# TABLE OF CONTENTS

I.    INTRODUCTION ................................................................. 1

II.   ARGUMENT ...................................................................... 4

    A.    EPSON'S MOTION SEEKS TO COMPEL GLOBAL TO DO
          WHAT IT ALREADY AGREED TO DO ................................. 4

        1.    Global's Prior Agreement to Produce Documents ........................ 4

        2.    Global's Prior Agreement to Produce Deponents For Deposition 11

    B.    GLOBAL HAS NOT COMPLIED WITH ITS PRIOR
          AGREEMENT TO PRODUCE DOCUMENTS ..................................... 12

        1.    Global *Has Not* Produced Any Documents Since Agreeing to Run
              Specific Search Terms Pursuant to a Search Protocol Global
              Agreed To ....................................................................... 12

        2.    Global Provides No Acceptable Reason as to Why It Should Not,
              or Cannot, Comply With Its Prior Agreement............................. 14

    C.    EPSON ATTEMPTED TO MEET AND CONFER WITH GLOBAL
          TO OBTAIN THE AGREED UPON DOCUMENTS FOR NEARLY
          TWO YEARS, INCLUDING MULTIPLE IDC'S ON THIS VERY
          ISSUE ............................................................................. 17

    D.    GLOBAL'S REFERENCES TO SETTLEMENT NEGOTIATIONS
          AND UN-ALLEGED CLAIMS AGAINST EPSON ARE RED
          HERRINGS AND IRRELEVANT TO EPSON'S MOTION ............... 19

III.  CONCLUSION ................................................................. 20

# TABLE OF AUTHORITIES

**CASES**

*In re ConAgra Foods, Inc.*,
    302 F.R.D. 537 (C.D. Cal. 2014)................................................................4, 10

**RULES**

C.D. Cal. L.R. 11-6.1.................................................................................20

Fed. R. Civ. P. 30(b)(6) ..............................................................................4

Local Rule 11-6.1 ......................................................................................20

Local Rule 37-2.2 ........................................................................................3

Local Rule 37-2.4 ........................................................................................3

1

# I.    <u>INTRODUCTION</u>

Global's Opposition is replete with irrelevant, inaccurate, and contradictory statements clearly designed to distract and obfuscate the underlying issue and purpose of Epson's Motion.  The Motion is quite simple: Global previously agreed to run searches for an enumerated set of search terms on five specific custodians' accounts and produce the results in a previously agreed upon format, and yet no such production has been made despite *months* of attempts by Epson to obtain compliance.

First, despite the confusing presentation in the Opposition, the record more than speaks for itself with regard to the Parties' prior agreements.  Specifically, by July 1, 2024, Global had agreed to run an enumerated set of search terms on the emails of five specifically identified custodians (the "2024 agreement")—the five individuals that Global's CEO, Frank Sheu, identified as Global's five US-based employees.  Then, before Global produced any documents pursuant to this agreement, the Parties agreed to forestall enforcement of the 2024 agreement to focus on settlement discussions. Being unsatisfied with the progress being made due to long delays in response from Global, Epson informed Global in early September 2024 that it could no longer forestall discovery, and that it needed to enforce Global's prior agreement to run searches, produce documents, and produce witnesses for depositions.  Despite Epson's attempts since early September 2024 to enforce the prior agreement—including several phone calls, emails, and even the October 16, 2024 IDC—Global has not produced a single document in compliance with the Parties' 2024 agreement.

Since Global's new counsel has appeared, Epson has engaged in significant additional meet and confer efforts, including several phone calls, numerous emails, and agreeing to extend Global's time to respond to the draft joint discovery stipulation multiple times.  Despite these efforts, Global's new position appears to be that (1) it has already produced all responsive documents pursuant to the prior agreement (it has not); and (2) it will conduct searches on *some* of the custodians, while expressly refusing to conduct searches for the remaining custodians.  Global's counsel has presented this

"offer" to do less than Global previously agreed as "exceedingly reasonable," and the Opposition uses this half-measure to misleadingly suggest Global has agreed to comply with the 2024 agreement.

To be clear, Global has not produced *any* documents since the 2024 agreement, and Global's current "offer" to produce substantially fewer documents (or at least perform searches on only 60% of the previously agreed upon custodians) is unacceptable.

Second, the Opposition's suggestion that Epson brings this Motion in bad faith and without properly meeting and conferring is puzzling and nonsensical. Epson has been attempting to obtain some of the documents at issue *since May 2023*. Epson has met and conferred countless times; thought it had an agreement with respect to documents in October 2023, only to learn during Mr. Sheu's deposition in January 2024 that Global had not complied; engaged in additional months-long meet and confer efforts resulting in the June 2024 IDC on this very issue; continued to meet and confer and eventually came to agreement on an enumerated set of search terms to be run on an enumerated set of five custodians—Global's US-based employees identified by Mr. Sheu; spent months attempting to enforce that agreement with no success, only to eventually be told by Global's prior counsel that he was withdrawing and could not help with compliance; spent months waiting for *new* counsel to appear, and then continued meet and confer efforts with that new counsel; agreed to multiple extensions of time for Global to provide its position on the joint discovery stipulation—which had initially been served on Global in October 2024, and was re-served on Global's new counsel in the middle of December 2024—only to be presented with an "offer" for Global to do substantially less than it previously agreed to do; and finally repeatedly asked for Global's position in the draft stipulation, but never received the same. Despite all of these efforts, Global complains that Epson did not meet and confer in good faith and filed its motion prematurely. It is unclear what more Global expected Epson to do, but the record is clear that Epson went above and beyond attempting to resolve this issue

2

without filing a Motion.  Global failed to provide its position in compliance with the Local Rules, and despite repeated requests from Epson, and thus Epson filed its Motion without Global's position, including a declaration establishing that Global failed to comply with the requirements of Local Rule 37-2.2.  Such filing is expressly allowed under Local Rule 37-2.4.

Third, the Opposition confusingly includes significant discussion of unasserted claims against Epson and references several other lawsuits Epson has been involved in. These issues have absolutely nothing to do with the instant Motion, and the Opposition does not even attempt to explain their relevance to Global's failure to comply with its prior agreements.

Fourth, the Opposition heavily references the Parties' prior settlement discussions.  Setting aside the impropriety and questionable approach of referencing (and indeed publicly filing) confidential settlement communications, the only relevance the settlement discussions have to the instant motion is that they explain why Epson did not seek to enforce the Parties' 2024 agreement between July and September 2024.  But, as is clear from the record, Epson did begin efforts to enforce that agreement as early as September 4, 2024.

Finally, the Opposition and declarations filed in support thereof include several misleading, contradictory, and outright false statements, and the Opposition itself then includes arguments that are not even supported by those statements.

Despite Global's attempts to muddy the waters and confuse the issue, the content of Epson's Motion and what it seeks to compel is very clear and simple: Global must comply with what it previously agreed to do.

**PLAINTIFF'S REPLY BRIEF IN SUPPORT OF MOTION TO COMPEL DEFENDANT GLOBAL AIPTEK INC.**

## II.    ARGUMENT

### A.    Epson's Motion Seeks to Compel Global to do What it Already Agreed to Do

#### 1.    Global's Prior Agreement to Produce Documents[1]

The Parties held an IDC before this Court on June 12, 2024.  (*See* Dkt. 43; Timm Decl., Ex. F.)  During that IDC, the Parties agreed to conduct depositions as set forth in Section II.A.2. below.  The Parties were not able to reach agreement on document search and production protocols during that hearing and, at the advice and instruction of this Court, continued meeting and conferring on the same thereafter.  (Timm Decl., ¶ 15, Ex. H.)  Specifically, on June 17, Epson sent a list of proposed search terms and proposed search protocol.  (*Id*., at pp. 9-12.)  On June 24, Global had not yet provided a response and Epson followed-up via email.  (*Id*., at p. 7.)  In response, Global sent a *different* list of terms on June 24, and included a different proposed protocol.  (*Id*., at p. 5-6.)

In Global's June 24 email, Global expressly agreed to: "Conduct an email search for … Frank Sheu, Khozema Ali, Allen Steinberg, Sonia (Allen's assistant), and Nardita (accountant)."  (Timm Decl., Ex. H at p. 6.)  These five custodians were not chosen at random, or on a whim.  Rather, they were identified by Mr. Sheu during his deposition.  Specifically, Mr. Sheu testified that "We have five **employees** work for us in the U.S." (Suppl. Decl., Ex. P[2] (Sheu Depo.), at 14:15-17) (emphasis added).  He then proceeded

---

[1]  A more complete recitation of the background leading to the 2024 agreement is presented in Epson's Motion. (*See* Motion at 1:14-5:3.)  This brief summary is intended to disprove the Opposition's incorrect explanation of events and attempts to contradictorily claim no agreement was made, Global complied with the agreement, the agreement is burdensome, and/or that Global *will* comply with the agreement.  None of which are true: Global entered into an agreement and has failed to comply with that agreement.

[2]  Epson submits portions of the transcript of Global's CEO and 30(b)(6) designee, Frank Sheu, to dispute the Opposition's factually unsupported assertion that "Steinberg, Crespo, and Marrero are independent contractors not under Global's control" and to explain how these individuals were identified as the custodians at-issue.  (*See, e.g.,* Opp., at 11:9-10); *see also In re ConAgra Foods, Inc.*, 302 F.R.D. 537, 560 (C.D. Cal. 2014) ("Evidence submitted in direct response to evidence raised in the opposition, however, is not "new." And therefore allowing such evidence to be submitted on reply.)

4

to identify: (1) "Khozema"; (2) "Nardita"; (3) "Allen"; (4) "Sonia"; and (5) himself. (*Id.*, at 14:19-15:5.)  Global also stated that Epson's the list of search was overbroad because it included the term "HP," and proposed a different, narrower list of search terms.

In response to Global's email, Epson responded with its reasoning for why Global's proposed terms were insufficient, insisted that Epson's list of terms must be run, and asked several clarifying questions with regard to Global's proposal.  (*Id.*, at pp. 4-5.)  On July 1, Global confirmed how it would run searches ("via Zoom with the individuals sharing their screens with us so that when the individuals run the terms, we can see how many emails show up"), explained why the term "HP" was overbroad (it "will turn up in all emails because it is in the email address") but nonetheless expressly agreed that "We will run the overbroad terms to provide numbers of how many emails are responsive", and finally agreed to "produce in a load file format." (*Id.*, at p. 3.)  At that time, Global's proposal was to produce documents within 4 months, which would have put production at sometime in November—after the then-discovery cut-off, which was obviously unacceptable to Epson.[3]  That notwithstanding, on July 5, Epson stated the search and production protocols were agreeable, provided production would occur before depositions, and that the process would not be substantially delayed by, *inter alia*, Mr. Sheu's purported travels.  (*Id.,* at p. 2.)

At that same time, Epson provided *narrowed* terms to address Global's stated concerns about "HP" being overbroad.  While Global had unequivocally agreed to run the term "HP", Epson sought to short-circuit the process of having Global return what it stated would be an extremely large number of "hits" as a result of "HP" appearing in the email addresses at issue, and so provided connector terms to be run with "HP."

---

[3] The Opposition seems to suggest that no agreement was reached because Epson stated it was only "willing to accept" the agreement, provided documents were produced more rapidly than "after the close of discovery."  (Opp., at 7:10-15.)  Such argument is unavailing and does nothing to address why Global cannot now run the search terms it already agreed to on each of the custodians it already agreed to.

**PLAINTIFF'S REPLY BRIEF IN SUPPORT OF MOTION TO COMPEL DEFENDANT GLOBAL AIPTEK INC.**

According to the terms of the agreed upon search protocols, Epson would have done anyway once presented with what Global states would have been exorbitantly high hits, and so was simply attempting to make the search process more efficient.   The Opposition falsely claims this list of narrowed terms represented a "counter-proposed supplementing the terms with a further list." (Opp., at 9:12-16.)  And further falsely claims "Global did not agree because the supplemented terms would likely result in overly broad and unrelated results." (*Id.*, at 16-18.)  In fact, this "supplement" Epson provided was strictly to *narrow* the term "HP" by adding connectors, and the term "HP" already appeared on the list of terms that Global unequivocally agreed to run on July 1. (Timm Decl., Ex. H at 2-12; *compare* lists at p. 2 and p. 10.)  What's more, if the prior emails (which Global's new counsel was presented along with the draft joint stipulation) did not adequately demonstrate why these connector terms were included, Epson's counsel *explained this process in an email on January 15, 2025.* (*Id.*, at Ex. M, pp. 23-24.) Thus, list of search terms Global *expressly* agreed to run on all five custodians is shown below, with the "additional" terms added on July 5th included with an extra indent:

- CC200
- BP5000
- CC500
- MP250
- MP2000PRO
- ANSI
- ANSI lumen(s)
- Lumen(s)
- Laser source lumen(s)
- Optical source lumen(s)
- Illuminate(s)
- Brightness

6

- Bright
- Luminous flux brightness
- Dim
- Not bright
- Light output
- Light source
- Broken
- Change
- Amazon
- AMZN
- HP (replaced on July 5th with the below *narrower* terms)
  - HP /p light ("added" July 5th)
  - HP /p source ("added" July 5th)
  - HP /p agreement(s) ("added" July 5th)
  - HP /p contract(s) ("added" July 5th)
  - HP /p sale(s) ("added" July 5th)
  - HP /p revenue ("added" July 5th)
  - HP /p complaint(s) ("added" July 5th)
  - HP /p return(s) ("added" July 5th)
  - HP /p brand ("added" July 5th)
- Bhphoto
- O'Rourke
- Walmart
- Test Report
- GT Technology Chongqing Limited
- Purchase
- Bought
- Complaint

7

- Warranty
- Epson
- ASIN
- "HP Marks" OR "HP Trademarks"
- Quality Control
- QC
- "Best Buy"
- "Bestbuy"
- Bestbuy w/10 .ppt
- Bestbuy AND propos!
- Bestbuy AND pitch
- Best Buy w/10 .ppt
- Best Buy AND propos!
- Best Buy AND pitch
- Amazon w/10 .ppt
- Amazon AND propos!
- Amazon AND pitch
- AMZN w/10 .ppt
- AMZN AND propos!
- AMZN AND pitch

The Opposition's suggestion that Mr. Timm misrepresented the search terms previously agreed to is baseless, insulting, and unprofessional and should be withdrawn. (Opp., 6:20-7:2.)  And the suggestion that no agreement was reached despite Global expressly stating it would "run the overbroad terms to provide numbers of how many emails are responsive," because Epson subsequently agreed to add connector terms to *narrow* the term that Global claimed was overbroad (but agreed to nonetheless use) is nonsensical.  (*See* Timm Decl., Ex. H.)

8

Following this, the Parties set aside enforcement of the 2024 agreement in favor of settlement discussions. But, by September 2024, Epson had become concerned with the lack of progress and so re-initiated efforts to enforce the 2024 agreement. (*See, e.g.,* Timm Decl., Ex. I.) The Opposition falsely claims that the Parties set aside discovery through November 2024 (*see, e.g.,* Opp. at 8:2-4), but the record clearly demonstrates Epson began attempting to enforce the 2024 agreement as early as September 4, 2024. (Timm Ex., Ex. I at p. 3.)

Specifically, on September 4, 2024, Epson informed Global it was concerned with the lack of progress and stated that Epson "intends to continue with the needed discovery if no substantive settlement update is provided by the end of this week." (*Id.,* at p. 3.) Eight days later, having received no response, Epson served additional discovery requests, requested production of the documents pursuant to the Parties' *prior* agreement by the end of September, and asked to schedule depositions for October 2024. (*Id.,* at p. 2.) Still receiving no response, on September 17, 2024, Epson served deposition notices for the three deponents at issue, and reiterated that Global produce all responsive documents pursuant to the Parties' prior agreement by October 1 2024. (*Id.,* at 2.)

Global *still* failed to respond to Epson's enforcement efforts (either via an email or document production), and, on October 2, 2024, Epson sent a Local Rule 37 compliant meet and confer letter to Global seeking to enforce Global's compliance with the Parties' prior agreement with respect to document productions and depositions. (Timm Decl., Ex. A; Suppl. Decl., Ex. N.) In response, Global's counsel informed Epson he intended to withdraw due to a breakdown of the attorney client relationship, and that he would be unable to obtain the previously agreed upon documents. Global's prior counsel then suggested the deponents might be able to appear for depositions in

9

November 2024, "but they'll need to get new counsel in order to do that." (Suppl. Decl., Ex. O[4] (Transcript from 10/16/24 IDC), at 6:10-13.)

The Opposition intentionally conflates issues and miscites evidence to argue that no agreement was reached, but the record clearly demonstrates otherwise. The Opposition cites to the Timm Declaration to assert the Parties did not reach an agreement with regard to document production *during the June 12 IDC*, but then completely ignores the second portion of the same sentence that clearly states an agreement was reached through subsequent meet and confer efforts. (Opp., 6:14-18; Timm Decl., ¶ 15[5], Ex. H.) The Opposition then confuses the purpose of the subsequent October 16 IDC to assert a lack of agreement during it demonstrates Global did not agree to search for and produce documents as part of the 2024 agreement. (Opp., 6:19-20.) In fact, the October IDC was set to enforce the Parties' 2024 agreement and compel Global to comply with what it had *already agreed to do*—i.e., the same thing as this Motion seeks. (Timm Decl, ¶¶ 19-21, Ex. J.) Simply put, the Parties *did* reach an agreement in 2024 regarding the search terms, custodians, and search and production protocols, but then Global failed to comply with that agreement and the Parties were unable to reach an informal resolution with regard to Global's failure during the October 2024 IDC, because Global's counsel intended to move to withdraw.

Global's refusal to comply with its prior agreement is concerning on its face, and even more concerning because it is the second such time Global has agreed to run specific searches for documents, but failed to do so. (*See, e.g.,* Timm Decl., ¶¶ 11-12, Exs. D-E.) That Global is now taking such a flippant position with respect to its prior agreements only emphasizes the reason this Motion is necessary, and further calls into

---

[4] Epson submits this transcript to rebut Global's incomplete and misleading assertion that Global attempted to comply with the 2024 agreement by producing its witnesses for deposition in November 2024. (*See, e.g.,* Opp. at 10:5-8); *see also In re ConAgra Foods, Inc.*, 302 F.R.D. at 560.

[5] Miscited as ¶ 14 in the Opp.

**PLAINTIFF'S REPLY BRIEF IN SUPPORT OF MOTION TO COMPEL DEFENDANT GLOBAL AIPTEK INC.**

question whether or not Global intends to comply with any future agreements it may enter into it absent a court order.

### 2.  Global's Prior Agreement to Produce Deponents For Deposition

Global also previously agreed to produce Mr. Sheu and Mr. Ali for deposition in-person in Chicago and Los Angeles, respectively, and Mr. Steinberg remotely. The reason Epson agreed to take Mr. Steinberg's deposition remotely is that, in its pre-June 12, 2024 IDC letter, Global stated only that "Mr. Steinberg has an illness and is not willing to attend an in-person deposition."  (Suppl. Decl., Ex. Q.)  No further information was provided, but Epson agreed to conduct Mr. Steinberg's deposition remotely, despite maintaining its preference for an in-person deposition.

Epson has maintained—even in its Motion—that it is willing to take Mr. Steinberg's deposition remotely if he remains too ill to attend an in-person deposition. (*See, e.g.,* Motion at 27:25-28:2.)  Global has not, however, ever provided additional information regarding Mr. Steinberg's health to show he remains ill such that he cannot attend a deposition in-person.

The Opposition misleadingly suggests that Global offered its deponents for deposition in November, but that Epson declined.  (Opp., at 14:15-16.)  In reality, Global's prior counsel stated that Global's witnesses may be available for deposition in November 2024, "but they'll need to get new counsel in order to do that." (Suppl. Decl., Ex. O (Transcript from 10/16/24 IDC), at 5:10-13.)  Global's new counsel did not appear until December 17, 2024, and Epson was unable to take depositions of Global's witnesses (which include a 30(b)(6) deposition) and so deposition in November were impossible. (Dkt. 74.)  Moreover, Epson still desires the document productions prior to taking depositions—a position that is extremely common in litigation, and one which Epson has regularly reiterated—and so depositions in November that would have preceded document productions would have been highly inefficient. (*See, e.g.,* Timm Decl., Ex. G at p. 8-9, Ex. H at p. 2, Ex. A at p. 3.)

**PLAINTIFF'S REPLY BRIEF IN SUPPORT OF MOTION TO COMPEL DEFENDANT GLOBAL AIPTEK INC.**

Finally, the Opposition misleadingly suggests Global has now agreed to produce its witnesses pursuant to the 2024 agreement. (Opp., at 14:17-18.) In reality, Global has *refused* to produce Mr. Sheu for an in-person deposition as was part of the 2024 agreement. (*Compare* Timm Decl., Ex. I at 2 & Suppl. Decl., Ex. Q; *with* Timm Decl., Ex. M at 3 & 18.) And Global has refused to produce Mr. Steinberg for any in-person deposition without providing a reason as to why he cannot attend beyond the fact that he was purportedly ill in or around June 2024.

Simply put, Global must be held accountable for what it agreed to in the 2024 agreement. That includes in-person depositions of Mr. Ali and Mr. Sheu, and an in-person deposition for Mr. Steinberg *unless* Global provides information sufficient to show why Mr. Steinberg cannot appear for an in-person deposition (and such deposition can occur in New York—the city in which Mr. Steinberg lives—Chicago—the city in which Global has its principal place of business—or Los Angeles—the city in which all counsel are located—or some other mutually agreed upon location).

**B.** **Global Has Not Complied With Its Prior Agreement to Produce Documents**

**1.** **Global *Has Not* Produced Any Documents Since Agreeing to Run Specific Search Terms Pursuant to a Search Protocol Global Agreed To**

Since the 2024 agreement was reached, Global has produced **zero** documents. The Opposition incorrectly suggests otherwise, but relies upon irrelevant documents to do so. Specifically, Global's former counsel submits a declaration stating that "as stated during the June 12, 2024, IDC, Global did find and produce relevant documents, such as customer complaints." (Opp., 11:26-12:3.) The Opposition then cites to Global's written responses *to Requests for Production Set Three* and what appears to be a single document—both produced prior to the June 12 IDC—to argue the Motion is "patently false." (*Id*.) There are glaring issues with Global's argument. First, the discussion of document productions *at the June 12 IDC* necessarily was referring to documents

12

*produced before the June 12 IDC*, which was several weeks before the 2024 agreement. Second, the written responses and document production occurred on June 10 and June 11, respectively, both of which were, again, before the June 12 IDC, and weeks before Global subsequently agreed to run the specific searches on specific custodians. Finally, the RFPs at issue in this Motion are Sets 1 and 2, rather than Set 3, and so even if the written responses and document production occurred *after* the 2024 agreement was reached, that would not demonstrate compliance with that agreement.

What's more, Global previously raised this same argument during the most recent meet and confer efforts, and Epson's counsel explained why the production of what appears to be a single contract, which was made a month *before* the 2024 agreement clearly could not demonstrate compliance with that agreement. (*See* Timm Decl., Ex. M at pp. 5-6.)

The Opposition further argues that it is "demonstrably false" that Global has not conducted searches—but that is not the underlying issue in the Motion. (Opp., at 5:16-6:1.) Rather, the Motion seeks the *production* of documents pursuant to the prior 2024 agreement. In fact, during the meet and confer efforts with Global's new counsel, Epson's counsel expressly acknowledged it "cannot speak directly to what searches Global may have conducted through its prior counsel…." (Timm Decl., Ex. M at 9.)[6] But regardless of whether Global's prior counsel did conduct any searches *pursuant to the 2024 agreement*, no responsive documents have been produced. If they had been, Epson's Motion, if even necessary, could have been more targeted to address deficiencies in the production, rather than the lack of any such production. Further, if Global had collected documents pursuant to the 2024 agreement, it would seem an easy task to simply re-produce them according to that same agreement. Yet, despite having months of opportunity to do-so, neither Global's prior counsel, nor its current counsel have made any such productions.

---

[6] Though Global's prior counsel suggested during meet and confer efforts prior to the October 2024 IDC that he was unable to conduct searches and obtain documents due to the breakdown of the attorney-client relation.

**PLAINTIFF'S REPLY BRIEF IN SUPPORT OF MOTION TO COMPEL DEFENDANT
GLOBAL AIPTEK INC.**

Similarly, while Global's prior counsel's declaration states that he conducted searches for Mr. Sheu, Mr. Ali, and Mr. Steinberg's emails, he does not state they were ever produced.  (Keshishian Decl., ¶¶ 3 & 6-7.)  Instead, Mr. Keshishian falsely asserts that, following the agreed-upon temporary suspension of discovery efforts, "Epson never requested documents from the subsequent searches," creating the impression that Global collected documents but never produced them because Epson never asked.  (*Id.*, at ¶¶6-7.)  This is demonstrably false. On September 4, Epson stated it needed a response on settlement discussions by the end of the week or would need to resume discovery.  (Timm Decl., Ex. I at p. 3.)  The following week, having received no response, Epson's counsel expressly stated "I will also need documents responsive to my client's initial requests by the end of the month run with the search terms and protocol agreed upon." (*Id.*, at p. 2.)  On September 17, Epson's counsel reiterated that "[w]e also ask that all responsive documents be produced on or before Oct. 1…" (*Id.*) Epson even served a meet and confer letter and conducted the October IDC to try and obtain the documents. (Timm Decl., Ex. A; Suppl. Decl., Ex. N.)

## 2.  <u>Global Provides No Acceptable Reason as to Why It Should Not, or Cannot, Comply With Its Prior Agreement</u>

The Opposition includes many red herrings and irrelevant arguments.  What it does not include, however, is an explanation for why it cannot (or will not) comply with its prior agreements.

In fact, even Global's recent meet and confer correspondence makes it unclear how and why it will not search for *all* of the documents it previously agreed to.  Through the most recent meet and confer efforts, Global's counsel first stated: "My client agrees to provide files **resulting from the search terms previously agreed upon by the parties** (in accordance with the Joint Rule 26(f) report) to be run on the accounts for (1) Sonia Marrero and (2) Ali Khozema." (Timm Decl., Ex. M) (emphasis added).  But then subsequently altered its position and refused to conduct searches for Nardita

14

Crespo and Sonia Marrero, and instead agreed to run searches on the emails of Frank Sheu, Khozema Ali, and Allen Steinberg. (*Id.*, at pp. 2 & 11.)

The Opposition appears to advance three *possible* reasons why Global is refusing to comply with its prior agreements, none of which are availing, and all of which are easily rebutted.

First, Global argues that the RFPs are "overbroad and unduly burdensome." (Opp., 6:2-13.) This argument fails for several reasons. First and foremost, Global already repeatedly agreed to run specific enumerated searches, and reiterated such agreement through both its prior and new counsel. (*See, e.g.,* Timm Decl., Ex. H at p. 3 & Ex. M at p. 18.) The Parties' agreement on search terms already took into account Global's objection that the RFPs were overbroad and unduly burdensome, including by implementing a search protocol whereby Global could provide Epson with the number of "hits" for any term it believed resulted in an overly burdensome number results. (*Id.*, Ex. H at 4.)

Moreover, Global's specific "objections" in the Opposition are easily dismissed. Global objects that the RFPs include the overbroad term "Products", and seeks "all advertisements" without a defined time period. (Opp., at 6:7-13.) None of those things are true. "Products" is a defined term that specifically addresses the projectors at issue in the lawsuit. (Timm Ex., B at 2:17-19.) The RFPs all include a temporal limitation of January 1, 2018 to present. (*Id.*, at 3:23-24.) And the RFP Global cites seeks all advertisements "*that set forth the light output or brightness of the Product.*" (*Id.*, at 6:4-5.) As this case is specifically about Global's false advertising of the light output or brightness of the Products, such RFP is certainly relevant—and indeed absolutely necessary—and not overbroad.

Second, Global suggests that it need not run searches on Mr. Steinberg's, Ms. Crespo's, nor Ms. Marrero's emails because they are independent contractors not under Global's control. (Opp., at 9:9-10.) This is belied by Sheu's deposition testimony that each of those three are Global's **employees**, which overrides unsupported statements

15

and lawyer argument. (Suppl. Decl., Ex. P, at 14:15-15:5.) But more fundamentally, Global *already agreed to produced documents for these individuals*. (*See, e.g.,* Ex. H.) If Global was not going to conduct searches on these individual's email addresses on the basis that it *could not*, it needed to inform Epson of that at some earlier point *before* agreeing to conduct those searches so that Epson could have subpoenaed such records at a much earlier time. Global's tactic appears to be one of stall and delay to prevent Epson from obtaining clearly discoverable information. And moreover, Global asserts that it has (and will) search Mr. Steinberg's emails, despite him purportedly having the same status as Ms. Crespo and Ms. Marrera. (Timm Decl., Ex. M at p. 18.) Such inconsistent position demonstrates Global's erratic approach to discovery to-date, which ultimately necessitated the filing of this motion.

Finally, Global argues that searches need not be run on the emails for Sonia and Nardita, because "they do not use Outlook and do not send and receive emails as Global Aiptek email account users." (Opp., at 9:7-9.) The fact that neither uses "Outlook", even if true, is entirely irrelevant, as Epson is not seeking documents specifically from "Outlook", but rather from an *email* address, as well as all other cloud accounts.[7] Moreover, it is unclear what Global is characterizing as a "Global Aiptek email account user." Is Global's suggestion that neither individual sends or receives emails *as part of their work for Global*? Or that they use an email address not issued directly by Global Aiptek for such emails? Or something else?

Regardless, it is clear from Mr. Sheu's deposition that Ms. Crespo and Ms. Marrero are likely to possess highly relevant information. Specifically, Mr. Sheu

---

[7] Epson always sought production of documents from all cloud accounts and other sources of documents—as is customary in discovery, and encompassed by Epson's Request for documents and communications "in your possession, custody, or control." (*See, e.g.,* Timm Decl., Exs. B & C, and Ex. H at p. 11.) Epson had been willing to obtain documents from email accounts as a first step, because Global agreed to produce such documents/communications without the need for judicial intervention. Epson reserved its right to pursue additional sources of documents, however, pending the results of the email productions. As Global has now violated two separate informal agreements between the Parties with respect to document productions, Epson is now forced to seek production of documents from *all* sources.

16

testified that Crespo's role with Global is "an accountant" and that her duties include to "Record the sales received, invoice" and other "Typical accountant activities." (Suppl. Decl., Ex. P, at 17:1-8.)  The RFPs involve requests for, *inter alia*, documents and communications relating to GAC's revenue, costs, accounting statements.  (*See, e.g.,* Timm Decl., Ex. B at RFP 3-5, & 17.)  As such, Ms. Crespo—who is, according to Mr. Sheu's testimony, the *only* accountant Global employs—is almost certainly in possession of relevant documents.  Ms. Marrero's job with Global Aiptek is to "Follow up with sales, customer service, client service related to sales." (Suppl. Decl., Ex. P, 17:19-22.)  The RFPs seek documents relating to customer complaints (*See, e.g.,* Timm Decl., Ex. B at RFP 13, 18, & 19.)  As Mr. Sheu testified Ms. Marrero's job duties include to "follow up" with sales and customers, she also undoubtedly has relevant documents on her email address (and likely other cloud accounts).

Simply put, Global has provided no actual reason why it cannot, and will not, run the specific searches *it previously agreed to* on each of the five custodians *it previously agreed to*, and each of the half-hearted arguments Global does assert are easily rebutted upon even a cursory review of the underlying facts.

## C. **Epson Attempted to Meet and Confer With Global to Obtain the Agreed Upon Documents for Nearly Two Years, Including Multiple IDC's On This Very Issue**

The Opposition boldly asserts that Epson's Motion is "premature and baseless" and that the filing was "somewhat of a surprise." (*See, e.g.,* Opp., at 10:21-23, 14:11.) As is well documents by the record by this Court, Epson has been seeking some the documents at issue for nearly two years (RFP 1), and the rest for nearly one year (RFP 2).  Epson diligently pursued the informal discovery process in an attempt to avoid judicial intervention, including agreeing to a list of search terms Global would use to search for documents *in fall 2023.*  (Timm Decl., Ex. D.)  Global failed to comply with that agreement.  Epson then tried meeting and conferring again, and eventually participated in the June 12, 2024 IDC.  Epson once again thought it had entered into an

17

informal agreement with respect to both the depositions (at the IDC) and the documents (through subsequent meet and confer efforts). But when Epson ultimately tried to obtain the documents pursuant to that agreement, Global failed to produce any such documents, with its then-counsel citing a breakdown in attorney-client relationship as the reason he would be unable to help obtain them. Then, during that October IDC, this Court recognized the informal process would not work in this instance, and instructed Epson to "go to the Local Rule 37 process." (Suppl. Decl., Ex. O, at: 6:24-7:5.) Epson thereafter served a joint discovery stipulation on Global's counsel, but did not receive Global's position prior to his withdrawal as counsel in November. (Timm Decl., ¶¶ 20-22.)

Once Global's new counsel appeared, Epson promptly—the next day—served new counsel with a copy of the joint discovery stipulation. While the Local Rules would require Global to provide a response within seven days, Epson provided Global *over 3 weeks* in recognition of new counsel's need to get up to speed. (Timm Decl., ¶¶ 24, Ex. L.) Despite several follow-up attempts, Global never responded to that email, instead send a separate email asking for additional time the day before the deadline requesting an extension. (*Id*., at ¶ 25.) Epson agreed to a one-week continuance to January 17, noting Epson would then file on January 20. (*Id*., at Ex. 5 p. 29.) Then, following a meet and confer call, Global suggested another week-long extension, during which the Parties would attempt to agree to a production timeline. Importantly, if the Parties did *not* reach such an agreement within the week, Global was to provide its position in the joint stipulation by January 24, to be filed on January 27. (*Id*., at p. 22 & 26.)

No agreement was reached during that week. Instead, on January 24, Global made an "offer" to do substantially less than its prior agreement—something Epson had already stated was unacceptable. (*Id*., at pp. 18-19.) And in response, Epson reiterated anything less than compliance with Global's prior agreement with respect to documents was unacceptable, and would result in Epson needing to file its motion. (*Id*., at pp. 14-17.)

18

**PLAINTIFF'S REPLY BRIEF IN SUPPORT OF MOTION TO COMPEL DEFENDANT GLOBAL AIPTEK INC.**

Thereafter, Global's counsel several times suggested a call to discuss, which Epson's counsel agreed to, inviting Global's counsel to call at his convenience in recognition of the fact that Global's counsel was out of the country. Global's counsel, however, never called Epson's counsel. (*Id*., at pp. 2-12.) Also during that time, Epson reiterated *several* times that it needed Global's position in the joint discovery stipulation. On January 28, Epson's counsel stated it needed Global's confirmation in-writing it would comply with *all* parts of its prior agreement by January 29, or else would need Global's position in the joint stipulation by that same date so the Motion could be filed by January 30. (*Id*., at pp. 11-12.) Global provided neither, and instead asserted a feigned ignorance over "what is Epson's position on what has not been produced?" (*Id*., at 10.) Epson confirmed—again—that *nothing* had been produced pursuant to the 2024 agreement, and clearly stated "If we do not have a written agreement by Friday, we will be filing our Motion to Compel on Monday whether or not we have Global's position—we have been extremely patient through this whole process, but simply cannot wait any longer." (*Id*., at pp. 8-9.) Global's counsel responded that same day, and so cannot claim it was unaware of Epson's clearly stated intention, but still failed to provide its position to the joint discovery stipulation.

Simply put, Epson has been beyond patient with Global's failures to comply with its discovery obligations, including its failure to comply with two *separate* agreements between the Parties. Epson's Motion is not premature.

**D.**    **Global's References to Settlement Negotiations and Un-Alleged Claims Against Epson Are Red Herrings and Irrelevant to Epson's Motion**

The Opposition inexplicably raised arguments about *other* cases Epson is involved in and teases that Global has claims to assert against Epson that it has not yet asserted. (*See, e.g.,* Opp. At 3:26-5:12.) These assertions are clearly just a mudslinging effort, as the Opposition does not even *attempt* to explain how such arguments are relevant to the instant Motion.

19

Moreover, the Opposition repeatedly references settlement discussions to suggest Epson's Motion was filed just for leverage. (*See, e.g.,* Opp. at 4:10-11, 9:23-10:7, 13:12-14, 14, 4-5.)  The only relevance settlement discussions have to this Motion is to explain why Epson waited until the beginning of September to attempt to enforce the 2024 agreement.

## III.   <u>CONCLUSION</u>

For the foregoing, Epson's Motion should be granted in its entirety, and Global should be sanctioned for its discovery misconduct.


Dated: February 18, 2025                                **K&L GATES LLP**


                                                         By:   */s/ Zachary T. Timm*
                                                               Christina N. Goodrich
                                                               Zachary T. Timm
                                                               Morgan T. Nickerson (admitted *pro hac
                                                               vice*)

                                                               Attorneys for Plaintiff
                                                               Epson America, Inc.


### <u>CERTIFICATE OF COMPLIANCE WITH LOCAL RULE 11-6.1</u>

The undersigned, counsel of record for Plaintiff Epson America, Inc., certifies that this brief contains 6,166 words, which complies with the word limit of L.R. 11-6.1.

Date: February 18, 2025                                 */s/ Zachary T. Timm*
                                                        _____
                                                        Zachary T. Timm

**PLAINTIFF'S REPLY BRIEF IN SUPPORT OF MOTION TO COMPEL DEFENDANT
GLOBAL AIPTEK INC.**