```
 1                    UNITED STATES DISTRICT COURT
                     CENTRAL DISTRICT OF CALIFORNIA
 2                    SOUTHERN DIVISION - SANTA ANA

 3

 4   EPSON AMERICA, INC.,        ) Case No. SACV 23-00222-FWS(DFMx)
                                 )
 5        Plaintiff,             ) Santa Ana, California
                                 ) Thursday, April 17, 2025
 6            v.                 ) 11:30 A.M. to 11:54 A.M.
                                 )
 7   GLOBAL AIPTEK INC., et al., ) TELEPHONIC HEARING
                                 )
 8        Defendants.            )
                                 )
 9

10

11

12                      TRANSCRIPT OF PROCEEDINGS
                BEFORE THE HONORABLE DOUGLAS F. MCCORMICK
13                    UNITED STATES MAGISTRATE JUDGE

14

15   Appearances:              See Page 2

16   Deputy Clerk:              Jazmin Dorado

17   Court Reporter:            Recorded; CourtSmart

18   Transcription Service:     JAMS Certified Transcription
                                16000 Ventura Boulevard #1010
19                              Encino, California  91436
                                (661) 609-4528
20

21

22

23

24
     Proceedings recorded by electronic sound recording;
25   transcript produced by transcription service.
```

```
 1  APPEARANCES:
 2
 3  For the Plaintiff:      K and L Gates LLP
                            By:  MORGAN T. NICKERSON
 4                          State Street Financial Center
                            One Lincoln Street
 5                          Boston, Massachusetts  02111
                            (617) 261-3134
 6                          morgan.nickerson@klgates.com
 7
 8  For the Defendants:     Cohen IP Law Group, P.C.
                            By:  VIKRAM AMRITRAJ
 9                          9025 Wilshire Boulevard, Suite 301
                            Beverly Hills, California  90211
10                          (310) 288-4500
                            vikramamritraj@gmail.com
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
```

```
 1      SANTA ANA, CALIFORNIA, THURSDAY, APRIL 17, 2025, 11:30 A.M.
 2            THE CLERK:  We are now on the record on Case No.
 3   SACV 23-222-FWS (DFMx).  Epson America, Incorporated v.
 4   Global Aiptek Incorporated, et al., Magistrate Judge
 5   Douglas F. McCormick presiding.
 6            Counsel, please state your appearances for the
 7   record.
 8            MORGAN T. NICKERSON:  Good morning, Judge.
 9   Morgan Nickerson on behalf of Epson America, Inc.
10            VIKRAM AMRITRAJ:  Good morning, Your Honor.
11   Vikram Amritraj on behalf of Defendant Global Aiptek Inc.
12            THE COURT:  All right, counsel.  This is
13   Judge McCormick.  I'm about 90 minutes behind schedule this
14   morning so I'm not at the courthouse, but I didn't want to
15   miss our opportunity to get an update from Mr. Amritraj about
16   everything that has happened in the last week.
17            Mr. Amritraj?
18            MR. AMRITRAJ:  Thank you, Your Honor.
19            You know, quite a lot has happened in the last
20   week.  I'll try and cut to the chase here.  At our last
21   conference, I believe we had identified we had started the
22   iterative search process.  You know, we were well into it
23   with Epson.  They had identified about -- it turned out to be
24   about 4,100 emails out of roughly 15,000 hit counts that we
25   had produced by the last conference.  So we -- I had gotten
```

1 production of those 4,100 emails. I reviewed a majority of
2 them. I was actually only able to review about 2,500 -- 24-
3 or 2,500 emails, and of those 2,500, we determined that six
4 -- a little over 1,600 could be produced, you know, absent
5 privileges and things like that.
6 　　　　　So as of yesterday we produced about 1,640 emails
7 in native format, produced as -- along with the original
8 attachments, which runs up the document number to, likely, a
9 few thousand more. We still have another 1,500 or so from
10 that production that I need to review and ferret out
11 privileged information and such and get that over to Epson.
12 　　　　　In the meantime, we've also -- in continuing the
13 iterative search process, there were a number of other terms
14 that Epson wanted further searches on with proximity terms
15 and other narrowing terms. So we've engaged another two
16 rounds of that continued process. We've been working
17 together on that. I got my -- I got another around for Epson
18 yesterday, and as we speak, I believe our e-discovery team is
19 producing hit counts for that, along with other responsive
20 documents that Epson had identified based on those hit
21 counts.
22 　　　　　So we are, you know, a majority of the way there
23 and deep into the process. However, I wanted to bring to the
24 Court's attention, now that we've had a chance to go through
25 this hit count process, iterative search process, and

1 actually get eyes on the documents that are resulting from
2 these searches, even the narrowed searches, that I think we
3 are at the point where we can certainly say this is a
4 overbroad, voluminous, and burdensome production, Your Honor.
5 And I want to, you know, draw the Court's attention --
6             THE COURT:  Stop talking.  Stop talking.
7             MR. AMRITRAJ:  -- to our opposition of the motion
8 --
9             THE COURT:  Stop talking right -- stop talking
10 right now.  I don't care.  Your client and you have dragged
11 your feet for how long now?  Weeks?  Months?  And for you to
12 come at this point and time, when we're talking about the
13 level of production we're talking about that you still
14 haven't finished and start complaining to me about
15 overbreadth -- the time for that is long past.  If you have a
16 -- had a showing to make about overbreadth, you should have
17 made it in your opposition to the motion to compel.  You
18 didn't.  So I don't want to hear it now.
19       What I want to hear is when is this process going
20 to be finished?  I ordered it last week.  I told you this
21 week it needed to be done.  I have threatened you with
22 sanctions.  Those sanctions are coming for you and your
23 client.  Let me be clear.  What I want to hear now is when is
24 this going to be done, and then I'm going to ask
25 Mr. Nickerson what he has questions about.  I don't want to

1  hear any more complaining about overbreadth.  Am I clear?
2         MR. AMRITRAJ:  I understand, Your Honor.  I
3  completely understand.  However, the delay on this process is
4  not a one-way street, and Epson has --
5         THE COURT:  I disagree.  I disagree.
6         MR. AMRITRAJ:  -- consistently delayed --
7         THE COURT:  I disagree.  I disagree.  Now, you can
8  do with that what you will.  Again, your opposition didn't
9  make a proper showing about overbreadth, and for you to
10 complain about it now is way too late.  So what I want to
11 hear is when is this process going to be over?  If that's not
12 the next thing to come out of your mouth, then we're going to
13 have a problem.
14        MR. AMRITRAJ:  Your Honor, if Epson wants tens of
15 thousands of emails of privileged business operations from my
16 client that have nothing to do with this case, it's going to
17 take a long time.
18            (Pause.)
19        MR. AMRITRAJ:  We can't give over trade secret
20 privileged information.  Epson is a competitor that is asking
21 for years of internal emails that don't have anything to do
22 with the causes of action.  I don't believe the client should
23 be punished and subject to further -- this is -- could be
24 irreversible damage to my client's business if its
25 competitors get ahold of all of its supplier information,

1  vendor information, pricing information, confidential
2  business information.
3          THE COURT: All right.
4          MR. AMRITRAJ: These are overbroad --
5          THE COURT: No. No. This is not a telephone
6  conference anymore. You're going to be in my courtroom.
7  Mr. Nickerson is going to be in my court. Okay? I want you
8  guys to meet and confer when you're going to be in my
9  courtroom, and we're going to be there until this is
10 resolved. Bring the e-discovery folks. Bring them in.
11 Like, this has now gone -- you've now elevated this with me,
12 and that's fine, but we're -- if it's elevated, it's
13 elevated. You guys have discovery cutoff.
14         Mr. Nickerson, what's the discovery cutoff?
15         MR. NICKERSON: The discovery cutoff is May 22nd.
16         THE COURT: How many depositions do you need to
17 take, Mr. Nickerson?
18         MR. NICKERSON: At this point we have -- we wanted
19 five. We have, at least, three in the process of being --
20 two are scheduled for next week, but I think at this point
21 those aren't going to go forward because we don't have
22 documents.
23         THE COURT: Have you begun to review the documents
24 you've received?
25         MR. NICKERSON: I received them at 2:30 in the

1  morning last night and were not able to access them until
2  10:00 a.m. this morning.  With that being said, I've started
3  the upload process, and I have a spreadsheet, and I can -- I
4  can see the basic metadata fields is what I've been able to
5  see so far.
6        THE COURT:  All right.  So you've not been able to
7  determine whether what you're getting is, at this point,
8  overbroad in terms of what you're looking for?
9        MR. NICKERSON:  No, I have not, Your Honor.
10        THE COURT:  How quickly, based on what you've seen
11  so far, do you think you could start to give me some ideas
12  about what you're seeing based on the -- based on what you've
13  -- what you anticipate?
14        MR. NICKERSON:  Once we get them uploaded, it
15  shouldn't take long.  I can -- I mean, it's only 1,600
16  documents at this point, which on its face I don't think is
17  overbroad by its very nature.  So I can go through those
18  pretty quickly.  I currently have an airline ticket scheduled
19  to be there next week.  If you want to meet at this time next
20  Thursday, I'm happy to come in the courtroom, and I can be
21  through those documents by then.
22        THE COURT:  Are you, Mr. Nickerson -- I'm sorry.
23        Mr. Amritraj, you mentioned privileged.  What kinds
24  of -- what privilege are you referring to at this point?
25        MR. AMRITRAJ:  There are multiple privileges,

```
 1  Your Honor, some of them attorney-client -- quite a few
 2  attorney-client emails, financial privilege, and trade secret
 3  privilege regarding certain business operations and such.
 4  Those aren't the easiest things to identify.  We certainly
 5  don't want to mark things as privileged that are not
 6  privileged, and we want to disclose -- if we need to disclose
 7  highly confidential business information, you know, we're
 8  certainly okay to do that.  We want to make sure we're
 9  keeping up with our designation obligations accurately.  But
10  those are the main categories, Your Honor: trade secret,
11  financial information, quite a lot of banking information.
12  There are a lot of invoices, you know, payment information --
13  and attorney-client.  Those are the main three.
14            THE COURT:  All right.  What is going to be -- what
15  is going to be trade secret about an invoice?
16            MR. AMRITRAJ:  Oh, not trade secret about the
17  invoice, Your Honor.  Trade secret about customer list --
18            THE COURT:  Well, what is going to be privileged
19  about an invoice?
20            MR. AMRITRAJ:  Just financial information: bank
21  account information, routing information, account numbers.
22            THE COURT:  We have --
23            MR. AMRITRAJ:  There's some for my client -- we do,
24  Your Honor, yes.
25            THE COURT:  Why are we withholding from
```

1  production something that can be marked "confidential" or
2  "highly confidential" under the terms of a protective order
3  to protect something like bank account information?  Like,
4  what -- why at this stage --
5          MR. AMRITRAJ:  No.
6          THE COURT:  -- are we talking about that kind of
7  issue?
8          MR. AMRITRAJ:  No, that's not a problem,
9  Your Honor.  That particular stuff is not a problem, but
10 there are trade secret -- there are trade secret discussions,
11 there are trade secret business operations that do need to be
12 filtered out, that the disclosure of would be detrimental to
13 my client's business interests.
14         THE COURT:  Okay.  I don't have your briefing in
15 front of me, but I would be surprised if there are
16 appropriate trade secret-type objections in your responses to
17 Mr. Nickerson's discovery requests.
18         Mr. Nickerson, are there trade secret objections in
19 the -- in response to the discovery requests?
20         MR. NICKERSON:  I don't have them in front of me;
21 so I can't speak -- I don't know is the answer.  If there
22 were, though, this is what a protective order is for.  Mark
23 it "AEO," my client doesn't see it -- that's, I think, the
24 entire purpose of an AEO -- and then Mr. Amritraj and I can
25 have a discussion, and there's a whole process built into the

1 protective order. If we don't think it's a trade secret, we
2 can down-designate it.
3          I don't -- I personally do not see how there can be
4 any trade secrets at issue in this case. Anything that they
5 -- I mean, what I heard is they have 2,500 responsive
6 documents, and only 1,600 were produced, which means they
7 withheld 900 based upon financial privacy, trade secret, and
8 privilege. Financial privacy and trade secret -- mark it
9 "AEO." Attorney-client privilege -- produce a privilege log.
10 This is not complicated --
11          THE COURT: Yeah. I --
12          MR. NICKERSON: -- in my mind.
13          THE COURT: No, it's not complicated, and what you
14 said is exactly right, and I credit you for saying it better
15 than I said it because that's exactly right.
16          At this point, if we have documents that we think
17 are trade secret or financial, they need to be marked under
18 the terms of a protective order. If you guys don't have an
19 appropriate protective order, then you need to get one to me,
20 and I'll sign it today, and we need to get this process
21 expedited. And then, if there are attorney-client-privilege
22 documents, look, log them and -- withhold them and log them,
23 and we'll get that done.
24          But we need to complete the production of this --
25 of these 4,100 documents, Mr. Amritraj, and I guess I need to

1  get a handle on when that's going to occur.
2           MR. AMRITRAJ:  Just based on the last round, I'm
3  still waiting on a final approval, I guess, from
4  Mr. Nickerson about what documents he wants regarding the
5  last round of iterative searches, and I've got more documents
6  to produce based on our last email exchange yesterday, which
7  I should have in my inbox today to be able to review.  So if
8  we're going to -- if Epson is okay with us marking, you know,
9  realistically, the entire production as "AEO" and then, you
10 know, we move on from there, it'll help smooth the process --
11 move the process along a lot quicker.
12          MR. NICKERSON:  Well, let's -- to be clear, the
13 1,600 that you've produced right now have all been marked
14 "AEO," you've already done that, and none of them have Bates
15 numbers on them either.  My problem with that was as while it
16 may make it quicker, I need to be able to show -- I need to
17 be able to have conversations with my client.  So if I -- if
18 there's a way we could reconcile those two needs -- your
19 speed versus my ability to -- like, to tell my client what's
20 going on, I'm happy to have conversations with you like that,
21 but it's -- I think you have an obligation to go through --
22 if you're reviewing them, look at it.  If it's AEO, mark it
23 "AEO."  Just don't mark everything "AEO."  You need a good-
24 faith basis.
25          THE COURT:  Yeah.  I agree with that.  We -- the

1  problem, Mr. Amritraj, is this is the process that we should
2  have been undertaking weeks ago, and we did not initiate it
3  for reasons that I -- you know, don't have my notes right in
4  front of me, but it just didn't happen, and, you know, I was
5  told things were going to happen, I was told things were
6  going to happen, and it's really only in this call that we
7  are finally getting to this level of necessary discussion
8  which -- you know, frankly, someone from the defense
9  counsel's side should have had eyes on these documents months
10 ago to sort of raise issues about, like, trade secrets,
11 financial privacy, et cetera, et cetera, et cetera.  The fact
12 is you're just seeing them, and that is frustrating.
13          So you both need to continue to meet and confer.
14          Mr. Nickerson, you mentioned same time next
15 Thursday.  Do you think that is an appropriate time for us to
16 get back together and find out what's been happening?
17          MR. NICKERSON:  I have 1,600 documents right now.
18 I can make representations that I will have gone through
19 those ones by next Thursday.  I obviously do not know what is
20 coming.  I would just point out I'm in Boston, Massachusetts.
21 So if I -- want me to fly across the country, I'm happy to do
22 it, but just want to make sure it's worthwhile.  Otherwise,
23 I'm asking --
24          THE COURT:  Well, I want to make sure that I -- you
25 guys exhaust the process --

1              MR. NICKERSON:  Yeah.
2              THE COURT:  -- that you are currently working on
3    before I drag you into my court.
4              MR. NICKERSON:  Understood.
5              THE COURT:  So I have a settlement conference next
6    Thursday.  So I'd be happy to take 15 to 20 minutes in the
7    middle of that and get an update from you about how things
8    are continuing to go, and I will continue to hold everything
9    I've been holding in abeyance in abeyance until we get that
10   update, and, you know, we're now -- with that, we're going to
11   be practically at the end of April and only with four weeks
12   or so to the discovery cutoff, which makes me nervous, but
13   I'm not sure that I have a better option.
14             MR. AMRITRAJ:  Your Honor --
15             MR. NICKERSON:  Agreed, Your Honor.  And just a
16   couple of -- obviously, my job is to protect my client from
17   being prejudiced.  The depositions -- Mr. Amritraj has said
18   that his client is not going to be available for deposition
19   until June, which obviously raises issues.  I'm just -- and
20   may --
21             THE COURT:  Well, let --
22             MR. NICKERSON:  -- I want to raise another issue --
23             THE COURT:  Let's take a step back.
24        Mr. Amritraj, why is that?
25             MR. AMRITRAJ:  Your Honor, we -- my client is

1   available -- you know, we agreed on the April 22nd deposition
2   for Mr. Sheu, April 28th deposition, I believe, for Mr. Ali.
3   Mr. Sheu's actually on his way into America right now.  I
4   think he's on his way into California.  I emailed with him
5   yesterday, and he said, "I'm already on my way to come in for
6   the deposition."  So he's scheduled to be here next week --
7   he will be here next week, but after that, he won't be able
8   to come back to the country until the first week of June.  So
9   he's --
10              THE COURT:  Let me --
11              MR. AMRITRAJ:  -- pending --
12              THE COURT:  Yeah, let me ask you the -- look, he's
13  not driving this bus.  His ability to dictate those dates is
14  probably no longer a hundred percent his.  So that's a
15  difficult conversation for you to have, I understand it, but
16  if I need him here, he's going to be here, and that's just --
17  that's probably a reality.  We're not -- we're going to get
18  this document production completed.  I mean, your other
19  possible solution is he can be here next week and be deposed
20  next week, but he's probably going to need to be deposed
21  again, and that's just another reality.  So, you know --
22  where did you say --
23              MR. AMRITRAJ:  Your Honor, I --
24              THE COURT:  -- located.
25              MR. AMRITRAJ:  He is -- I believe he's based in --

1  I don't want to misrepresent to the Court, Your Honor.  It's
2  somewhere in Southeast Asia.
3          THE COURT:  Okay.
4          MR. AMRITRAJ:  It's either South Korea or -- he
5  flies around quite a bit.  So -- you know, for what it's
6  worth, Mr. Sheu has been deposed once.  This would be his
7  second deposition that we've agreed to.
8          I also wanted to just briefly bring to the Court's
9  attention the procedural status.  I know you're probably
10 aware, but we do have a motion to dismiss pending.  The
11 pleadings aren't set.  The motion to dismiss is going to be
12 heard June 12th, and we are most likely -- if it's denied,
13 we're most likely going to file a counterclaim.  I don't know
14 how that changes the timeline here on our discovery, on the
15 scheduling order and such.  I -- you know, that might be for
16 Judge Slaughter, but I did want to bring that to your
17 attention in terms of us, you know, trying to fit everything
18 in before May 22nd.  You know, we still have pleadings to set
19 and a possible counterclaim coming.
20         THE COURT:  Well, that's something for counsel to
21 discuss.  I mean, if counsel want to discuss a stipulation or
22 some other relief from the protective order that you think
23 makes sense in light of the fact that there's still Rule 12
24 -- is it a Rule 12(b)(6) motion?
25         MR. AMRITRAJ:  Yes.  Correct, Your Honor.

1          THE COURT: If that's something that counsel thinks
2   makes sense, that's something for counsel to discuss and
3   present something to Judge Slaughter with respect to that.
4          I'm looking at next Thursday at the same time,
5   11:30, for a further telephone conference. Does that work
6   for both counsel?
7          MR. AMRITRAJ: Yes, Your Honor. It works for me --
8   for defendant.
9          MR. NICKERSON: Yes, we -- it does.
10         THE COURT: All right. Ms. Dorado, would you put
11  on our calendar for next Thursday at 11:30 a further
12  telephone conference of the same type as today.
13         THE CLERK: I will, Your Honor.
14         THE COURT: Okay. And then I'll stop circling the
15  building while I'm on the phone and come up inside.
16         THE CLERK: (Laughs.) Okay.
17         THE COURT: People are looking at me as I'm driving
18  around and around. They're like, "Wait. Didn't he go by
19  here three or four times already?" Yeah, I did. But once I
20  go inside the parking garage, I'll lose you guys.
21         Okay. So we'll continue this to next Thursday at
22  11:30. I look forward to getting more information than -- it
23  would be great if we were at the finish line with respect to
24  the document production. I would encourage the parties to
25  talk to each other about designation -- privilege log --

```
 1  those kinds of things -- and try to work through those issues
 2  as much as you can, and then I'll -- we'll go from there.
 3           MR. AMRITRAJ:  Sounds like a plan.  Thank you,
 4  Your Honor.
 5           MR. NICKERSON:  Sounds good, Your Honor.  Thank
 6  you.
 7           THE COURT:  All right.  Thank you.
 8           THE CLERK:  This court is now adjourned.
 9      (Proceedings adjourned at 11:13 a.m.)
10  ///
11  ///
12
13
14
15
16
17
18
19
20
21
22
23
24
25
```

1
2
3
4                              CERTIFICATE
5        I certify that the foregoing is a correct transcript
6   from the electronic sound recording of the proceedings in the
7   above-entitled matter.
8
9   /s/ Julie Messa                    May 8, 2025
    Julie Messa, CET**D-403             Date
10  Transcriber
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25