1  **K&L Gates LLP**
2  10100 Santa Monica Boulevard
   Eighth Floor
3  Los Angeles, California 90067
4  Telephone: 310.552.5000
   Facsimile: 310.552.5001
5  Christina N. Goodrich (SBN 261722)
6  christina.goodrich@klgates.com
   Zachary T. Timm (SBN 316564)
7  zach.timm@klates.com

8  **K&L GATES LLP**
9  One Congress Street
   Suite 2900
10 Boston, MA 02114
11 Telephone: 617.261.3134
   Facsimile: 617.261.3175
12 Morgan T. Nickerson (*admitted pro hac vice*)
13 morgan.nickerson@klgates.com

14 *Attorneys for Plaintiff*
   *Epson America, Inc.*
15

16              **UNITED STATES DISTRICT COURT**

17         **FOR THE CENTRAL DISTRICT OF CALIFORNIA**

18                   **SOUTHERN DIVISION**

19

20 EPSON AMERICA, INC.                  | Case No.: 8:23-cv-00222-FWS-DFM
                                        | [Assigned to the Hon. Fred W.
21          Plaintiff,                  | Slaughter, Courtroom 10D]
22     v.                              | **PLAINTIFF EPSON AMERICA,**
                                        | **INC.'S *EX PARTE* APPLICATION**
23                                      | **AND REQUEST FOR ORDER**
   GLOBAL AIPTEK INC. and GAC          | **MODIFYING THE SCHEDULING**
24 TECHNOLOGY GROUP,                   | **ORDER; MEMORANDUM OF**
                                        | **POINTS AND AUTHORITIES IN**
25                                      | **SUPPORT THEREOF**
            Defendant.                  |
26                                      | *[Filed Concurrently with Declaration of*
27                                      | *Morgan T. Nickerson; Declaration of*
                                        | *Zachary T. Timm; and [Proposed]*
28                                      | *Order]*

_____

                 ***EX PARTE* APPLICATION TO MODIFY THE SCHEDULING ORDER**

**TO THE COURT, ALL PARTIES AND THEIR ATTORNEYS OF RECORD:**

**PLEASE TAKE NOTICE** that, pursuant to Local Rule 7-19, Plaintiff Epson America, Inc. ("Epson" or "Plaintiff") will and hereby does respectfully submit this *Ex Parte* Application and Request for an Order Modifying the Scheduling Order to continue all deadlines therein by three (3) months for good cause pursuant to Federal Rule of Civil Procedure 16(b) (the "Application").

The trial in this action is currently set for January 7, 2026. (ECF 70.) The Parties have previously filed four joint stipulations to modify the scheduling order, which were granted on December 19, 2023 (ECF 31), March 5, 2024 (ECF 33), August 5, 2024 (ECF 50), and October 31, 2024 (ECF 70). Epson recognizes this Court's prior statements in granting the Parties' fourth such stipulation that any further continuance would require a strong showing. (*See* ECF 70, fn. 1.) Such strong showing of good cause is present in this Application, including because Epson has been diligently attempting to obtain discovery from Defendant Global Aiptek Inc.'s ("Defendant" or "Global") since May 2023 and, despite such efforts, it was not until April 2025—following an Order from the Magistrate in this Action—that Defendant ***began*** to comply with their discovery obligations and the Parties' prior agreements. And, even then Defendant failed to comply with the Magistrate with the Magistrate's March 18, 2025 Order to produce all outstanding documents by April 9, 2025. (ECF 95.)

Defendant has since produced documents with blanket "Highly Confidential – Attorneys' Eyes Only" designations in violation of the Parties Confidentiality Order and without proper bates labels in violation of the Parties ESI Protocol. Despite being ordered to produce all documents by April 9, 2025, Defendant's deficient document production comes a mere month before the discovery deadline, forcing Epson to review all documents and prepare for the depositions of all deponents in an unreasonable amount of time. Notably, Epson's depositions of Defendant's custodians have already had to be postponed at least twice due to Defendant's failure to produce documents.

Moreover, Epson seeks to amend the Scheduling Order so that the Court may rule on Defendant's pending Motion to Dismiss and allow time for discovery to be conducted on Defendant's anticipated Answer, Affirmative Defenses, and Counterclaims, should the Court deny Defendant's Motion to Dismiss. Accordingly, Epson respectfully moves for the following amendments which extends the deadlines to the Court's Scheduling Order by three (3) months as follows:

| EVENT | DATE |
|---|---|
| Check one: [x] Jury Trial or [ ] Bench Trial **Tuesday at 8:00 a.m.** | **First Day:** **4/28/2026** |
| Parties' Estimated Trial Length | **4 days** |
| Pretrial Conference & Hearing on Motions in Limine **Thursday at 8:30 a.m.** | **3/5/2026** |
| Non-Expert Discovery Cut-Off (including any hearings on discovery motions) | **8/21/2025** |
| Expert Disclosure (Initial) | **9/11/2025** |
| Expert Disclosure (Rebuttal) | **9/25/2015** |
| Expert Discovery Cut-Off (*including expert depositions*) | **10/9/2025** |
| Last Date to **Hear** Motions **Thursday** • Motion for Summary Judgment) due at least 6 weeks before hearing) • All other motions (due at least 4 weeks before hearing) • Opposition (due 2 weeks after Motion is filed) • Reply (due 1 week after Opposition is filed) | **12/4/2025[1]** |
| Deadline to Complete Settlement Conference [L.R. 16-15] [ ] 1. Magistrate Judge (with Court approval) [ ] 2. Court's Mediation Panel [x] 3. Private Mediation | **12/11/2025** |
| **Trial Filings (first round)** • Motions in Limine with Proposed Orders • *Daubert* Motions with Proposed Orders2 • Memoranda of Contentions of Fact and Law [L.R. 16-4] • Witness Lists [L.R. 16-5] • Joint Exhibit List [L.R. 16-6.1] | **1/15/2026** |

---

[1] The current deadline is 8/28/2025. Three months would bring the deadline to 11/27/2025, which is Thanksgiving. As such, Epson requests that this deadline be pushed out by one week to accommodate for the holiday.

*EX PARTE* APPLICATION TO MODIFY THE SCHEDULING ORDER

| • Joint Status Report Regarding Settlement<br>• Proposed Findings of Fact and Conclusions of Law [L.R. 52] (bench trial only)<br>• Declarations containing Direct Testimony, if ordered (bench trial only)<br>• Affirmative Deposition Designation(s) | |

This Application is made on further grounds that Defendant will not be prejudiced by amendment of the Scheduling Order and Epson has not unduly delayed in seeking amendment.

The Parties previously discussed filing a joint stipulation requesting this same relief, with Defendant's counsel even stating he was "happy to prepare a stipulation" doing just that. (Nickerson Decl., ¶ 3; Ex. A.)  Indeed, as recently as May 1 in a hearing before Judge McCormick, Defendant made clear its intention to enter into a stipulation to extend discovery when it represented to the Court, "[w]ith respect to the stipulation [to extend discovery], I just received a draft stipulation this morning. So we're going to take a look at that and get back to Mr. Nickerson ASAP, hopefully today or tomorrow, once I have a chance to talk to the client, and ***we can get depositions pushed out or rescheduled or however we need to do it***." (ECF 113, Hearing 5:15-20, May 1, 2025.)  As such, Epson expected the Parties to jointly present this request to the Court. Defendant, however, has since changed its position and now opposes any extension—despite the fact that Defendant has indicated to both Epson and the Magistrate that a continuance will likely be necessary.  (ECF 111, Hearing 16:11-17, April 17, 2025 ("The motion to dismiss is going to be heard June 12th, and we are most likely -- if it's denied, we're most likely going to file a counterclaim. I don't know how that changes the timeline here on our discovery, on the scheduling order and such. I -- you know, that might be for Judge Slaughter, but I did want to bring that to your attention…").)  Accordingly, Epson makes this Application by itself, with the understanding that Defendant intends to oppose the same.

*EX PARTE* **APPLICATION TO MODIFY THE SCHEDULING ORDER**

*Ex parte* relief is warranted here.  Epson's request is made *ex parte*, rather than as a regularly noticed motion, because there is insufficient time for a regularly noticed motion to be heard prior to the current May 22, 2025 discovery cut-off.  Epson could not have brought this Application as a regularly noticed motion earlier, because, as noted above, it did not know such Motion would be required (including because Epson reasonably believed Defendant would complete its document production earlier, and with sufficient time to conduct depositions after such production was complete) and expected the Parties to file a joint stipulation.

If Epson's Application is not heard on an *ex parte basis*, Defendant will have successfully avoided its discovery obligations, in part due to misleading representations that it would enter into a joint stipulation to request an extension of the discovery cut-off.  Such result should not be allowed.

For these reasons and as explained in greater detail in the accompanying Memorandum of Points and Authorities, Epson has good cause in seeking *ex parte* relief, which is warranted under the circumstances.

Epson has met and conferred with Defendant regarding the relief sought in this Application on several occasions, including when the Parties intended to enter a joint stipulation, as well as subsequent to Defendant's withdrawal from that position.  Such meet and confer efforts included providing written and oral notice of this Application pursuant to Local Rule 7-19.1.  Such efforts include multiple teleconferences in April and May between counsel.  (Nickerson Decl., ¶ 3.)  This conference took place after the Parties hearing with the Court. (*Id.*) During the conference, Epson's counsel, Morgan T. Nickerson, confirmed that, in alignment with what was discussed with the Court, the depositions of Defendant would not move forward and would be rescheduled.  (*Id.*) Defendant's counsel, Vikram Amritraj stated that it would be a "good idea" and that he was "happy to prepare a stipulation as suggested." (*Id.*)  After the May 1, 2025 hearing, Defendant changed its mind as to the Parties stipulation. On May 5, 2025, Mr. Nickerson confirmed via e-mail with Mr. Amritraj that Defendant changed course and

was no longer "happy to prepare a stipulation as suggested." (Nickerson Decl. ¶ 4; Ex. A) (Email between counsel regarding stipulation to extend Scheduling Order). Finally, Epson's counsel called Defendant's counsel on May 12, 2025, to give notice of Epson's intention to file this Application that same day. (Timm Decl., ¶ 3.) During that call, Epson's counsel confirmed Epson's intention to file this Application on May 12, 2025, which Epson's counsel stated would seek to extend the deadlines in the current scheduling order by 3 months. (*Id.*, at ¶ 4.) Defendant's counsel stated that Defendant remained unwilling to stipulate to the requested relief, and that the last he spoke with his colleagues and client, Defendant's position was to oppose any continuance, however he stated he was unable to definitively state whether Defendant would oppose the Application. (*Id.*, at ¶ 5.)

Pursuant to Local Rule 7-19, the contact information for all other parties in this action is as follows:

| | |
|---|---|
| Michael N. Cohen (SBN 225348)<br>mcohen@cohenip.com<br>Vikram Amritraj (SBN 321584)<br>vamritraj@cohenip.com<br>COHEN IP LAW GROUP P.C.<br>9025 Wilshire Blvd., Suite 301<br>Los Angeles, California 90049<br>Tel: (310) 288-4500<br>Fax: (310) 246-9980 | *Attorneys for Defendant Global Aiptek Inc.* |

This Application is based upon this Notice, the attached Memorandum of Points and Authorities and supporting declarations of Morgan T. Nickerson and Zachary T. Timm, the complete files and records in this action, and such other and further matters as the Court may deem just and proper to consider this Application.

**K&L Gates LLP**

Dated:  May 12, 2025          By:   */s/ Zachary T. Timm*
_____
Christina N. Goodrich
Zachary T. Timm
Morgan T. Nickerson (*admitted pro hac vice*)

*Attorneys for Plaintiff*
*Epson America, Inc.*

***EX PARTE* APPLICATION TO MODIFY THE SCHEDULING ORDER**

# TABLE OF CONTENTS

**Page**

MEMORANDUM OF POINTS AND AUTHORITIES ................................................. 1

I.      INTRODUCTION ............................................................................................ 1

II.     PROCEDURAL BACKGROUND ................................................................. 3

III.    JUDICIAL STANDARD ................................................................................ 7

IV.     ARGUMENT ................................................................................................... 8

        A.      EPSON HAS DILIGENTLY PARTICIPATE IN DISCOVERY ........... 8

        B.      THE NEEDS FOR THE CONTINUANCE WOULD BE MET IF
                GRANTED ................................................................................ 12

        C.      THE PROPOSED DISCOVERY CUT-OFF AND PRETRIAL
                DEADLINE EXTENSION WILL NOT PREJUDICE
                DEFENDANT, NOR WILL IT INCONVENIENCE THE COURT ..... 13

        D.      EPSON WILL BE PREJUDICED IF THE CONTINUANCE IS
                DENIED .................................................................................. 14

V.      EPSON SATISFIES THE REQUIREMENTS FOR EX PARTE RELIEF ...... 15

VI.     CONCLUSION ............................................................................................. 17

**TABLES OF CONTENTS AND AUTHORITIES**

# <u>TABLE OF AUTHORITIES</u>

**Page(s)**

**Cases**

*Bearchild v. Cobban*,
   947 F.3d 1130 (9th Cir. 2020) ...................................................................... 7

*CTC Glob. Corp. v. Mercury Cable & Energy, Inc.*,
   No. SACV090261DOCEX, 2017 WL 11628848 (C.D. Cal. Aug. 4,
   2017) ............................................................................................................... 8

*Johnson v. Mammoth Recreations, Inc.*,
   975 F.2d 604 (9th Cir. 1992) ........................................................................ 7

*Mission Power Eng'g Co. v. Cont'l Cas. Co.*,
   883 F. Supp. 488 (C.D. Cal. 1995) ............................................................. 15

*Mkrtchyan v. Sacramento Cnty.*,
   No. 2:17-CV-2366 TLN KJN, 2021 WL 5284322 (E.D. Cal. Nov. 12,
   2021) ............................................................................................................. 14

*U.S. v. Kloehn*,
   620 F.3d 1222 (9th Cir. 2010) .................................................................... 12

**Other Authorities**

Wayne D. Brazil, 16 Moore's Federal Practice - Civil § 16.14 (Matthew
   Bender & Company, Inc. 2015) ................................................................. 13

Fed. R. Civ. P. 16(b) ................................................................................... 1, 7

Fed. R. Civ. P. 16(b)(4) .................................................................................. 7

Fed. R. Civ. P. 45 ........................................................................................... 4

Local Rule 37 .................................................................................................. 4

## MEMORANDUM OF POINTS AND AUTHORITIES

Plaintiff Epson America Inc ("Epson" or "Plaintiff") respectfully submits this Memorandum of Points and Authorities in support of its *Ex Parte* Application to Amend the Scheduling Order (ECF 70) pursuant to Federal Rule of Civil Procedure 16(b) (the "Application").

## I.    INTRODUCTION

Epson's request to continue the schedule should be granted because there is good cause for a three (3) month extension to the discovery and pre-trial schedule.

***First***, closing discovery is premature as Defendant has not yet even responded to the operative complaint.  Instead, Defendant has a pending Motion to Dismiss (ECF 96) which is scheduled to be heard on June 12, 2025 (ECF 102), three weeks after the non-expert discovery cut-off.  Defendant also indicated to the Court at a prior hearing that, when it responds to the operative complaint, it intends to file counterclaims against Epson.  (ECF 111, Hearing 16:11-17, April 17, 2025.)  As Defendant has not yet even filed a response to Epson's pleading and intends to file counterclaims, it is premature to close discovery as the claims themselves have not yet even been plead through the pleadings.

***Second***, Epson has been seeking documents from Defendant since of *May 2023.* Epson was forced to file a motion to compel.  Judge McCormick recently granted Epson's motion in full and required Defendant to produce documents from five (5) custodians and make the five (5) custodians available for depositions.  As of the date of this filing, Defendant has not complied with Judge McCormick's order as documents have been produced from only three of the five custodians.  For the three custodians that did produce documents, Defendant has failed to produce documents in accordance with Court's Order and the agreed upon Protective Order (ECF 95, 27).  This includes that, rather than utilizing specific search protocols in an iterative process to narrow the scope of Defendant's production to relevant and responsive documents, Defendant provided electronic access to the entirety of the search results (totaling more than 11,000

emails) designated Attorneys' Eyes Only, and directed Epson's counsel to review the documents to identify which documents it wanted Defendant to actually produce. Accordingly, it will take Epson substantial time to go through the documents and review the same.

In the Parties prior Fourth Stipulation and Request for Order Modifying the Scheduling Order (ECF 64), the Parties expressed that they had come to an agreement regarding Defendant's document collection and production, as well as depositions. (ECF 64). Unfortunately, Defendant thereafter failed to comply with that agreement, necessitating Epson to file a Motion to Compel once Defendant's new counsel had appeared. Despite numerous hearings before the Magistrate Judge, and Epson's attempts to obtain the documents that Defendant was ordered to produce, Epson still does not have documents from two of the five custodians, and only recently received a *substantial* amount of documents in response to its discovery requests dating back to May 2023. Given this, and the fact that Epson will need approximately three additional weeks to review the documents Defendant recently provided, the Parties were also unable to find mutually agreeable dates within the current discovery schedule to conduct the five depositions. To be clear, Epson has noticed depositions during the current timeline set by the Court, by Defendant has advised that the witnesses are unavailable.

Epson, therefore, requests a further modification to the current case schedule, including the fact discovery cut-off. Epson believes three months will allow it to complete discovery on the claims currently plead. Epson understands this Court's prior indication that a further extension of time would only be granted upon a strong showing, and believes the existing circumstances—including Epson's diligent attempts to obtain the outstanding discovery both before and since Defendant's new counsel appeared in this action—demonstrate such a strong showing. Epson brings this request via an *ex parte* application, rather than a noticed motion, due to time constraints. Specifically, the current fact discovery cut-off is May 22, 2025, and so any regularly noticed motion would not be able to be heard prior to such cut-off. Defendant had previously stated an

2

**MEMORANDUM OF POINTS AND AUTHORITIES**

agreement and intention to enter into a joint stipulation to request the current scheduling order be modified (and even stated they would draft such stipulation), and so Epson expected the Parties to submit a stipulation requesting the same relief as is being requested herein. Defendant subsequently changed its position with regard to this relief, however, and so Epson is now forced to bring this Application, which it understands Defendant will oppose.

As shown herein, significant good cause exists to further modify the scheduling order. This includes that, despite Epson's significant and ongoing efforts to obtain discovery—including with involvement from the Magistrate—it has still not received all responsive documents nor been able to take the required depositions. Further, the pleadings in this action are not yet settled. As such, a further continuance of the deadlines in the current scheduling order is appropriate, and Epson respectfully requests this Court to grant the same.

## II.    PROCEDURAL BACKGROUND

Beginning in May 2023, Epson sought discovery from Defendant as well as provided a proposed ESI protocol to submit to the Court. (Nickerson Decl., ¶ 5). Defendant, however, delayed in responding. (*Id.*) This was the beginning of Defendant's pervasive discovery delays. Since that time, numerous email exchanges, informal conferences, and telephonic conferences with Judge McCormick have taken place to compel discovery from Defendant. (*See, e.g.,* ECF 29, 43, 63, 79, 93, 94, 95, 103, 104, 105, & 108.) Following several such exchanges through summer and fall 2024, the Parties had agreed to certain document collection and production protocols, as well as the depositions of multiple witnesses. (Nickerson Decl., ¶¶ 5-8; *see also, e.g.,* ECF 79 at § I (describing Epson's attempts to obtain discovery through February 3, 2025.) The Parties informed this Court of the same in their October 22, 2024 stipulation. (ECF 64 at 2:24-3:5.) At that time, Defendant's then-counsel also stated there had been a breakdown in the attorney-client relationship and moved to withdraw as counsel, which was granted.

3

On October 31, 2024, the Court granted the Parties' Joint Stipulation and Request for Order Modifying the Scheduling Order (ECF 70), providing Defendants additional time to retain new counsel and to allow Epson to obtain the discovery it had sought consistent with, and pursuant to, the Parties prior agreements.

On December 17, 2024, Defendant's new counsel made their first appearance in this action. (ECF 74.) The next day, Epson immediately began resuming its attempts to obtain all outstanding discovery by emailing Defendant's new counsel regarding the outstanding discovery disputes, including providing a draft Joint Discovery Stipulation pursuant to Local Rule 37 (the same which had been provided to Defendant's prior counsel on October 25, 2024). (Nickerson Decl., ¶ 8.) The Parties thereafter continued to meet and confer on the discovery dispute, with Epson consistently attempting to obtain Defendant's compliance with its prior agreement with regard to the collection and production of documents, as well as the production of certain enumerated witnesses for deposition. (*Id*.)

On February 3, 2025, Epson filed its Motion to Compel Defendant to Collect and Produce Documents and Produce Witnesses for Depositions Pursuant to, and in Compliance With, the Parties' Prior Agreements. (ECF 79). On March 4, 2025, Judge McCormick held a hearing on Epson's Motion to Compel and set a further telephonic hearing for March 18, 2025. (ECF 93). On March 18, 2025, the Parties appeared again to discuss Epson's Motion to Compel. (ECF 94-95). The Court granted Epson's motion in full and required Defendant to produce documents from five (5) custodians and make Defendants' witnesses available for depositions. Specifically, the court ordered "Defendants [to] begin producing documents for all search terms that do not require refinement as soon as possible after March 26, 2025, and for all search terms by no later than April 1, 2025. Defendants shall complete their document production resulting from this process by Wednesday April 9, 2025." (ECF 95.) The Court further ordered Defendant to advise Epson as to whether they are authorized to accept service of Rule 45 subpoenas by no later than March 20, 2025. *Id.*

4

**MEMORANDUM OF POINTS AND AUTHORITIES**

The Court held additional telephonic hearings on Epson's Motion to Compel on April 10, 2025 (ECF 103), April 17, 2025 (ECF 104), April 24, 2025 (ECF 105), and May 1, 2025 (ECF 108).  Additionally, the Parties exchanged numerous written correspondences regarding Defendants' document production and depositions, and also held numerous telephonic conferences regarding the same. (Nickerson Decl., ¶ 9.) This includes that the Parties began utilizing the search protocols the Magistrate Judge ordered, including meeting and conferring on how to narrow certain terms that resulted in too many "hits."  (*Id*.)  On April 16, 2025, Defendant made an initial document production containing the results of certain search terms, the scope of which the Parties agreed was appropriate, and designated the entirety of such production Highly Confidential – AEO.  (*Id*., at ¶ 11.)  The Parties thereafter continued to meet and confer regarding the remaining search terms.  On April 24, 2025, Defendants then made an additional production.  Rather than continuing to utilize the protocols set agreed upon by the Parties and ordered by the Magistrate, "[d]ue to time constraints, instead of continuing to run further search terms, [Defendant] instead provided the entirety of those documents for [Epson's] review." (*Id*.; Ex. B.)  These documents were not bates stamped and produced, but rather "made available for inspection," with Defendant indicating all documents were to be treated as Highly Confidential – Attorneys' Eyes Only, and Epson's counsel to identify which documents they wanted to be produced. (*Id*.)

The Parties, meanwhile, had discussed and begun agreeing upon dates in May 2025 for the depositions of all witnesses to occur.  (Nickerson Decl., ¶ 12.)  As a result of Defendant's substantial document dump, Epson made clear to Defendant and the Magistrate Judge during a recent discovery hearing that it would take three (3) weeks to a month to review the documents recently produced documents. (*Id.;* ECF 113, Hearing 3:21-24, May 1, 2025 ("I think it's going to take me -- just to be precise -- take my team about three weeks to get through it in order to be able to be prepared for depositions.")  This was also in line with the timeframe Defendant represented it would

**MEMORANDUM OF POINTS AND AUTHORITIES**

take to review the same documents. (*Id.*) Moreover, two of the five custodians (who Epson was required to subpoena after Defendant represented the witnesses were outside of Defendant's control;) still have not produced any documents, and Epson does not know when such documents will be produced.  (*Id.*, at ¶¶ 10, 12.) As such, the depositions which had been scheduled for May needed to be postponed. During this same hearing, the Parties discussed extending the discovery deadlines.  The Parties also discussed that, since they were going to request the extension of discovery deadlines, the production of documents by the two custodians not within Defendant's control could potentially be delayed until after certain depositions were taken in an attempt to try and minimize the burden on the non-defendant witnesses.  As Defendant is now opposing a request to extend the discovery deadline, however, Epson subsequently made clear it needed the documents from the remaining two custodians ASAP, but has yet to obtain the same.  (Nickerson Decl., ¶13.) Separate and apart from the discovery the pleadings in this action have not yet been settled.  Epson filed its Second Amended Complaint on October 18, 2024.  (ECF 61.)  Defendant filed a Motion to Dismiss on January 27, 2025.  (ECF 77.)   This Court denied Defendant's motion on March 3, 2025,and ordered Defendant to "file a responsive pleading to the Second Amended Complaint on or before March 27, 2025." (*Id.*)  Instead of filing a responsive pleading, Defendant filed another Motion to Dismiss, which is now set for hearing on June 11, 2025.  (ECF 96 & 102.)  During a recent hearing before the Magistrate, Defendant's counsel expressed an intention to file counterclaims and therefore further agreed a continuance of the current schedule would be appropriate.  (Nickerson Decl., ¶ 3; ECF 111, Hearing 16:11-17, April 17, 2025.)

This is also reflected in correspondence between the Parties, where Defendant's counsel stated they were "happy to prepare a stipulation" to request an extension of the current case deadlines.  (*Id.*; Ex. A.)   Similarly, at the last hearing before Judge McCormick on May 1, Defendant again made clear its intention to enter into a stipulation when it represented to the Court, "[w]ith respect to the stipulation, I just

**MEMORANDUM OF POINTS AND AUTHORITIES**

received a draft stipulation this morning. So we're going to take a look at that and get back to Mr. Nickerson ASAP, hopefully today or tomorrow, once I have a chance to talk to the client, *and we can get depositions pushed out or rescheduled or however we need to do it*." (Ex. A; ECF 113, Hearing 5:15-20, May 1, 2025.)

### III.    <u>JUDICIAL STANDARD</u>

A movant seeking to modify the trial schedule must show good cause. Fed. R. Civ. P. 16(b)(4). The Ninth Circuit has adopted a four-factor test to evaluate whether good cause exists to grant a trial continuance in a civil case. See *Bearchild v. Cobban*, 947 F.3d 1130, 1138 (9th Cir. 2020) (applying the *Flynt* factors). The four factors set forth in *Flynt* include: (1) the movant's diligence in preparing for trial, (2) whether a continuance would have achieved the movant's purpose, (3) the inconvenience of a continuance to the court and non-moving party, and (4) any resulting prejudice the movant may have suffered as a result of the denial. 756 F.2d at 1359. Rule 16(b)'s "good cause" standard primarily considers the diligence of the party seeking the amendment. *Johnson v. Mammoth Recreations, Inc.*, 975 F.2d 604, 608 (9th Cir. 1992). "The district court may modify the pretrial schedule 'if it cannot reasonably be met despite the diligence of the party seeking the extension.'" *Id.* (quoting Fed. R. Civ. P. 16 Advisory Committee's Notes (1983 amendment)). Indeed, while the existence or degree of prejudice to the party opposing the modification might supply additional reasons to deny a motion, "the focus of the inquiry is upon the moving party's reasons for seeking modification." *Id.* (citation omitted). The moving party may establish good cause by showing:

> (1) that [he or she] was diligent in assisting the court in creating a workable Rule 16 order; (2) that [his or her] noncompliance with a Rule 16 deadline occurred or will occur, notwithstanding [his or her] diligent efforts to comply, because of the development of matters which could not have been reasonably foreseen or anticipated at

7

1            the time of the Rule 16 scheduling conference; and (3) that

2            [he or she] was diligent in *seeking* amendment of the Rule

3            16 order, once it became apparent that [he or she] could

4            not comply with the order.

5  *CTC Glob. Corp. v. Mercury Cable & Energy, Inc.,* No. SACV090261DOCEX, 2017

6  WL 11628848 (C.D. Cal. Aug. 4, 2017) (citing *Academy of Country Music v. ACM*

7  *Records, Inc.*, No. CV 13-02448 DPP (RZx), 2014 WL 2586859, at *2 (C.D. Cal. June

8  10, 2014); *Hood v. Hartford Life & Acc. Ins. Co.*, 567 F. Supp. 2d 1221, 1224 (E.D.

9  Cal. 2008)) (internal quotation marks omitted)).

10  **IV.**   **ARGUMENT**

11       As set forth below, each of the *Flynt* factors weigh heavily in Epson's favor,

12  including that Epson was diligent and there is no evidence of prejudice to Defendant in

13  modification. Accordingly, Epson respectfully requests this Court grant its Application

14  in order to ensure that Epson is able to fully litigate, present the merits of its claims, and

15  defend any counterclaims in this action.

16      **A.**   **Epson Has Diligently Participate in Discovery**

17       The "good cause" standard here is met and Epson's Application should be

18  granted. Epson has acted with diligence throughout the discovery period. Epson served

19  Defendant with discovery requests, well before the May 22, 2025 cut-off date for non-

20  expert discovery. (Nickerson Decl. ¶ 5.) Indeed, Epson served its first requests for

21  production in May 2023, and a second set in May 2024. (*Id*.) In response, Defendant

22  refused to produce any documents or provide any forthcoming responses to

23  interrogatories causing purposeful delay in the discovery process including the taking

24  of depositions. The Parties met and conferred on Defendants' discovery, and on

25  October 31, 2023, Global agreed to use a specific set of search terms to search for

26  responsive documents (*Id*., at ¶ 6.) Despite this agreement, Defendant failed to actually

27  run all of the agreed upon search terms on *any* custodians, and instead explained that a

28  custodian was provided with search terms to run the search himself, however, the

custodian stated that the terms were overbroad and instead ran searches which he deemed relevant. (*Id.*; *see also* ECF 79 at 1:25-2:6.)  This information had not been disclosed to Epson.

The Parties subsequently engaged in additional meet and confer efforts, including attending two subsequent Informal Discovery Conferences ("IDC") before the Magistrate. (*See, e.g.,* ECF 43 & 63.)  Through these IDCs, and subsequent continuing meet and confer efforts, the Parties *again* agreed to a specific set of search terms Defendants would use to search for documents responsive to the requests for production. (Nickerson Dec., ¶7.)  The Parties also agreed that those terms would be run on each of five (5) specifically enumerated custodians. (*Id.*)  Defendant's prior counsel made no such productions prior to withdrawing, citing the breakdown of the attorney-client relationship as a barrier. (*Id.*)

On December 17, 2024, Defendant's new counsel first entered an appearance in this action, and Epson's counsel emailed him the next day about the ongoing discovery dispute in an attempt to obtain compliance with the Parties' prior agreements. (*Id.*, at ¶ 8.)  Epson's counsel also attached the previously prepared draft Joint Discovery Stipulation to this email, which had been sent to Defendant's prior counsel in October 2024, prior to his withdrawal. (*Id.*)  The Parties thereafter engaged in extensive meet and confer efforts, including that Epson agreed to extend Defendant's time to respond to the draft joint discovery stipulation multiple times in order to avoid judicial intervention. (*Id.*) Despite Epson's efforts and diligence, Defendant then asserted a new position that: (1) it had already produced all responsive documents pursuant to the prior agreement (it had not); and (2) it would conduct searches on *some* of the custodians, while expressly refusing to conduct searches for the remaining custodians.  No documents were produced, nor depositions taken, and Epson was thus forced to file its Motion to Compel on February 18, 2025.

As discussed at length in Epson's Motion to Compel briefs, Epson has been diligent in attempting to obtain documents since *May 2023*.  Epson has met and

**MEMORANDUM OF POINTS AND AUTHORITIES**

conferred countless times; thought it had an agreement with respect to documents in October 2023, only to learn during Mr. Sheu's deposition in January 2024 that Defendant had not complied; engaged in additional months-long meet and confer efforts resulting in the June 2024 IDC; continued to meet and confer and eventually came to agreement on an enumerated set of search terms to be run on an enumerated set of five custodians—Defendant's US-based employees identified by Mr. Sheu; spent months attempting to enforce that agreement with no success, only to eventually be told by Defendant's prior counsel that he was withdrawing and could not help with compliance; spent months waiting for *new* counsel to appear, and then continued meet and confer efforts with that new counsel; agreed to multiple extensions of time for Defendant to provide its position on the joint discovery stipulation—which had initially been served on Defendant in October 2024, and was re-served on Defendant's new counsel in the middle of December 2024—only to be presented with an "offer" for Defendant to do substantially less than it previously agreed to do; and finally repeatedly asked for Defendant's position in the draft stipulation, but never received the same. It is clear that Epson has been diligent and has gone above and beyond attempting to resolve the discovery issues and obtain the necessary discovery.

Epson's diligence is reflected in the record as well. On March 18, 2025, the Court ruled granted Epson's Motion to Compel in full, and ordered Defendant to: (i) "provide Plaintiff with hit counts for all search terms…by no later than Wednesday, March 26, 2025;" (ii) "re-run any refined search terms by no later than Tuesday, April 1, 2025;" (iii) "begin producing documents for all search terms that do not require refinement as soon as possible after March 26, 2025, and for all search terms no later than April 1, 2025;" and; (iv) "complete their document production resulting from this process by Wednesday, April 9, 2025."

Defendant was to produce a complete document production by April 9, 2025, which was not produced. (ECF 95; Nickerson Decl., ¶ 9.) Defendant was required to produce documents from the relevant custodians and make the custodians available for

**MEMORANDUM OF POINTS AND AUTHORITIES**

depositions.  Two of the five custodians have not produced any documents. Moreover, once Defendant began producing documents, it was clear that the production was simply a "document dump" which Defendant used a blanket "Highly Confidential- Attorney's Eyes Only" designation, which violates the Parties Protective Order. This is made glaringly obvious by the fact Defendant's counsel stated, on April 24, 2025, "[d]ue to time constraints, instead of continuing to run further search terms, we've instead provided the entirety of those documents for your review." (Nickerson Decl., ¶ 11.) This was in direct contradiction to the Magistrate's Order requiring the Parties to meet and confer to refine the search terms in order to avoid this exact type of document dump. Moreover, this document dump does not even include documents from two custodians—each of which Defendant agreed to collect documents from in 2024, only to perform an about face as part of its opposition to Epson's Motion to Compel and then require Epson to serve subpoenas on both custodians.  (Nickerson Decl., ¶¶10-11.)

Despite Epson's diligence to secure a court order compelling Defendant to produce outstanding discovery, Defendant has continued to delay and obstruct the discovery process. As a further and simple concrete example of the same, as recently as May 6, 2025, about *two weeks* before the non-expert discovery cut-off, Defendant confirmed it would be providing the Court-ordered sales data. Defendant has yet to produce the information.

Defendant's failure to produce documents in a timely manner, despite Epson's diligent pursuit, precludes Epson from conducting meaningful depositions. Epson has noticed the depositions of Defendants custodians numerous times, to only be forced to postpone due to Defendant's obstructive discovery tactics.  Most recently, Epson had schedule depositions to occur in late April and early May, only to be unable to conduct such depositions because Defendants failed to comply with the Magistrate's April 9 production deadline.

**MEMORANDUM OF POINTS AND AUTHORITIES**

Notwithstanding Defendant's decisions to elect not to participate in discovery, followed by the strategic decision to frustrate discovery, Epson has continued to be diligent in its quest for discovery.

**B.    The Needs for the Continuance Would be Met if Granted**

To determine whether the need for a continuance would be met if granted, the Court inquires into the usefulness of a continuance in the case by asking how likely it is that the purpose of the continuance would be achieved if the continuance is granted. *See U.S. v. Kloehn*, 620 F.3d 1122, 1127 (9th Cir. 2010). Here, the need for a reasonable continuance is two-fold. First, to ensure Epson can actually obtain all responsive documents from *all* of Defendant's custodians. And second, to allow Epson sufficient time to actually review such documents prior to taking the depositions of Defendant's witnesses.[2]

This is vitally important to Epson's prosecution of its claims, and is what Epson has been attempting to do since May 2023 without any success until very recently. Given the Magistrate's ruling on Epson's Motion to Compel, Epson expected a complete set of documents from all five custodians to be produced by no later than April 9, 2025. (ECF 95.) Epson also expected the documents produced to be sufficiently narrowed based upon an iterative process through which the Parties would refine search terms to narrow those that returned too many document "hits." Instead, Defendant provided Epson with more than 11,000 documents on April 24—more than two weeks *after* the deadline. And these documents were not even actually produced and bates numbers, but rather were provided as Highly Confidential-Attorneys' Eyes Only with direction to Epson's counsel to review them and identify which documents they wanted Defendant to produce. (Nickerson Decl., ¶ 11.) Such procedure turned the discovery burden on its head, and has drastically increase the time and effort Epson needs to

---

[2] Epson is informed and believes that Defendant intends to file counterclaims with its eventual Answer to Epson's complaint in this action. If Defendant does file such counterclaims, it would provide a third independent reason for the continuance, to allow discovery to be conducted as to any of those counterclaims.

**MEMORANDUM OF POINTS AND AUTHORITIES**

expend in order to review the documents and prepare for depositions. (*Id*.) Now that

Epson has *most* of Defendants' documents—though it is still missing categories of

documents as well as documents from the final two custodians—it can review them to

identify those for production. This process will take time, however, and thus a brief

continuance is appropriate.

### C. The Proposed Discovery Cut-Off and Pretrial Deadline Extension Will Not Prejudice Defendant, Nor Will it Inconvenience the Court

Any extension of the discovery and pre-trial deadlines will not prejudice

Defendant. "An amendment is prejudicial to the non-moving party if it would require

the opponent to expend significant additional resources to conduct discovery and

prepare for trial or significantly delay resolution of the dispute." Wayne D. Brazil, 16

Moore's Federal Practice - Civil § 16.14 (Matthew Bender & Company, Inc. 2015).

As discussed above, Defendant has not yet responded to the operative complaint.

Instead, Defendant's Motion to Dismiss (ECF 96) is still pending with a hearing

scheduled for June 12, 2025 (ECF 102). Further, Defendant has indicated to the

Magistrate at a prior hearing that, when it responds to the operative complaint, it intends

to file counterclaims against Epson. (ECF 111, Hearing 16:11-17, April 17, 2025.) As

Defendant has not yet even filed a response to Epson's pleading, and intends to file

counterclaims, it is premature to close discovery as the claims themselves have not yet

even been plead through the pleadings. Allowing a three (3) month extension to enable

Epson to review Defendant's recently produced discovery, the discovery which has not

yet been produced by its two custodians, conduct depositions of the five custodians, and

collect discovery on Defendant's Affirmative Defenses and Counterclaims will not

prejudice Defendant. In fact, Defendant would benefit from such an extension.

Defendant has stated that it would take three (3) weeks to review all of the documents

produced to also prepare for the depositions which have been postponed due to

Defendant's failure to produce documents on time. Thus, Defendant will need time to

review the other documents not yet produced from the two other custodians as well.

**MEMORANDUM OF POINTS AND AUTHORITIES**

Further, this extension will allow for Defendant to seek discovery regarding any Affirmative Defenses asserted by Epson in response to its counterclaims.

Similarly, the requested continuance will not inconvenience the Court, but will actually encourage efficiency and preserve judicial resources. Specifically, a continuance will ensure that more fulsome discovery has been completed before trial, and will avoid needless motion practice. Additionally, continuing the deadlines will avoid the need for Defendant to move to *re-open* discovery once it files its counterclaims. Re-opening discovery after it has closed is extremely disruptive and can cause significant expense and place a significant burden on both the Parties and the Court. *See, e.g., Mkrtchyan v. Sacramento Cnty.*, No. 2:17-CV-2366 TLN KJN, 2021 WL 5284322, at *3 (E.D. Cal. Nov. 12, 2021). Such result can be avoided by granting Epson's Application.

### D.     Epson Will be Prejudiced if the Continuance is Denied

The final *Flynt* factor also weighs heavily in favor of a continuance. As discussed above, and set forth in great detail in Epson's briefs on its Motion to Compel (ECF 79 at § I; ECF 87 at § II), Defendant has repeatedly made deficient document productions, agreed to conduct discovery and then failed to comply with those agreements, and even failed to comply with a Court Order compelling such production. For example, Defendant first made a woefully inadequate document production, then agreed to run search terms to address such inadequacies prior to Defendant's 30(b)(6) deposition. (Nickerson Decl., ¶ 6.) Despite such agreement, Defendant failed to run the search terms on *any* custodians, and in fact only collected documents from a single custodian. (*Id*.) Defendants then later agreed to run a separate set of search terms on five custodians and produce the responsive documents, but wholly failed to produce any such documents. (*Id*., at ¶ 7.) It was not until last month—following years of attempts, numerous IDCs before the Magistrate, and multiple hearings on Epson's Motion to Compel that Defendant finally produced documents. (*Id*., at ¶¶ 6-11.) And even then, Epson is still missing documents from two of the custodians, and the documents it has

14

**MEMORANDUM OF POINTS AND AUTHORITIES**

received from the other three custodians were little more than a document dump that Defendant's counsel admits was not in compliance with the Magistrate's Order. (*Id.*, at ¶¶ 10-11.)

Since at least May 2023, Epson has diligently attempted to obtain discovery, only to be blocked at every turn by Defendant's obstructive behavior, and Defendant cannot be rewarded for such behavior. As such, Epson's Application should be granted and the current case deadlines should be continued.

## V.    EPSON SATISFIES THE REQUIREMENTS FOR EX PARTE RELIEF

A party seeking *ex parte* relief must: (1) show it "will be irreparably prejudiced if the underlying motion is heard according to regular noticed motion procedures;" and (2) it "is without fault in creating the crisis that requires *ex parte* relief, or that the crisis occurred as a result of excusable neglect." *Mission Power Eng'g Co. v. Cont'l Cas. Co.*, 883 F. Supp. 488, 492 (C.D. Cal. 1995). Epson satisfies both requirements.

As discussed above, Epson will be irreparably prejudiced if this Application is heard according to regular noticed motion procedures. Specifically, if this issue is heard on regular notice, any decision would be rendered after the May 22, 2025 discovery cut-off, and would allow Defendant to successfully do what it has been attempting since May 2023—evade its discovery obligations, including those it was ordered to comply with by the Magistrate in this action.

Further, if this Application were to be heard after discovery closes, the only way Epson could ensure it would be able to enforce the Magistrate's prior order and obtain all outstanding discovery (including taking the applicable depositions), would be if discovery was re-opened. Such re-opening of discovery would disrupt the rest of this action's schedule, and would place unnecessary burdens and costs on both the Parties and this Court.

Additionally, Epson is not at fault in creating the need for *ex parte* relief. Epson has been diligently pursuing this discovery since as early as May 2023. This includes numerous meet and confer efforts and Informal Discovery Conferences in 2024, which

15

**MEMORANDUM OF POINTS AND AUTHORITIES**

Epson had thought would resolve the outstanding disputes. (Nickerson Decl., ¶¶ 5-13.) Despite the Parties' agreements reached through those efforts, Defendant still did not produce its responsive documents, and so Epson was forced to file a Motion to Compel once Defendant's new counsel appeared. (*Id*., at ¶ 8.) Prior to filing that Motion, however, Epson attempted to obtain such documents without resorting to judicial intervention, including by conducting extensive meet and confer efforts with Defendant's new counsel. (*Id.*) Unfortunately, those efforts were unsuccessful and Epson was then required to file its Motion. The Parties have subsequently appeared before the Magistrate on multiple occasions, and have continued to meet and confer regarding the implementation of the Magistrate's Order. (*Id*., at ¶¶ 9, 11-12; *see also* ECF 93-95, 103-105, & 108.) Despite these ongoing attempts, Epson still does not have possession of all responsive documents. This includes that Epson does not have any documents from two custodians (custodians from whom Epson agreed to produced documents in 2024, but in response to Epson's Motion to Compel stated were outside of Defendant's custody and so Epson was required to serve subpoenas on such custodian). (Nickerson Decl., ¶¶ 10-11.)

Further, the documents that Epson has obtained came largely from a substantial document dump made by Defendant—the entirety of which has been designated Highly Confidential – Attorneys' Eyes Only—which was not made according to and consistent with the Magistrate's Order. (Nickerson Decl., ¶ 11.) This has required Epson to undertake significantly greater efforts to review than had been anticipated given the Magistrate's Order, which has prevented all previously ordered depositions from occurring. (*Id*., at ¶¶ 11-12.)

Defendants' tactics to delay and obfuscate have been very successful for approximately 2 years, however in just the last month Epson has finally been able to begin pushing through Defendant's discovery smokescreen. Epson requires additional

**MEMORANDUM OF POINTS AND AUTHORITIES**

time to complete that process, and believes that three months will be sufficient to do so.[3]

## VI.  <u>CONCLUSION</u>

In light of the foregoing, Epson Application should be granted because Epson has met the "good cause" standard; has shown the requested extension is necessary; and has been diligent in seeking discovery.

Dated: May 12, 2025                         **K&L GATES LLP**

By:  */s/ Zachary T. Timm*
Christina N. Goodrich
Zachary T. Timm
Morgan T. Nickerson (admitted *pro hac vice*)

Attorneys for Plaintiff
Epson America, Inc.

## <u>CERTIFICATE OF COMPLIANCE</u>

The undersigned, counsel of record for Plaintiff Epson America Inc. certifies that this brief contains 5,569 words, which complies with the word limit of L.R. 11-6.1.

Dated: May 12, 2025            By:    */s/ Zachary T. Timm*

Zachary T. Timm

---

[3] If Defendant does file counterclaims, as it has indicated it may do, Epson will of course endeavor to complete all remaining discovery relating to such counterclaims within this same time frame.  As such counterclaims are currently unknown, however, Epson is unaware of the scope any such additional discovery may take.

17

**MEMORANDUM OF POINTS AND AUTHORITIES**